14

IN THE UNTED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
FILED

JUN 0 4 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| Mary Homer-Radtke | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | No. B-02-063 |
| | ) | |
| John A. Radtke, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NOTICE OF FILING

PLEASE TAKE NOTICE THAT Mary Homer-Radtke, plaintiff in the above-entitled cause, filed AFFIDAVIT IN REGARD TO HEARING ON MAY 28, 2002 with the United States District Court for the Southern District of Texas in Brownsville, Texas on June 4, 2002.

Mary Homer-Radtke

## PROOF OF SERVICE

Under pains and penalties of perjury, a true, correct, and complete copy of AFFIDAVIT IN REGARD TO HEARING ON MAY 28, 2002 was mailed to John A. Radtke, 1641 Elmwood, Highland Park, Illinois 60035 on June 4, 2002.

Mary Homer-Radtke

June 4, 2002

Mary Homer-Radtke
c/o P.O. Box 533793
Harlingen, Texas 78553



DEBRA ANN FIGUEROA
Notary Public
STATE OF TEXAS
My Comm Exp 09-27-2004

IN THE UNTED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Mary Homer-Radtke | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | No. B-02-063 |
| | ) | |
| John A. Radtke, | ) | |
| | ) | |
| Defendant. | ) | |

AFFIDAVIT IN REGARD TO HEARING ON MAY 28, 2002

I, Mary Homer-Radtke, of lawful age and competent to testify, in want of counsel, being first duly sworn, upon oath state as follows:

1.)   Plaintiff, Mary Homer-Radtke, was the only party in this case ordered to appear in Judge Recio's courtroom on May 28, 2002 at 2:30 pm.  A true, correct, and complete copy of the Order of April 12, 2001 is attached hereto as Exhibit A.

2.)   I was traumatized when Neil H. Levin, attorney for John A. Radtke, entered the courtroom.

3.)   I objected to Neil H. Levin speaking without providing evidence of having filed an appearance or being licensed to practice law in the state of Texas.

4.)   I have observed that Neil H. Levin historically captures the court biasing and prejudicing the judge with false statements and hearsay testimony.

5.)   In the absence of the judge, Neil H. Levin says disparaging remarks to me such as "How do you like coming to court when all of your motions are denied?" and "You need to find a better hobby.".

6.)   Due to the trauma that I experienced on May 28, 2002, I was disadvantaged in the courtroom.

7.)   I took brief notes on the back of a court paper that I found on the table.  A true, correct, and complete copy of the notes are attached hereto as Exhibit B.

8.)   I remember Neil H. Levin saying that I had subpoenaed John A. Radtke and his fiancee, Elsie Mannix, for a list of the guests – saying 143 or 147 guests.

9.)   My children received a wedding invitation for an August 6, 2000 wedding in Mexico between John Allen Radtke and Elsie Pendregast Mannix.

1

10.)  I contracted with D & D investigations in Waukegan, Illinois to serve John A. Radtke and Elsie Mannix subpoenas requiring them to tender the name of the priest and the names and addresses of the persons in the wedding party, which includes the bridesmaids and best man only, to the court or appear on July 31, 2000. A true, correct, and complete copy of the subpoena filed in Case 92D1279 on July 20, 2000 is attached hereto as Exhibit C.

11.)  Immediately after June 6, 1995, I began doing personal service and service at the B. Radtke & Sons, Inc. via fax to John A. Radtke noticing him of the fraud in Case 92D1279.

12.)  I never accepted the judgment of June 6, 1995 as being valid and having the force and effect of law.

13.)  I was under duress on June 2, 1995 and June 6, 1995.

14.)  Judge Phillips, as guardian of my liberty, had the fiduciary duty pursuant to public policy to protect my right to own property and to protect my children.

15.)  On June 6, 1995, not only did Judge Phillips aid and abet John A. Radtke in financial exploitation of Mary Homer-Radtke, but my children were defrauded and endangered as a result of his rulings.

16.)  My children and myself were forced to live in a hostile community.

17.)  On June 6, 1995 I rejected the settlement signed on June 2, 1995.

18.)  The settlement was not a legally enforceable agreement if for no other reason than the settlement defrauded the children of state mandated child support.

19.)  I gave notice to John A. Radtke of the void judgment beginning in November of 1999 when I began researching the law, specifically void judgments, and attending a non-profit organization called Citizens for Legal Responsibility and other legal seminars.

20.)  In December of 1999 and January of 2000, I accepted for value Case 92D1279, Case 98CH1240, and Case 99P729 filing U.C.C. financial statements with the Secretary of State of Illinois and the Secretary of State of Texas claiming the marriage license of John Allen Radtke and Mary Ellen Homer and property.

21.)  I filed an amended bankruptcy statement due to the change in my debtor's status.

22.)  The bankruptcy was dismissed "without prejudice" when Kim M. Casey and Neil H. Levin intervened and remanded Case 92D1279, Case 98CH1240 and Case 99P729 back to the trial court.

23.)   In good faith, I tried on numerous occasions to negotiate with John A. Radtke for the return of the property – marital and non-marital.

24.)   In good faith, I demanded return of my property in writing.

25.)   John A. Radtke did not acknowledge my demands for return of the property remaining bailee of the property due to the ORDER entered without jurisdiction on July 30, 1992 signed by Judge Jane Waller. A true, correct, and complete copy of the July 30, 1992 ORDER is attached hereto as Exhibit D.

26.)   John A. Radtke breached his duty as bailee converting marital property for his own use and dissipating my non-marital loans to the business made at the request of John A. Radtke, President of B. Radtke & Sons, Inc. for his own use.

27.)   When I learned of the intention of John A. Radtke to marry Elsie P. Mannix on or about April, 2000, I sent notice to Elsie Mannix at her Riverside, Illinois address.

28.)   In good faith, I had served both John and Elsie with multiple notices regarding void judgments and the legal marriage of John A. Radtke and myself, Mary Homer-Radtke. A true, correct and complete copy of one NOTICE CONTESTING ANNOUNCEMENT is attached hereto as Exhibit E.

29.)   In good faith, I requested meetings with both Elsie Mannix and John A. Radtke.

30.)   Since I was financially impoverished, I could not afford to fly to Mexico to contest their intended marriage in the church as being invalid due to bigamy.

31.)   I was, in good faith, using legal process to give notice to the proper parties to prevent an unlawful union, invalid marriage, between John and Elsie which would have to be annulled requiring additional judicial resources.

32.)   In addition to John and Elsie, I subpoenaed Judge John Phillips, attorney Eva Schwartzman, and attorney Kathleen Roseborough to appear on July 31, 2000 for hearing my MOTION TO SET ASIDE AND VACATE filed July 5, 1995. A true, correct, and complete copy of said motion is attached hereto as Exhibit F.

33.)   On May 28, 2002, I heard Neil H. Levin testify that Judge Jane Waller quashed the subpoenas on July 31, 2000 – Case 92D1279.

34.)   On July 31, 2000, I and other witnesses saw Neil H. Levin enter the courtroom at approximately 9:20 am through the judge's chambers with a smile on his face.

35.)   On July 31, 2000, I heard Judge Jane Waller transfer this case to Judge Margaret Mullen in another courtroom.

3

36.) Judge John Phillips, Eva Schwartzman, Kathleen Roseborough, John A. Radtke and Elsie Mannix were all in contempt of court for failing to appear pursuant to the court ordered subpoenas.

37.) On July 31, 2000 the subpoenas were quashed on the motion of Mr. Levin by Judge Margaret Mullen – Case 92D1279. A true, correct and complete copy of the ORDER of July 31, 2000 is attached hereto as Exhibit G.

38.) I filed a NOTICE OF APPEAL on August 30, 2000 as a matter of right from a final judgment pursuant to Supreme Court Rule 301. A true, correct and complete copy of said notice is attached hereto as Exhibit G-2.

39.) In my research I went to the County Clerk's Office, in July of 2001 discovering that my brother, retired judge William F. Homer, secretly solemnized a bigamist marriage between John A. Radtke and Elsie Virginia Mannix on July 4, 2000, over one month prior to their intended/noticed August 6, 2000 church wedding in Mexico. A true, correct, and complete letter mailed to William F. Homer and Ludwina Homer is attached hereto as Exhibit H.

40.) Two of our children did not attend the July 4, 2000 gathering which our son Jeremy told me was a shower for the noticed August 6, 2000 wedding in Mexico.

41.) Jessica Radtke was in Wisconsin with a daughter of my heart, Jean Trenner, and Rebecca Radtke was in California unaware of the secret wedding.

42.) All of our children with the exception of Jeffrey Aaron Radtke, who was abducted on November 10, 1992, flew to Mexico for the wedding on August 6, 2000.

43.) Based on Supreme Court Rule 301, the right to appeal from a final judgment, I was trapped in the Trial Court filing additional post-trial motions and I was trapped in the Appellate Court filing two additional appeals which were consolidated under Case No. 2-00-1065. True, correct, and complete copies of a MOTION FOR RELIEF FROM FINAL JUDGMENT FOR COERCION AND DURESS, a VERIFIED PETITION FOR ADJUDICATION OF INDIRECT CIVIL AND CRIMINAL CONTEMPT filed on October 13, 2000 and related appeals are attached hereto as Exhibit I.

44.) John A. Radtke, through his attorneys, filed motions to dismiss Appeal 2-00-1065 saying it was interlocutory because there is no final judgment in the certified record.

45.) The Appellate Court erred refusing to dismiss Appeal 2-00-1065 for want of jurisdiction deceiving me into incorporating additional appeals and filing a brief and argument based on the law under Supreme Court Rule 301.

46.)  I was trapped in the Trial Court where John's attorney, Neil H. Levin, would not give proper notice or file petitions and through his oral arguments would be granted an injunction, restraining order, against me and sanctions on August 24, 2000. A true, correct, and complete ORDER of August 24, 2000 is attached hereto as Exhibit J.

47.)  Judge Jane Waller's Order of August 24, 2000 gave John A. Radtke and Elsie Mannix, not a party to Case 92D1279, the power to have me arrested, denying me the right to go to my property or receive enjoyment or income from my property.

48.)  On May 28, 2002, I heard Neil H. Levin, attorney for John Radtke say that he got sanctions against me – Case 92D1279. A true, correct and complete copy of the ORDER of January 9, 2001 is attached hereto as Exhibit K.

49.)  Neil H. Levin unlawfully converted the sanctions awarded to John Radtke for his attorney fees to a judgment – Case 92D1279. A true, correct and complete copy of the judgment signed by Sally Coffelt, Clerk of the Court, is attached hereto as Exhibit L.

50.)  On February 5, 2001, Neil H. Levin filed said judgment converted from sanctions against me, as a judgment lien against real property, whose owner is Casa-Blanca, with the Recorder of Deeds slandering title of said property. A true and correct copy of pages of the Amended/Complaint to Foreclose Mortgage showing owner of the property being foreclosed is attached hereto as Exhibit M.

51.)  Property at 502 Dublin, Mundelein, Illinois was exchanged into Casa Blanca, a pure trust, on October 4, 1996 and Casa Blanca was hyphenated as Casa-Blanca in the public record in January of 1998.

52.)  Qualified payments of principal and interest being made through Arkconsin Management to Associated Loan Services for the months of September through November of 1998 were refused without notice to Mary Homer-Radtke.

53.)  In good faith, Mary Homer-Radtke made payments of principal and interest demanding a complete and comprehensive loan payment history including reamoritization of prepayments from Great Northern Mortgage Company with the intention of paying off the promissory note if there was any debt owing.

54.)  While the debt was under dispute, Kim M. Casey from Holmstrom & Kennedy, P.C. acting as a collection agent for Associated Mortgage, Inc. filed a complaint to foreclose the mortgage without attaching a true and correct copy of the promissory note which is required by Illinois law for relief. A true and correct copy of the Affidavit of lost note is attached hereto as Exhibit N.

55.)    I heard from my husband, John A. Radtke, Dawn Grey and Philip Pesanka of Associated Loan Services and our children in June of 1998 that John asked them to foreclose on the property so he could purchase the property at a Sheriff's sale.

56.)    I heard John A. Radtke say that he offered to pay the alleged debt in January/February, 1999 to Kim M. Casey, collection agent for Associated Mortgage, Inc., who refused to assign the mortgage to him.

57.)    Neither Kim M. Casey, collection agent for Associated Mortgage, Inc., Associated Loan Services, Associated Banc-Corp, (Associated) Great Northern Mortgage Company nor Great Northern Financial acknowledged written qualified inquiries or resolved the disputes as is required by consumer protection laws and RESPA, the federal loan servicing laws.

58.)    John A. Radtke, named as defendant in the foreclosure case, 98CH1240, entered the foreclosure case in February of 2001 when John A. Radtke, through his attorneys Neil H. Levin and Sheila A. O'Laughlin, filed a Counterclaim against me for the purpose of collecting another judgment on the sanctions granted against me in Case 92D1279. A true, correct, and complete copy of John A.Radtke's Counterclaim is attached hereto as Exhibit O.

59.)    The record including the Affidavit for attorney fees of Neil H. Levin is evidence that Neil Levin has communicated with Kim M. Casey joining efforts to foreclose on the home.

60.)    On May 28, 2002 I heard Neil H. Levin accuse me of naming his client, John A. Radtke as a codebtor in the Chapter 13 bankruptcy that I filed on May 10, 2002.

61.)    I filed an individual cause of action naming John Allen Radtke as my spouse living at 1641 Elmwood, Highland Park, Illinois.

62.)    I heard Neil H. Levin influencing the judge by accusing me of unlawfully filing a Chapter 13 bankruptcy saying that I don't have an income. A true and correct copy of a $500 monthly payment, being paid me by Trustee, William F. Homer, is attached hereto as Exhibit P.

63.)    I heard Neil H. Levin influence the judge saying that this is a Rule 11 and that this matter is fraud.

64.)    I have only acted in good faith moving the trial court to set aside and vacate a void judgment in Case 92D1279 to stop further erosion of my property by John A. Radtke and to conserve judicial resources.

65.)    I have only acted in good faith, moving the trial court to dismiss a foreclosure action, 98CH1240, which is missing the contract, promissory note, required for

relief for the purpose of preventing the court from defrauding me of my home and conserving judicial resources. A copy of said motion is attached as Exhibit Q.

66.) I have acted in good faith, filing an action in the federal court under diversity for the purpose of receiving a declaratory judgment and to impose an injunction to prevent further erosion of my property being controlled by bailee, John A. Radtke.

67.) John A. Radtke has been breaching his fiduciary duty to hold my property by converting and dissipating property for the enjoyment of John A. Radtke, Elsie Mannix and her children.

68.) I heard Judge Jane Waller say that she took the file in Case 92D1279 home before the hearing on August 24, 2000.

69.) Judge Jane Waller had the fiduciary duty to inform me that John A. Radtke and Mary Ellen Homer-Radtke remain legal husband and wife.

70.) Judge Jane Waller had the fiduciary duty to uphold public policy which includes, but is not limited to, the right of women to own property.

71.) On August 24, 2000 Judge Jane Waller did not have jurisdiction, as a petition is required to confer jurisdiction, when she engaged in financial exploitation of Mary Homer-Radtke by entering a restraining order against Mary Homer-Radtke.

72.) The trial court knowing that there was no final judgment in said case tricked me into filing additional motions on October 13, 2000 in order to create the opportunity to have a final and appealable judgment in said case.

73.) I gave notice to the Trial Court that Neil H. Levin's AFFIDAVIT for attorney fees in Case 92D1279 is fraud upon the court for trying to collect fees for matters not related to his motion for sanctions pursuant to Rule 137. Attached hereto is a true and correct copy of Neil Levin's motion for sanctions pursuant to Rule 137 and his AFFIDAVIT for attorney fees as Exhibit R.

74.) A motion for sanctions does not rise to the standard of a pleading and cannot produce a judgment.

75.) The judges in the Appellate Court, Second District have connived with the Trial Court in financially exploiting Mary Homer-Radtke by failing to dismiss Case 2-00-1065 for want of jurisdiction.

76.) I was denied due process by the Clerk of the Court in the Appellate Court, Second District who did not mail Orders from Case 2-00-1065 or Case 2-01-1403 to the Harlingen address provided.

77.) On May 28, 2002, Neil H. Levin did not provide evidence of standing in the court.

78.) I am fearful that trying to correct false testimony of Neil H. Levin is like trying to put the genie back in the bottle – I cannot undo the damages.

79.) On May 28, 2002, I experienced the deceptive tactics of Neil H. Levin who has bragged about his law degree claiming to be an experienced trial lawyer.

80.) I have been denied due process in the Lake County, Illinois, Trial Court and the Appellate Court, Second District.

81.) Inspection of the record will show that my motions are consistently denied and the motions presented by attorneys for John A. Radtke are consistently granted. A true, correct, and complete ORDER of January 30, 2001 and LATE NOTICE OF APPEAL is attached hereto as Exhibit S.

82.) I knew that orders and judgments were entered in the Trial Court and the Appellate Court without jurisdiction.

83.) I knew from my research that orders/judgments entered without jurisdiction are void, a nullity, without the force and effect of law.

84.) I learned from my research that a judge who enters orders/judgments without subject-matter and/or personal jurisdiction does not have judicial immunity.

85.) I learned from my research at the law library that orders/judgments entered without jurisdiction, orders/judgments procured by fraud, and orders/judgments entered in a manner inconsistent with due process are void.

86.) I learned from my research that a court cannot make a void judgment valid.

87.) John Allen Radtke and Mary Ellen Homer-Radtke are legal husband and wife.

_Mary Homer-Radtke_
Mary Homer-Radtke

STATE OF TEXAS              INDIVIDUAL ACKNOWLEDGMENT
COUNTY OF CAMERON
        Before me, the undersigned, a Notary Public in and for said County and State on
this __4th__day of __June__, 2002, personally appeared **Mary Homer-Radtke** to me known
to be the identical person who executed the within and foregoing instrument and
acknowledged to me that he executed the same as his free and voluntary act.
        Given under my hand and seal the day and year last above written.
My commission expires __09/27/04__     _Debra Ann Figueroa_ Notary Public



DEBRA ANN FIGUEROA
Notary Public
STATE OF TEXAS
My Comm Exp. 09-27-2004

8

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

MARY HOMER-RADTKE,               )
                                 )
            Petitioner,          )
                                 )
      v.                         )    Gen. No. 92D1279
                                 )
JOHN A. RADTKE,                  )
                                 )
            Respondent.          )

## VERIFIED PETITION FOR ADJUDICATION OF INDIRECT
## CIVIL AND CRIMINAL CONTEMPT

COMES NOW the petitioner, Mary Homer-Radtke (Mary), in want of counsel,

and for her Verified Petition for Adjudication of Indirect Civil and Criminal

Contempt pursuant to the Rules of Practice of the Circuit Court, Nineteenth

Judicial Circuit, Part 13.01(d)aa., against Respondent, John A. Radtke (John),

supported by attached affidavit, shows to the court the following:

1.)    The Rules of Practice of the Circuit Court, Nineteenth Judicial
Circuit, Part 13.01(d)aa. state in relevant part the following:

> Petition for adjudication. A civil contempt proceeding shall be
> initiated by filing of a petition for adjudication of civil con-
> tempt unless the act is committed in the presence of the Court.
> The petition shall be verified and set forth with particularity
> that portion of the court order that is alleged to have been vio-
> lated and the nature of the violation.  If the Court finds that
> the petition sets forth allegations which support the charge, it
> shall set the matter for hearing and order that notice be given to
> the respondent.

### JOHN AND MARY RADTKE'S JOINT PARENTING AGREEMENT

2.)    JOHN AND MARY RADTKE'S JOINT PARENTING AGREEMENT signed on May 9,
1995, was incorporated into the judgment of June 6, 1995.  A true and correct
copy is attached hereto as Exhibit A.

3.)    Paragraph 1 of JOHN AND MARY RADTKE'S JOINT PARENTING AGREEMENT
states:

> John and Mary shall have joint legal custody of their minor chil-

-1-

Indirect civil/criminal Rule to Sho  Cause

Exhibit I -

dren.  This means that the parents shall jointly share the deci-
sions regarding all major issues concerning the children, includ-
ing the children's residence, health, education, and general wel-
fare.

4.)  When John was living in the home, there was violence as reported in
an English paper written by our daughter Jessica Radtke in September of 1994.
A true and correct copy is attached hereto as Exhibit B.

5.)  Mary made every attempt to communicate with John regarding the
children and their issues while protecting the children from being further
traumatized by John.

6.)  John was uncooperative, very angry, and did not want to communicate
directly with Mary.

7.)  John made unilateral decisions which were self serving and of-
ten to the detriment of the children and Mary.  An example was his pattern of
punishing Jessica by taking back her transportation, forcing her to walk home
from work and being indifferent to her being attacked by a potential rapist.

8.)  Whenever Mary attempted to engage in problem solving with John,
his only solution was that he wanted custody of the children and said he was
going to get it.

9.)  John has not consulted with Mary on financial issues regarding
education but leaves the children to beg for financial help.

10.)  Paragraph 4 of JOHN AND MARY RADTKE'S JOINT PARENTING AGREEMENT
states:

Contact between the parents shall include written communication
regarding what is appropriate for the children.  After written
agenda the parents will verbally contact each other.

11.)  Mary sent John letters approximately one time per month regarding
the children.

12.)  John did not send Mary any letters regarding the children.

13.)  Mary called John approximately twice a month regarding the chil-
dren.

14.)  John told Mary that he did not want Mary to call him and that Mary
was not to fax him either.

15.)  John and Mary met only three times in five years at Mary's insis-
tence.  At one meeting Mary had to have the police called because John refused
to return a document to Mary.  All three meetings addressed safety issues of

-2-

the children and living in a hostile community.

16.) Mary told John that it would be safer for the children to move out of state but John would not let us move.

17.) Mary tried diligently to communicate with John for approximately four years and then gave up.

18.) Paragraph 7 of JOHN AND MARY RADTKE'S JOINT PARENTING AGREEMENT states:

>Each parent shall keep the other informed of their residence, place of work, out of town schedule, telephone numbers of themselves and the children.

19.) John has not kept Mary informed of his residence, his out of town schedules, or related telephone numbers.

20.) Paragraph 8 of JOHN AND MARY RADTKE'S JOINT PARENTING AGREEMENT states:

>Each parent shall foster the children's respect for the other and for their extended family members.

21.) Our daughter told Mary that she was afraid to go into restaurants with Mary because she heard her father tell the waitresses and patrons unfavorable information about Mary. She was afraid that she would be recognized and we would be embarrassed.

22.) A mutual friend of Mary and John's told Mary that John was talking in public places and being derogatory saying among other things that Mary is crazy, lazy, and irresponsible.

23.) Paragraph 9 of JOHN AND MARY RADTKE'S JOINT PARENTING AGREEMENT states:

>The parties shall consult and review their joint parenting agreement and arrangements at least annually.

24.) John never made any initiative to review the joint parenting agreement.

## MARITAL SETTLEMENT AGREEMENT

25.) A copy of the Marital Settlement Agreement signed on June 2, 1995, is attached hereto as Exhibit C.

26.) Article II section 2.6 of the Marital Settlement Agreement states, in relevant part:

C000013

... if either child elects to live at home while attending college, child support payments will continue as long as they are students, not to extend beyond age 23.

27.) Both children are under the age of 23, and have attended junior college and have lived at home.

28.) On August 26, 1999 John Radtke terminated his payment of child support.

29.) Article II section 2.4 of the Marital Settlement Agreement, states:

JOHN shall continue to provide medical and hospitalization insurance coverage for the parties' minor children until each child reaches age twenty-two (22) or finishes college, whichever occurs last.

30.) John did not provide medical and hospitalization coverage as provided for in the agreement.

31.) Dr. Sara Meline refused to give anymore treatment to Jessica Radtke for injuries sustained in an automobile accident because the bills had not been paid.

32.) Dr. Laskowski sends monthly billing statements which have not been paid.

33.) Article I, section 2.4 states in relevant part:

The parties shall share in all of the expenses not covered by medical insurance in accordance with their respective incomes from all sources.

34.) Although John Radtke is the only party with an income, he does not share in all of the expenses not covered by medical insurance.

35.) John Radtke is in breach of Article IV Section 4.1 which holds John responsible for having a life insurance policy for $150,000 naming Mary as trustee.

36.) John Radtke is in breach of Article VI Section 6.10 Automobiles which states in relevant part:

JOHN will make arrangements for title to that automobile (Volvo) to be transferred to MARY on January 1, 1997.

37.) Article VI Section 6.11 states, in relevant part:

-4-

"... and the final balance paid in full June 30, 1999"

38.) John breached the marital settlement agreement because he did not make the final balance paid in full June 30, 1999.

### AGREED ORDER OF APRIL 12, 1996

39.) On April 12, 1996 an order was entered by this court.  A true and correct copy is attached hereto as Exhibit D.

40.) Paragraph 4 of the order states:

> An accounting of the expenses for JERMAJ to Mary's attorney Sharon Keller and also an accounting for the other expenses for the 1099's to Mary from B. Radtke & Sons, by Tom Kron & Jarvis Friduss' firm.

41.) John failed to provide an accounting for the other expenses for the 1099's to Mary from B. Radtke & Sons, by Tom Kron & Jarvis Friduss' firm.

42.) Paragraph 7 of the order of April 12, 1996 states:

> John agrees tender his 1995 Form 1040 to Sharon Keller instanter for the purposes calculating future child support.

43.) John Radtke failed to provide a filed 1995 1040 tax return.

Wherefore, petitioner Mary Homer-Radtke prays this honorable court charge respondent John Radtke with civil and criminal contempt for the failure of respondent to comply with judgments and orders of this court, including, but not limited to, JUDGMENT FOR DISSOLUTION OF MARRIAGE, entered June 6, 1995, including incorporated MARITAL SETTLEMENT AGREEMENT and JOINT PARENTING AGREEMENT; and ORDER, entered April 12, 1996, and to order a date for hearing on said charge of civil and criminal contempt (Rule to Show Cause). Petitioner further asks that this court order that appropriate notices be given to respondent concerning said hearing on the charge of contempt.

Respectfully submitted,

*Mary Homer Radtke*
Mary Homer-Radtke

November 10, 2000
Mary Homer-Radtke
c/o 408 N. Lake Street #108
Mundelein, Illinois (60060)

State of Illinois
County of Lake

Signed before me on *November 13 2000*

by *Mary Homer-Radtke*

*Eleanor A. Petruska*
Notary Public

"OFFICIAL SEAL"
ELEANOR A. PETRUSKA
Notary Public, State of Illinois
My Commission Expires 5/22/04

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS


MARY HOMER-RADTKE,       )
                            )
        Petitioner,     )
                            )
        v.              )    Gen. No. 92 D 1279
                            )
JOHN A. RADTKE,          )
                            )
        Respondent.     )


**AFFIDAVIT IN SUPPORT OF MOTION FOR VERIFIED PETITION
FOR ADJUDICATION OF INDIRECT CIVIL AND CRIMINAL CONTEMPT**


State of Illinois    )
                     )   SS
County of Lake      )

      Mary Homer-Radtke, on oath states:

      1.)  I am the petitioner in the above-entitled action.

      2.)  I have read the **VERIFIED PETITION FOR ADJUDICATION OF INDIRECT CIVIL CONTEMPT** and know the contents of said document; and

      3.)  Of my own knowledge, the matters set out in the **VERIFIED PETITION FOR ADJUDICATION OF INDIRECT CIVIL AND CRIMINAL CONTEMPT** are true in substance and in fact; or, if part of the **VERIFIED PETITION FOR ADJUDICATION OF INDIRECT CIVIL AND CRIMINAL CONTEMPT** is on information and belief, that the matters set out are true of my own knowledge, except as to those matters set forth upon information and belief, and as to matters set forth upon information and belief, I believe those matters to be true.

      Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

                                      _Mary Homer-Radtke_
                                      Mary Homer-Radtke

"OFFICIAL SEAL"
ELEANOR A. PETRUSKA
Notary Public, State of Illinois
My Commission Expires 5/22/04

State of Illinois
County of Lake

Signed before me on _November 13 2000_
by _Mary Homer-Radtke_

_Eleanor A. Petruska_
**Notary Public**

C000016

JOHN AND MARY RADTKE'S JOINT PARENTING AGREEMENT

1.  John and Mary shall have joint legal custody of their minor children.  This means that the parents shall jointly share the decisions regarding all major issues concerning the children, including the children's residence, health, education, and general welfare.

2.  Recognizing the need's of the children the father has agreed to open visitation for the children.  However he will initiate calling the children and setting up visitation time with both of them.

3.  Living arrangement for the children shall include weekdays, weekends holidays and vacation times. — *Residence of the children, at this time, will be with the mother.*

4.  Contact between the parents shall include written communication regarding what is appropriate for the children.  After written agenda the parents will verbally contact each other.

5.  If the parents are not able to agree on an issue that either one considers important, they shall enter into mediation *with Ina Berki* to try to resolve their dispute.

6.  Each parent shall have access to all of the information regarding the children, including their school, health  and other professional information.

7.  Each parent shall keep the other informed of their residence, place of work, out of town schedule, telephone numbers of themselves and the children.

8.  Each parent shall foster the children's respect for the other and for their extended family members.

9. *The parties shall consult and review their joint parenting agreement and arrangements at least annually.*

*Witness*

*Ina S. Berkley*
*5/9/95*

*Exhibit A*

Sept 4, 'it

1-A

# CHILDHOOD FEAR

## BY JESSICA RADTKE

I am finally able to talk about this. For years I kept quiet and was afraid to say what was going on inside of me. I just listened and watched the chaos of my dysfunctional family. I want to get it all out at one time. Even though the memories are still strong, the past is no longer a reality. My dad moved out four years ago. He lives close by and I see him now more than I did when he lived here. My parents are now in the process of a divorce. I'm sorry to say that it does not bother me. Life is much simpler.

I used to sit on my bed and think. It was as if I was in the walls of my house. I was little and I felt little. I looked and I listened through the walls to my parents arguing. It was painful. It was horrifying. It seemed like they were arguing forever. I would go to them and stick my hands out to yell "Stop!". But it would never work and I would run back to my bedroom and cry. My mom would tell me that she was discussing issues with my dad but I knew that she was just trying to make me feel better. I couldn't do anything about it. So, I tried to spend time in the walls but that didn't help at all. It just gave me more time to think and get more confused.

There was more pain than just hearing my mom and dad argue. There was conflict between my brother Jeff and my dad. I watched hand on shoulder fighting - hitting - practically falling down the steps. When they were fighting at the top of the steps, I was probably scared the most. I was afraid of them falling down the steps. I was afraid that I would lose a brother and a father at the same time. Another time I was standing on the steps and saw my dad bash in the ceiling in my brother's room. My relationship with Jeff was not good beside the fact that I knew how much he was hurting.

My relationship with my other brother Jeremy wasn't really a relationship at all. He is a hard to live with person. He always wants his way and hurts me to get it. I know that there are brother and sister quarrels but this is intolerable. He does whatever he wants when he wants. It doesn't matter what I want. He'll shove me, punch me, and do whatever to get what he wants. There is no way to stop him. I think he is a male chauvenist. I feel most unsafe when we are alone in the same room together and there is no help.

Things are changing now. Hopefully Jeremy will be able to go to a therapist. My mom told me that I was to tell her when I have a problem with Jeremy before it gets out of hand. Then she will come take care of it. With my parents getting a divorce, I don't have to feel the pain of dad's fighting and their arguing. They sometimes still argue but it is usually on the phone. I don't have to listen.

Exhibit B

## MARITAL SETTLEMENT AGREEMENT

THIS AGREEMENT, made and entered into this 2un day of JUNE , 1995, in Waukegan, Illinois, by and between JOHN RADTKE of Mundelein, Lake County, Illinois, hereinafter referred to as the "HUSBAND" or "JOHN"), and MARY RADTKE, of Mundelein, Lake County, Illinois, (hereinafter referred to as the "WIFE" or "MARY").

### WITNESSETH:

WHEREAS, the parties were lawfully married to each other on June 17, 1967, in Harlingen, Texas, and said marriage was registered in Cameron County, Texas; and

WHEREAS, irreconcilable difficulties and differences have arisen between the parties is a result of which the parties have separated and have lived separate and apart continuously for a period in excess of six (6) months; and

WHEREAS, four (4) children were born to the parties, namely REBECCA, born December 21, 1969; JEFFREY, born September 23, 1972; JEREMY, born October 17, 1978; and JESSICA, born August 14, 1981. No children were adopted by the parties, and the WIFE s not now pregnant; and

WHEREAS, MARY has filed against JOHN an action for dissolution of marriage in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois, under Cause No. 92 D 279, and JOHN has filed his Counter-Petition for Dissolution of Marriage under said Cause Number. The case is entitled In re the Marriage of MARY RADTKE, Petitioner/Counter-Respondent, and JOHN RADTKE, Respondent/Counter-Petitioner, and the case remains pending and undetermined; and

WHEREAS, without prejudice to any right of action for dissolution which either party may have, the parties hereto consider it to be in their best interests to settle between themselves


EXHIBIT
Exhibit C

now and forever the matters of custody, visitation, support, medical and related needs of the minor children of the parties, the matter of maintenance for the HUSBAND and the WIFE, and to settle fully rights of property of the parties, other rights arising out of the marriage or any other relationship now or previously existing between them and to settle any and all rights of every kind, nature, and description which either of them now has or hereafter may have or claim to have against the other, or in or to any property of the other, whether real, personal or mixed, now owned or which hereafter may be acquired by either of them, or any rights or claims in and to the estate of the other; and

WHEREAS, JOHN has employed and had the benefit of counsel of KATHLEEN ROSEBOROUGH of the law firm of MANDEL, LIPTON AND STEVENSON LIMITED, as (and formerly Wm. Rosing and pro se) his attorneys, and MARY has employed and had the benefit of counsel of EVA SCHWARTZMAN (and formerly DOUG STILES of the law firm of FUQUA, WINTER, STILES & ANDERSON, LTD. and SALLY LECHTER) LICHTER as her attorneys. Each party has had the benefit of advice, investigation, and recommendations with reference to the subject matter of this agreement. The parties acknowledge that each has been informed fully of the wealth, property, estate and income of the other. Each party also acknowledges that he and she is conversant with all of the wealth, property, estate and income of the other, and that each has been informed fully of his and her respective rights in the premises; and

WHEREAS, the parties have also engaged in private mediation with INA BERKLEY and ELAINE COLLINS of Meridian Associates for Financial Equity, Inc. The agreements of the parties with regard to their joint custody arrangements and distribution of their assets and liabilities are attached hereto as Exhibits A and B; and

2

WHEREAS, each party acknowledges that the "discovery process" and the information which may be obtained through that process has been explained to them by their respective attorneys. Both parties acknowledge that discovery has been conducted through interrogatories, the production of financial documents and depositions and each of the parties has instructed their respective attorneys not to pursue the discovery process any further. Each party expressly states that no representation has been made to the other party by his or her attorneys other than that which is contained in this agreement. The parties, after carefully considering the terms and conditions of this agreement, state that they each believe the same to be fair and reasonable under their present circumstances.

NOW, THEREFORE, in consideration of the foregoing and in further consideration of the mutual and several promises and undertakings herein contained and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties hereby freely and voluntarily agree as follows:

## ARTICLE I

## RIGHT OF ACTION

1.1    This agreement is not one to obtain or stimulate a dissolution of marriage.

1.2    The WIFE reserves the right to prosecute any action for dissolution of marriage which she hereafter may bring and to defend any action which has been or may be commenced by the HUSBAND. The HUSBAND reserves the right to prosecute any action for dissolution of marriage which he has brought or hereafter may bring and to defend any action which has been or may be commenced by the WIFE.

3

C000021

## ARTICLE II

## ARRANGEMENTS FOR THE CHILDREN

A.    Parenting Arrangements

2.1    The parties have entered into a Joint Parenting Agreement which is attached hereto as Exhibit A and incorporated herein.

B.    Financial Arrangements

2.2    Child Support

Based on his present income, JOHN will pay MARY as and for child support the sum of Eight Hundred Sixty Dollars ($360.00) per month, which represents twenty-five percent (25%) of his net income of Forty-one Thousand Two Hundred Eighty Dollars ($41,280.00), beginning on June 1, 1995, and continuing on the first of every month thereafter until JEREMY is emancipated as defined in this Agreement.  After JEREMY is emancipated, the amount of child support shall be reduced to eighty percent (80%) of the amount that was being paid for both children.

MARY shall, in accordance with this Agreement, use the child support and be responsible for all of the children's living expenses, including but not limited to, their shelter, food, clothing, transportation, entertainment, incidentals and other expenses.

2.3    Emancipation

JOHN's obligation for child support for the children as provided herein shall terminate upon the first to occur of the following events:

(a)    A child's completion of a high school education or obtaining the age of eighteen (18) years, whichever occurs first;

(c)    The death of a child;

(d)    The child's marriage;

C0060224

(e)    The child having a permanent residence away from the permanent residences of MARY and JOHN;

(f)    MARY's death; or

(g)    The child's entry into the Armed Forces of the United States.

2.4    <u>Medical Insurance for Children</u>

JOHN shall continue to provide medical and hospitalization insurance coverage for the parties' minor children until each child reaches age twenty-two (22) or finishes college, whichever occurs last; provided, however, that if a child becomes emancipated prior to that time because the child marries or enters the Armed Forces, JOHN's obligation to provide this insurance shall terminate.

MARY agrees to submit all bills to JOHN promptly for submission to the insurance company.

The parties shall share in all of the ~~medical~~ expenses not covered by medical insurance in accordance with their respective incomes from all sources.

2.5    <u>Dependency Exemptions</u>

To the extent allowed by law, the parties agree that JOHN shall be entitled to claim both minor children as dependents for the year 1995 and MARY shall execute the appropriate forms to effectuate that JOHN may so claim the children. MARY shall be entitled to claim both minor children as dependents for the years 1996 and thereafter.

2.6    <u>College Expenses for the Children</u>

The college educational expenses of the children shall be paid by the parties in accordance with the Illinois Marriage and Dissolution of Marriage Act; however, the parties agree that the children do have a responsibility to contribute to the costs of their own education. MARY represents that there are trust funds or mutual funds of the children, namely accounts

5

B) *Father-Sons (4000 each approximately)*
*and Templeton Funds (1000 each approximately)*

A) _____, which funds shall not be withdrawn for any other reason than

children's college expenses, except by agreement of the parties.

B) *If either child elects to live at home while attending college, child support*
*payments will continue as* ARTICLE III
*long as they are students, not to extend beyond age 23.*

## WAIVER OF MAINTENANCE

3.1    MARY hereby waives any and all rights to alimony, support, or maintenance,

whether past, present or future, and she shall have no further claims for any reason whatsoever

against JOHN for alimony, support, or maintenance, and she shall be barred forever from

asserting any such claims.

3.2    JOHN hereby waives any and all rights to alimony, support or maintenance,

whether past, present or future, and he shall have no claims for any reason whatsoever against

MARY for alimony, support or maintenance, and he shall be barred forever from asserting any

such claims.

## ARTICLE IV

## LIFE INSURANCE

4.1    In order to secure all his obligations regarding the children, including insurance,

medical expenses, child support and college education under this Agreement, JOHN shall

continue to maintain insurance on his life having unencumbered and irrevocable death benefits

in the amount of One Hundred Fifty Thousand Dollars ($150,000.00) payable for the benefit of
*with Mary as Trustee -*
the children/until JOHN's obligations to the children pursuant to this Agreement are terminated.


To the extent that said insurance is not maintained, there shall be a first lien and charge

against the assets of his estate.

6  C000024

## ARTICLE V

## MEDICAL INSURANCE FOR MARY

5.1    JOHN will continue to provide medical insurance for MARY for four (4) years following the entry of the Judgment for Dissolution of Marriage, for so long as he can do so at a cost reasonably comparable to the present cost for insurance and for so long as he is employed by B. Radtke & Sons or controls that company or for so long as he can provide said insurance for her through other employment.

## ARTICLE VI

## PROPERTY DIVISION

As and for an equitable division of the property of the parties, whether marital or non-marital, the parties agree as follows:

Marital Home

6.1    The parties currently own in joint tenancy the property commonly known as 502 Dublin, Mundelein, Illinois (hereinafter referred to as the "marital home"), and legally described on Exhibit C attached hereto. JOHN shall quit claim his entire right, title and interest in the marital home to MARY upon MARY's securing his release from the present mortgage.

6.2    From the date of the entry of a Judgment for Dissolution of Marriage, MARY shall be responsible for and indemnify and hold JOHN harmless regarding all expenses incident to the home after the effective date of this Agreement, including but not limited to the mortgage, utilities, insurance, maintenance, repairs and real estate taxes for 1995 and subsequent years and capital gains taxes, if any.

6.3    Household Furnishings and Effects *they will reach mutual agreement in regard to* /AR

*pru AR* The parties agree that ~~they will enter into~~ the division of the parties' personal property, such as household ~~items~~, vehicles not already provided for in this

T *MELLE* 

CR00025

entry of a Judgment for Dissolution of Marriage.

      6.4    Investment Accounts/IRAs

      A.    MARY shall retain as her sole property all of her investment accounts designated on Exhibit B as "Investment Accounts MARY" totaling approximately Eighty Thousand Dollars ($80,000.00), and her IRA account of approximately Nineteen Thousand Seven Hundred Dollars ($19,700.00), and JOHN quit claims all of his right, title and interest in the investment accounts and IRA account of MARY upon the entry of a Judgment for Dissolution of Marriage. MARY indemnifies JOHN against any taxes and liabilities regarding these accounts.

      B.    JOHN shall retain as his sole property all of his investment accounts totaling approximately Two Thousand Dollars ($2,000.00) and his IRA account of approximately Six Thousand Three Hundred Dollars ($6,300.00) as designated on Exhibit B, and MARY quit claims all her right, title and interest in the investment accounts and IRA account of JOHN upon the entry of a Judgment for Dissolution of Marriage. JOHN indemnifies MARY against any taxes and liabilities regarding these accounts.

      6.5    B. Radtke & Sons, Inc.

      JOHN shall retain as his sole property all of his interest in B. Radtke & Sons, Inc., free and clear of any claim of MARY, including but not limited to MARY's claims of any amounts due her from B. Radtke & Sons, Inc. regarding loans, interest or anything else whatsoever. Upon the entry of a Judgment for Dissolution of Marriage and the payment of the Forty Thousand Dollars ($40,000.00) due MARY pursuant to paragraph 6.11 of this Agreement, MARY shall execute a general release of all of her claims against B. Radtke & Sons, Inc. Upon the execution of that release, JOHN shall indemnify MARY against all liabilities regarding B. Radtke & Sons, Inc.

8

6.6    Laserworks

JOHN shall retain as his sole property all interest in Laserworks, free and clear of any claims of MARY.

6.7    Other Real Estate

A.    The parties presently own a fifty percent (50%) beneficial interest in the Land Trust Number 32-10215 at First of America Trust Company which holds title to 101 Main Street, Round Lake Park, Illinois, legally described on Exhibit D attached hereto. Upon the execution of this Agreement, MARY shall quit claim her entire right, title and interest in this property to JOHN.

B.    The parties presently own in joint tenancy the property located at 112 Main Street, Round Lake Park, Illinois, legally described on Exhibit E attached hereto. Upon the execution of this Agreement, MARY shall quit claim her entire right, title and interest in this property to JOHN.

6.8    Jermag    *Tale*

The parties have a fifty percent (50%) interest in an entity known as "Jermag" which consists of a receivable from B. Radtke & Sons, Inc. of Twenty-three Thousand Dollars ($23,000.00) and approximately Nine Thousand Dollars ($9,000.00) in the Jermag bank account number 52-0007098-0 at First of America N/E Bank. It is anticipated that there will be at least approximately Sixteen Thousand Dollars ($16,000.00) of expenses for the clean-up, including tank removal of the properties referred to in paragraphs 6.7 and 6.8 above. Notwithstanding the fact that JOHN is awarded these properties pursuant to this Agreement and the Judgment for Dissolution of Marriage, the parties agree to leave those funds in the account to pay for those expenses. They further agree that if there are any funds left over after said expenses are paid, they will divide their interest (i.e. fifty percent (50%)) of the remainder equally between them.

C000027    9

the expenses exceed the amount in the account and will share by percent (% %) of those

expenses equally between them. *MEHe* *JdR*

Both parties attest that they have fully disclosed all accounts

    6.9    Other Financial Accounts and assets and that the information is correct to the
best of their knowledge and reported herein.

Each of the parties shall retain, free and clear of any interest and claim of the other, all

financial accounts, including but not limited to, bank accounts, checking accounts, certificates

of deposit, brokerage accounts and all stocks and bonds in their respective names.

    6.10    Automobiles

MARY shall retain the use of the Volvo automobile that she is presently driving and

JOHN will make arrangements for title to that automobile to be transferred to MARY on January
up to $500 for car repairs and   *MEHe* *JdR*

1, 1997. JOHN will also provide/or cause to be provided automobile insurance on that vehicle

for MARY through January 1, 1997.

MARY shall also retain the Recreational Vehicle, free and clear of any interest of JOHN.

    6.11    JOHN's Payment to MARY

In order to effectuate the equitable distribution of property referred to in the preceding

paragraphs, JOHN shall pay to MARY Forty Thousand Dollars ($40,000.00) within ten (10)

days of the entry of a Judgment for Dissolution of Marriage. In addition, he shall execute a
                                                                    *MEHe* *JdR*      $34,000 *JdR*      *MEHe*
Promissory Note to MARY for Thirty Thousand Dollars ($30,000.00) which Note shall bear
                        compounded monthly      *MEHe* *JdR*
interest at seven percent (7%) beginning in June of 1996 and payments of Ten Thousand Dollars
                                                        1996
($10,000.00) each, plus interest, shall be made by June 30, 1996; June 30, 1997; and June 30,
and the final balance paid in full June 30, 1999.   *MEHe* *JdR*
1998. There shall be no prepayment penalty on this obligation from JOHN to MARY.

    6.12    Transfer of Property Incident to a Dissolution

The transfers of property and funds between the spouses, including payment made by

JOHN to MARY, pursuant to paragraph 6.11 of this Article VI above, are incident to a divorce,

10

and are, therefore, assumed by the parties to be tax free, pursuant to Section 1041 of the Internal

Revenue Code and the applicable laws of the State of Illinois.

## ARTICLE VII

## DEBTS

7.1    JOHN will be responsible for and shall indemnify and hold MARY harmless on

the following liabilities:

      A.    Loan to his mother in the approximate amount of Ten Thousand Dollars

          ($10,000.00);

      B.    Loan from B. Radtke & Sons, Inc. in the approximate amount of One

          Hundred   Fifty   Thousand   Three   Hundred   Seventy-one   Dollars

          ($150,471.00);

      C.    Amount due the orthodontist in the approximate amount of Three

          Thousand Two Hundred Fifty Dollars ($3,250.00);

      D.    Liabilities on the credit cards in his name in the approximate amount of

          Twenty-one Thousand Six Hundred Eighty-seven Dollars ($21,687.00).

      E.    $1500 to Mary's Schwab Margin account. [handwritten]

7.2    MARY shall be responsible for and shall indemnify and hold JOHN harmless on

the following liabilities:

      A.    Loan from her mother in the approximate amount of Seven Thousand Five

          Hundred Dollars ($7,500.00);

      B.    All of her overdrawn accounts and bills outstanding in the approximate

          amount of Three Thousand Dollars ($3,000.00) $1,500.00 [handwritten]

      C.    All other amounts borrowed against her investment accounts and all

          liability on credit cards in her name.

C000029

7.3     Except as provided in this Agreement, JOHN shall be responsible for all of the debts incurred in his name prior to and subsequent to the entry of a Judgment for Dissolution of Marriage and MARY shall be responsible for the debts incurred in her name prior to and subsequent to the entry of a Judgment for Dissolution of Marriage.

## ARTICLE VIII

## ATTORNEYS' FEES

8.1     JOHN shall be responsible for MARY's attorneys' fees and costs, not to exceed Ten Thousand Dollars ($10,000.00). Except as provided in the preceding sentence, each party shall be responsible for their own attorneys' fees and costs in connection with any action for dissolution of marriage presently pending between the parties.

## ARTICLE IX

## GENERAL PROVISIONS

9.1     Waiver of Rights in the Property of the Other

Except as otherwise provided in this Agreement, each of the parties hereto covenants and agrees that each such party shall have and retain sole and exclusive right, title and interest, respectively, in and to each and all of the property in his or her respective possession, or under his or her respective control, upon the effective date of this Agreement, including in said property, and without limitation by reference elsewhere to specific property, all choses in action, real estate, interests as beneficiaries of trusts, bank balances, royalties, bonds, stocks and securities.

9.2     Execution of Documents

Each of the parties hereto hereby agrees to execute and acknowledge, concurrently with the execution hereof, good and sufficient instruments necessary or proper to vest the title and estates in the respective parties hereto, as hereinabove provided, and hereafter, at any time, and

12

...me, to execute and acknowledge any and all documents which may be necessary ...carry out the purposes of this Agreement, and establish of record the sole and ...ownership of the several properties of said parties in the manner herein agreed and ...at. If either party hereof for any reason shall fail or refuse to execute any such ...ents, then this Agreement shall, and it is hereby expressly declared to, constitute a full ...ment transfer, assignment and conveyance of all rights hereinabove designated to be ...red, assigned and conveyed, and a full, present and effective relinquishment and waiver ...ights hereinabove designated to be relinquished and waived.

9.3    Mutual and General Releases

A.    Except as otherwise provided in this Agreement, each of the parties does hereby relinquish, release, waive and quit-claim and grant to the other, his or her heirs, ...l representatives and assigns, all rights of maintenance/alimony, dower, inheritance, ..., distribution, community interest and all other right, title, claim, interest and estate as ...d, wife, widow, widower, or otherwise, by reason of the marital relations existing ...n said parties hereto, under any present or future law, or which he or she otherwise has ...it have, to or against the property and assets of the other, real, personal or mixed, or his ...estate, whether now owned or hereafter in any manner acquired by the other party, ...r in possession or in expectancy, and whether vested or contingent; and each party further ...nts and agrees for himself and herself, his or her heirs, personal representatives and ..., that neither of them will at any time hereafter sue the other, or his or her heirs, ...al representatives, grantees, devisees or assigns, for the purpose of enforcing any or all rights specified in and relinquished hereunder; and further agree that in the event any suit ...e commenced, this Release, when pleaded, shall be and constitute a complete defense to ...ch claim or suit so instituted by either party hereto; and agrees to execute, acknowledge

and deliver, at the request of the other party, his or her heirs, personal representatives, grantees, devisees or assigns, any and all such deeds, releases or other instruments and further reassurances as may be required or reasonably requested to effect or evidence such release, waiver, relinquishment or extinguishment of such rights; provided, however, that nothing herein contained shall operate or be construed as a waiver or release by either party to the other of the obligations on the part of the other to comply with the provisions of this Agreement, or the rights of either party under this Agreement.

B.    Except as otherwise provided in this Agreement, each of the parties hereto hereby waives and relinquishes all right to act as administrator-with-the-will-annexed of the estate of the other party, and each of the parties hereto does further relinquish all right to inherit by intestate succession any of the property of which the other party may die seized or possessed, and should either of the parties hereto die intestate, this Agreement shall operate as a relinquishment of all right of the surviving party hereafter to apply for Letters of Administration in any form, and the estate of such deceased party, if he or she dies intestate, shall descend to the heirs at law of such deceased party, in the same manner as though the parties hereto had never been married, each of the parties hereto respectively reserving the right to dispose, by testament or otherwise, of his or her respective property in any way that he or she may see fit, without any restriction or limitation whatsoever.

C.    Except as otherwise provided in this Agreement, and to the fullest extent that they may lawfully do so, all the rights, claims and demands of every kind, nature and description which each party has, or may hereafter have, or claim to have, against the other, shall be, and the same hereby are, forever discharged, released and ended, and that all matters and charges whatsoever, and any and all manner of action or causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, torts, personal injury, judgment claims and demands

14

C000032

whatsoever, in law or in equity, which each party ever had, now has or which he or she, his or her heirs, executors, administrators or assigns, or any of them, hereafter can, shall or may have against the other (as the case may be) for or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the effective date hereof, shall be, and the same are hereby, forever released, discharged, barred, terminated and extinguished; provided, however, that nothing herein contained shall release or limit the obligation of either party hereto to comply with the other provisions of this Agreement.

9.4    Entire Agreement

This instrument contains the whole and entire agreement made by and between the parties hereto, has been examined by each of the parties, assisted by counsel of their respective choice, and is believed by them to be fair, just and equitable with respect to each of them.

9.5    Counterparts

- This Agreement may be executed in one of more counterparts, which, together, constitute the original hereunder, and shall become effective upon the delivery of any executed counterpart to each of the parties hereto.

9.6    Benefit of Counsel and Voluntary Agreement

Both parties acknowledge that they have had the benefit of the advice and recommendations of their respective counsel and other professionals with reference to the subject matter of this Agreement.  Both parties expressly agree that they have fully and voluntarily entered into this Agreement of their own volition, free of any duress or coercion, and with full knowledge of each and every provision contained in this Agreement and the consequences thereof.

9.7    Effective Date and Incorporation of Agreement into Judgment

In the event either party hereto at anytime hereafter obtains a dissolution of marriage in the cause presently pending between them, this Agreement and all of its provisions shall be

15    C000033

...ment for Dissolution of Marriage, and in no event shall, but

...event shall this Agreement be of any validity unless a Judgment for Dissolution of

Marriage is so entered and the date of entry of such Judgment for Dissolution of Marriage shall

be the effective date of this Agreement. The court of entry of said Judgment for Dissolution of

Marriage shall retain the right to enforce the provisions and terms of this Agreement.

9.8    Governing Law

The parties agree that this Agreement shall be governed by the laws of the State of

Illinois.

9.9    The fact that any draft of this Agreement was prepared by counsel for one of the

parties shall create no presumptions of any kind, nor shall it cause any ambiguities to be

construed against such party.

9.10    Binding Effect

This Agreement shall be binding upon, and inure to the benefit of, the parties hereto, and

their respective heirs, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, MARY and JOHN have hereunto set their respective hands

and seals to this Marital Settlement Agreement as of the day and year first above written.

_____
MARY RADTKE

_____
JOHN RADTKE

Witnessed:

Elaine L. Collins, CFP
Elaine L. Collins

Ina S. Berkley, M.A.
INA S. BERKLEY

16

(5268)    06-02-95  02:05 PM  P1

STATE OF ILLINOIS        )
                         ) SS:
COUNTY OF LAKE           )

I, a Notary Public in and for said County and State as aforesaid, do hereby certify that MARY RADTKE, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that she signed, sealed and delivered the said instrument as her free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and notarial seal this _____ day of _____, 1995.

_____
Notary Public

STATE OF ILLINOIS        )
                         ) SS:
COUNTY OF LAKE           )

I, a Notary Public in and for said County and State as aforesaid, do hereby certify that JOHN RADTKE, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and notarial seal this _____ day of _____, 1995.

_____
Notary Public

17

COUNTY OF LAKE )

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

*PAGE 1 OF 4*

IN RE: THE MARRIAGE OF

MARY ELLEN RADTKE
A/K/A MARY ELLEN HOWER
and
vs

JOHN A. RADTKE

FILED
AUG 24 2000
CIRCUIT CLERK

GEN. NO. 92 D 1279

**ORDER**

THIS MATTER COMING BEFORE THE COURT ON JOHN A. RADTKE'S PETITION FOR SANCTIONS AND ATTORNEYS FEES AND PETITION FOR RULE TO SHOW CAUSE, EACH FILED AUGUST 10, 2000, AND PETITIONER MARY RADTKE'S MOTION TO DISMISS AND MOTION FOR CONTINUANCE, THE FORMER FILED ON TODAYS DATE WITHOUT NOTICE AND THE LATTER BEING UN-FILED AND WITHOUT NOTICE, NOTICE AND JURISDICTION BEING PROPER AS TO THE PETITIONS OF JOHN A RADTKE WHO APPEARS PERSONALLY AND BY ATTORNEY NEAL H. LEVIN, MARY RADTKE APPEARING PRO SE, BOTH PARTIES BEING ALLOWED AN OPPORTUNITY TO PRESENT ORAL ARGUMENTS;

THE COURT FINDS:

① THAT NOTICE OF JOHN A RADTKE'S PETITIONS IS PROPER UNDER THE RULES;

② THAT NO CAUSE EXISTS FOR ANY EXTENSION OF TIME TO RESPOND TO JOHN RADTKE'S PETITIONS.

③ THAT THE FILINGS AND PLEADINGS SO FILED BY MARY RADTKE
(CONTINUED

Dated at Waukegan, Illinois this
24 day of AUG, 20 00.
ORDER PREPARED BY: NEAL H. LEVIN
(Please print name and address)
1970 N. HALSTED
CHICAGO IL 60614

ENTER:

JUDGE

EXHIBIT J 1-4
171-225 rev 12/99

C001011

STATE OF ILLINOIS )
) ss
COUNTY OF LAKE )

*PAGE 2 of 4*

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

IN RE:  THE MARRIAGE OF )
)
MARY ELLEN RADTKE )
and )
)
JOHN A RADTKE )

GEN. NO. __92 D 1279__

ORDER

(CONTINUATION . . .)

AS REFERENCED IN JOHN A RADTKE'S PETITION FOR SANCTIONS ARE FRIVOLOUS, ABUSIVE AND VEXATIOUS;

(4) THAT CAUSE EXISTS TO RESTRAIN ANY FORM OF CONTACT BETWEEN MARY RADTKE AND JOHN A. RADTKE OR ELSIE MANNIX. HIS WIFE,

(5) THAT CAUSE EXISTS TO SANCTION THE CONDUCT OF MARY RADTKE;

NOW THEREFORE. FOR THE REASONS STATED BY THE COURT, IT IS HEREBY ORDERED :

(1) THAT MARY RADTKE'S MOTION TO DISMISS IS DENIED;

(2) THAT MARY RADTKE'S MOTION FOR CONTINUANCE IS DENIED;

(3) THAT JOHN A. RADTKE'S PETITION FOR SANCTIONS AND ATTORNEYS FEES IS GRANTED. MARY RADTKE IS SANCTIONED AS FOLLOWS :

　　a). MARY RADTKE SHALL NOT FILE ANY FURTHER PLEADINGS OR OTHER DOCUMENTS IN THIS CAUSE, PROVIDED, HOWEVER. THAT MARY RADTKE MAY SEEK (CONTINUED...)

Dated at Waukegan, Illinois this
24 day of Aug , 20 00.
ORDER PREPARED BY: NEAL H. LEVIN
(Please print name and address)
1970 N. HALSTED
CHICAGO 60614

ENTER: (CONTINUED...)

_____
JUDGE

171-225 rev 12/99

J 2/4

C001013

STATE OF ILLINOIS )
               ) ss
COUNTY OF LAKE )

IN THE CIRCUIT COURT OF THE NINETEENTH *PAGE 3 of 4*
JUDICIAL CIRCUIT LAKE COUNTY, ILLINOIS

IN RE:  THE MARRIAGE OF

MARY ELLEN RADTKE

    and

JOHN A. RADTKE

**FILED**

AUG 24 2000

CIRCUIT CLERK

GEN. NO.    92 D 1279

## ORDER

(CONTINUATION ...)

      LEAVE OF COURT TO FILE ANY FUTURE PLEADINGS, OR MOTIONS, OR OTHER DOCUMENTS. LEAVE OF COURT SHALL ONLY BE SOUGHT BY THE FILING OF A NOTICE OF MOTION INDICATING THE RELIEF SOUGHT. NO ATTACHMENTS SHALL ACCOMPANY THE NOTICE OF MOTION. ANY SUCH NOTICE OF MOTION SHALL BE SERVED UPON MR. LEVIN ONLY IN ACCORDANCE WITH APPLICABLE RULES. IF THE NOTICE OR THE RELIEF SOUGHT IS ALSO FRIVOLOUS, ABUSIVE OR VEXATIOUS, MARY RADTKE SHALL BE SUBJECT TO FURTHER SANCTIONS.

      b.) MARY RADTKE IS <u>RESTRAINED</u> FROM HAVING <u>ANY</u> CONTACT WITH JOHN A. RADTKE OR ELSIE MANNIX, HIS WIFE.

      c.) ATTORNEYS FEES AND COSTS ARE AWARDED IN FAVOR OF JOHN A. RADTKE AND AGAINST MARY RADTKE IN AN AMOUNT TO BE DETERMINED UPON SUBMISSION OF AN AFFIDAVIT IN SUPPORT OF ATTORNEYS FEES AND HEARING THEREON.

                    (CONTINUED ...)

Dated at Waukegan, Illinois this
24 day of AUG , 20 00 .

ORDER PREPARED BY: NEAL K. LEVIN
        (Please print name and address)
        1970 N. HALSTED
        CHICAGO 60614

ENTER:

_____
        JUDGE

J - 3 - 4

171-225 rev 12/99

C001012

.ATE OF ILLINOIS)
                )  ss
COUNTY OF LAKE  )

IN THE CIRCUIT COURT OF THE NINETEENTH    *Page 4 of 4*
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

IN RE:  THE MARRIAGE OF )
                        )
MARY ELLEN RADTKE       )
        and             )
                        )
JOHN A. RADTKE          )    GEN. NO. 92 D 1279

**ORDER**

(CONTINUATION. )

④ THAT A RULE TO SHOW CAUSE IS ISSUED AS TO WHY MARY
RADTKE SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR
HER FAILURE TO COMPLY WITH THE JUDGMENT FOR DISSOLUTION
DATED JUNE 6, 1995, AS SET OUT IN JOHN A. RADTKE'S
PETITION FOR RULE TO SHOW CAUSE.

⑤ THAT HEARING ON THE ATTORNEYS FEES AND RULE TO SHOW
CAUSE IS SET FOR SEPTEMBER 14, 2000, AT 9:00 A.M.
IN ROOM 103 WITHOUT FURTHER NOTICE.

Dated at Waukegan, Illinois this
24 day of Aug , 20 00 .

ENTER:

ORDER PREPARED BY: ___NEAL LEVIN___
(Please print name and address)
1970 N. HALSTED
CHICAGO 60614

_____ JUDGE

J 4/4

171-225 rev 12/99

STATE OF ILLINOIS )
                ) SS
COUNTY OF LAKE )

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| MARY ELLEN HOMER, | ) | |
| a/k/a MARY ELLEN RADTKE, | ) | |
| | ) | |
| Petitioner, | ) | No. 92 D 1279 |
| | ) | |
| JOHN A. RADTKE, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER**

This cause coming on to be heard on the following matters:

a) Motion of Mary Homer-Radtke to vacate order of August 24, 2000.
b) Motion of Mary Homer-Radtke to Dissolve the Injunction granted August 24, 2000.
c) Motion of Mary Homer-Radtke for Rehearing Motion for Waiving Fees Pursuant to 735 ILCS 5/5-105 of the Code of Civil Procedure.
d) Setting of attorneys fees as a sanction against Mary Homer-Radtke pursuant to the order of August 24, 2000.

Both parties appearing in court, Mary Homer-Radtke appearing pro se, John A. Radtke appearing with his attorney Neal H. Levin, the court having considered the evidence regarding attorney's fees and the arguments regarding the various motions, and the Court being fully informed in the premises,

It is hereby ordered as follows:

A. With regard to the Motion of Mary Homer-Radtke to Dissolve the Injunction granted August 24, 2000 and the Motion of Mary Homer-Radtke to Vacate the Order of August 24, 2000:

   1. The order of August 24, 2000 is hereby modified to eliminate the provision in paragraph b of the order. The restriction on contact was imposed as a sanction for Ms. Homer-Radtke's attempt to use harassing and vexatious court pleadings to interfere with Mr. Radtke's personal life. With entry of this order revolving all pending matters, the sanction restricting contact is no longer necessary.

   2. Except as modified by this order and as previously modified by the order of October 10, 2000 which eliminated the provisions of paragraph a, the order of August 24, 2000 remains in full force and effect.

B. With regard to the Motion for rehearing motion for waiving fees:

Exhibit K

On September 10, 1999 an order was entered allowing Ms. Homer-Radtke to file her petition without payment of fees pursuant to 735 ILCS 5/5-105. On September 28, 2000 she filed a motion requesting leave to file a motion for the waiving of additional fees. That motion was denied. In her Motion for rehearing motion for waiving fees she requests that she be provided without cost a transcript of the hearing of September 14, 2000 and all the necessary fees for duplicating and printing costs accrued in the law library. It is not clear from her motion for rehearing why she needs these items to commence, prosecute, defend, or enforce relief in a civil action. It is therefore ordered that the motion for rehearing motion for waiving fees is denied.

C. With regard to the award of attorney's fees:

The court assesses fees in the amount of $5,000 against Mary Homer-Radtke in favor of John A. Radtke and judgment is entered against her in that amount.

D. All pending matters before the court have been resolved. This is a final order and there is no just reason for delaying enforcement or appeal.

ENTER:

Jane D. Waller, Circuit Judge

Entered in Waukegan, Illinois
this ___ day of January 2001.

c: Mary Homer-Radtke
   408 N. Lake Street #108
   Mundelein, Illinois 60060

   Neal H. Levin
   1970 N. Halsted
   Chicago, Illinois 60614

Memorandum of Judgment



LAKE COUNTY RECORDER
FEB - 5 2001

**IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL DISTRICT
LAKE COUNTY, ILLINOIS**

**MARY ELLEN HOMER**
a/k/a **MARY ELLEN RADTKE,**

**Petitioner,**

**v.**

**JOHN A. RADTKE,**

**Respondent.**

4640390

**CASE NO.   92 D 1279**

## MEMORANDUM OF JUDGMENT

On <u>**January 9, 2001**</u>, Judgment was entered in this court in favor of the respondent, <u>**John A. Radtke**</u>, and against petitioner, <u>**Mary Ellen Homer**</u>, whose address is: <u>**502 Dublin, Mundelein, Illinois**</u> in the amount of <u>**$5,000.00 (five thousand dollars and 00/100 DOLLARS).**</u>

Lot 21 in Block 14 in Loch Lomond, a subdivision in part of Section 24, Township 44 North, Range 10 East of the Third Principal Meridian, according to the Plat thereof, recorded April 7, 1954 as Document No. 820686 in Book 32 of Plats, Page 98 in Lake County, Illinois, situated in Lake County, Illinois.

**PIN 10-24-404-021**

**CERTIFIED:**

*Sally D. Coffelt*

Clerk of the Court

Attorneys for Plaintiff
NEAL H. LEVIN & ASSOCIATES, P.C.
The Bridgeview Bank Building
1970 N. Halsted Street
Chicago, Illinois 60614
312/421-2100
Attorney No: 19932

**SALLY DEADRICK COFFELT, CLERK OF THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS**

Exhibit L

(k)  Name or names of present owner or owners of the real estate: Casa Blanca Trust dated January, 1998.

(l)  **Names of other persons who are joined as defendants whose interest in or lien on the mortgaged real estate is sought to be terminated:**

> Libertyville National Bank by way of a mortgage from John A. Radtke and Mary Radtke recorded 12/3/81 as Document No. 2141174 in the sum of $32,000.00;
>
> Loch Lomond Property Owners Association by way of a public notice of annual fees recorded 1/16/86 as Document No. 2413895.

(m)  Name or names of defendants claimed to be personally liable for deficiency (if any): John A. Radtke and Mary Ellen Radtke.

(n)  Capacity in which Plaintiff brings this suit: Plaintiff is the owner and legal holder of the note, mortgage, and indebtedness.

(o)  Facts in support of request for attorneys' fees and of costs and expenses:  Plaintiff is required to retain counsel for prosecution of this foreclosure and to incur substantial attorney's fees, court costs, title insurance or abstract costs and other expenses, which should be added to the balance secured by said mortgage.

(p)  Plaintiff does not offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale.

(q)  Facts in support of possession of the premises upon sale confirmation:  That the plaintiff or the purchaser at the sale or the holder of the certificate of sale or deed is entitled to possession of the premises after the 30th day after the foreclosure sale is confirmed; that pursuant to 735 ILCS 5/15-1508(b) (1992 State Bar Edition) the order confirming the sale shall include an award of possession of the real estate as of the date 30 days after the entry of the order; that said order shall further provide, pursuant to 735 ILCS 5/15-1701(d) (1992 State Bar Edition), that the sheriff may execute upon this order and evict you from the real estate without further notice or order of this Court.

REQUEST FOR RELIEF

3

Exhibit .M
Complaint 12/11/98

As of June 15, 2001, the following amounts are due:

Principal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $14,211.39
Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,786.18
Deficit Escrow . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,958.89
Suspense Balance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (530.76)
Inspection Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 264.50
Late Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 251.66
Total . . . . . . . . . . . .   . .    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $22,941.86

Total Amount Due as of 06/15/01 is $22,941.86, plus court costs, title costs, and Plaintiff's attorney's fees.
Per diem interest accruing after 10/15/98 is $3.43.

(k)  Name or names of present owner or owners of the real estate: Casa Blanca Trust dated January, 1998.

(l)  Names of other persons who are joined as defendants whose interest in or lien on the mortgaged real estate is sought to be terminated:

Libertyville National Bank by way of a mortgage from John A. Radtke and Mary Radkte recorded 12/3/81 as Document No. 2141174 in the sum of $32,000.00;

Loch Lomond Property Owners Association by way of a public notice of annual fees recorded 1/16/86 as Document No. 2413895.

(m)  Name or names of defendants claimed to be personally liable for deficiency (if any): John A. Radtke and Mary Ellen Radtke.

(n)  Capacity in which Plaintiff brings this suit:  Plaintiff is the owner and legal holder of the note, mortgage, and indebtedness.

(o)  Facts in support of request for attorneys' fees and of costs and expenses: Plaintiff is required to retain counsel for prosecution of this foreclosure and to incur substantial attorney's fees, court costs, title insurance or abstract costs and other expenses, which should be added to the balance secured by said mortgage.

(p)  Plaintiff does not offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale.

(q)  Name or names of Defendants whose right to possess the mortgaged real

3

Exhibit M
Amended 6/19/01

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
COUNTY OF LAKE

ASSOCIATED MORTGAGE, INC.,      )
                                )
          Plaintiff,            )
                                )
     vs.                        )      No. 98 CH
                                )
JOHN A. RADTKE, MARY ELLEN RADTKE, )
CASA-BLANCA TRUST dated January, )
1998, LIBERTYVILLE NATIONAL BANK, )
AND LOCH LOMOND PROPERTY OWNERS )
ASSOCIATION,                    )
                                )
          Defendants.           )

STATE OF WISCONSIN    )
                      ) SS
COUNTY OF PORTAGE     )

     <u>William J. Sullivan</u>      , being first duly sworn on oath,
states as follows:

     1.   That he is an agent of the Plaintiff and has authority
to execute this Affidavit on behalf of the Plaintiff.

     2.   That he has personal knowledge of the matters contained
herein and, if sworn as a witness, could testify competently
thereto.

     3.   On or about August 26, 1977 John A. Radtke and Mary
Ellen Radtke, mortgagors, and Mundelein Savings and Loan
Association, mortgagee, executed a note, mortgage and assignment
of rents.

     4.   On or about August 26, 1977, Mundelein Savings & Loan
Association was acquired by Great Northern Mortgage and
thereafter Great Northern Mortgage was acquired by Associated
Mortgage, Inc.

     5.   The original note is lost and is no longer in affiant's



Exhibit N

C000007

custody.

    6.  Affiant has made a careful search for the note in the places in which they were kept and all of the places in which they were likely to be kept and has been requested a search by all the holders of the note, including Great Northern Mortgage, Co., and is not able to find the original note or a copy thereof.

    7.  Affiant did not intentionally lose or destroy the note.

    8.  Attached as exhibits are copies of correspondence from Mundelein Savings and Loan Association to Mr. and Mrs. John Radtke dated August 26, 1977, September 20, 1977, and October 10, 1977, the Mundelein Savings and Loan Association Good Faith Estimate of Settlement Charges executed on August 20, 1977, Mundelein Savings and Loan Association Mortgage Escrow Account Act executed by John A. Radtke and Mary Ellen Radtke and the Mundelein Savings and Loan Association Loan Cost Disclosure Statement dated August 26, 1977 executed by John A. Radtke, Mary Ellen Radtke and Stanley P. Rouse, Vice-president of Mundelein Savings and Loan Association.

    FURTHER AFFIANT SAYETH NOT.

ASSOCIATED MORTGAGE, INC.,

BY: _____

William J. Sullivan

Subscribed and sworn to
before me this _30_ day of
Nov., 1998.

Notary Public
My Commission Expires 8/26/01

g:\users\julie\forms\losdoc.sf

2

N

## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

ASSOCIATED MORTGAGE INC.,      )
      )
      Plaintiff,      )    No. 98 CH 1240
      )
      vs.      )    Judge Walter
      )
JOHN A. RADTKE, MARY ELLEN      )
RADTKE, CASA-BLANCA TRUST      )
dated January, 1998, LIBERTYVILLE      )
NATIONAL BANK, AND LOCK      )
LOMOND PROPERTY OWNERS      )
ASSOCIATION,      )
      )
      Defendants.      )

FILED

MAR 2 1 2001

CIRCUIT CLERK

### COUNTERCLAIM

NOW COMES Defendant/Counter-Plaintiff, John A. Radtke, by and through his attorneys, Neal H. Levin & Associates, P.C., and for his Counterclaim pursuant to 735 ILCS 5/15-1504(h), states as follows:

1.    That on or about January 9, 2001, the Honorable Jane D. Waller entered a judgment order awarding attorney fees in favor of Counterclaimant, John A. Radtke, and against Defendant, Mary Radtke, in the amount of $5,000.00 in the case of Mary Ellen Homer a/k/a Mary Ellen Radtke v. John A. Radtke, 92 D 1279, in Nineteenth Judicial Circuit Court of Lake County, Illinois.

2.    That on or about February 5, 2001, Counterclaimant duly filed with the Recorder of Deeds, Lake County, Illinois, a Memorandum of Judgment as to Defendant Mary Radtke and as against the property which is the subject of this mortgage foreclosure action. A copy of The Memorandum of Judgment with the aforementioned judgment order is attached hereto as an *Appendix*.

3.    That pursuant to 735 ILCS 5/15/1504(h), this Counterclaim is presented in lieu of an Answer to the Complaint to Foreclose Mortgage and is deemed to constitute a statement that the Counterclaimant does not have sufficient knowledge to form a belief as to the truth or falsity of the allegations of the Complaint. Accordingly, Counterclaimant demands strict proof thereof.



Exhibit O

WHEREFORE, Defendant/Counter-Plaintiff, John A. Radtke, prays for judgment in its favor and against all remaining parties, in addition to other relief which this Court deems just and equitable.

Respectfully submitted,
JOHN A. RADTKE

By: _____
One of his attorneys

Sheila A. O'Laughlin, Esq.
Neal H. Levin & Associates, P.C.
The Bridgeview Bank Building
1970 N. Halsted
Chicago, IL 60614
312/421-2100
312/421-1881
ARDC No. 6203156

C000563



Judge William Homer
1118 W Keith Ave
Waukegan, IL 60085

MARY HOMER
C/O HELEN HOMER
1000 CAMELOT DR. #6207
HARLINGEN, TX 78550



WILLIAM F. HOMER, TRUSTEE   09/01
1118 KEITH AVE.
WAUKEGAN, IL   60085-1742

PAY TO
THE ORDER OF   Mary Homer

Five Hundred Dollars   00/100

Waukegan Savings and Loan sa
PO BOX 10 • WAUKEGAN, ILLINOIS 60079

MEMO

70-7377/2719
028004159103

DATE   5/24/02

$ 500.00

DOLLARS

THE PREMIER CLUB

1005

⑆271973775⑆ 028004159103⑈ 1005

Exhibit P

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

ASSOCIATED MORTGAGE, INC.,   )
                             )
            Plaintiff,       )
                             )
        v.                   )   Gen. No. 98 CH 1240
                             )
MARY ELLEN RADTKE, et al.,   )
                             )
            Defendants.      )

**FILED**

AUG 1 4 2001

CIRCUIT CLERK

## MOTION UNDER CODE SECTION 5/2-619.1 TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER SECTION 5/2-615 FOR BEING SUBSTANTIALLY INSUFFICIENT IN LAW, OR, ALTERNATIVELY, UPON CERTAIN DEFECTS OR DEFENSES UNDER SECTION 5/2-619

Defendant, Mary Homer-Radtke, pursuant to section 5/2-619.1 of the civil practice [735 ILCS 5/2-619.1 (1998 State Bar Edition)] asks this court to dismiss the amended complaint of plaintiff filed June 19, 2001.

## MOTION TO DISMISS THE COMPLAINT FOR BEING SUBSTANTIALLY INSUFFICIENT IN LAW UNDER SECTION 5/2-615

Defendant, Mary Homer-Radtke pursuant to section 5/2-615 of the civil practice [735 ILCS 5/2-615 (1998 State Bar Edition)] asks this Court to dismiss plaintiff's Amended Complaint filed June 19, 2001 for being substantially insufficient in law.

1.)  On June 19, 2001 plaintiff filed plaintiff's AMENDED COMPLAINT TO FORECLOSE MORTGAGE.

2.)  Section 5/15-1504 of the civil practice [735 ILCS 5/15-1504 (1998 State Bar Edition)], which deals with judicial foreclosure pleadings, provides, in pertinent part:

s 15-1504.  Pleadings and service.

(a) Form of Complaint.  A foreclosure complaint may be in substantially the following form:

(1) Plaintiff files this complaint to foreclose the mortgage …

(2) Attached as … Exhibit "B" is a copy of the note secured thereby.

(c) Allegations.  The statements contained in a complaint in the form set forth in subsection (a) of Section

-1-

C001001

*Exhibit Q*

15-1504 are deemed and construed to include allegations
as follows:

… (2) that the exhibits attached are true and correct
copies of the mortgage and note and are incorporated and
made a part of the complaint by express reference … .

3.)    Plaintiff's AMENDED COMPLAINT TO FORECLOSE MORTGAGE fails to
attach original note or a true and correct copy of the note as mandated
by section 5/15-1504(a)(2) and section 5/15-1504(c)(2).

4.)    Section 5/15-1504 clearly, unambiguously, and expressly pro-
vides that the original mortgage note or a true and correct copy of the
mortgage note be attached to the complaint.

5.)    Plaintiff provides as a substitute for the promissory note
contract what plaintiff characterizes as a lost note affidavit and a
document that plaintiff characterizes as "an unsigned copy of the Promis-
sory Note."

6.)    The language or the intent of section 5/15-1504 does not ex-
pressly or by implication allow for a substitution of a true and correct
copy of the note.

7.)    Where the language of a statute is clear and unambiguous, a
court must give the statute effect as written, without reading into the
statute exceptions, limitations or conditions that the legislature did
not express. See *Davis v. Toshiba Machine Co., America*, 186 Ill.2d 181,
710 N.E.2d 399, 401 (Ill. 1999); see also *Clay v. Kuhl*, 297 Ill.App.3d
15, 696 N.E.2d 1245, 1249 (Ill.App. 2 Dist. 1998)

8.)    Presenting what plaintiff characterizes as a lost note affida-
vit and a document that plaintiff characterizes as an unsigned copy of
the Promissory Note attempts to enlarge section 5/15-1504. see *Henrich
v. Libertyville High School*, 186 Ill.2d 381, 712 N.E.2d 298, 305 (Ill.
1998)

9.)    Plaintiff improperly attempts to inject a provision not found
in section 5/15-1504. see, e.g. *Droste v. Kerner*, 34 Ill.2d 495, 217
N.E.2d 73, 79 (Ill. 1966)

10.)   Therefore, plaintiff's AMENDED COMPLAINT TO FORECLOSE MORTGAGE
is insufficient as a matter of law because the original note or a true
and correct copy of the note is not attached as mandated by section 5/15-
1504(a)(2) and section 5/15-1504(c)(2).

11.)   Alternatively, plaintiff Associated Mortgage, Inc. must allege
facts sufficient to bring his or her claim within the scope of the cause
of action asserted. see *Vernon v. Schuster*, 179 Ill.2d 338, 688 N.E.2d
1172, 1176 (Ill. 1997)

12.) It is a fundamental rule of pleading that the test of the sufficiency of a complaint is whether or not the essentials of a cause of action are alleged therein. *Williams v. Rock River Sav. & Loan Ass'n*, 51 Ill.App.2d 5, 200 N.E.2d 848, 852 (Ill.App. 2 Dist. 1964); see also *Brown v. Broadway Perryville Lumber Co.*, 156 Ill.App.3d 16, 508 N.E.2d 1170, 1174 (Ill.App. 2 Dist. 1987)

13.) To plead properly a cause of action in breach of contract, a plaintiff must allege the essential elements of the cause of action. *Nielsen v. United Services Auto. Ass'n*, 244 Ill.App.3d 658, 612 N.E.2d 526, 529 (Ill.App. 2 Dist. 1993)

14.) First, the amended complaint fails to aver that all conditions precedent to defendant's liability have been performed or excused. see *Brainerd v. First Lake County Nat. Bank of Libertyville*, 109 Ill.App.2d 251, 248 N.E.2d 542, 545 (Ill.App. 2 Dist. 1969)

15.) Furthermore, to state a claim for breach of contract, the plaintiff need allege, among other things, the terms of that contract. see *Skinner v. Shirley of Hollywood, a Div. of Nat. Corset Supply House*, 723 F.Supp. 50, 52 (N.D.Ill. 1989)

16.) To state a claim for breach of contract, it is insufficient for the plaintiffs to make the conclusory allegation that defendant defaulted on the contract; rather, plaintiff must state the facts underlying the breach, such as when and how the breach occurred. see *Industrial Hard Chrome. Ltd. v. Hetran, Inc.*, 64 F.Supp.2d 741, 745 (N.D.Ill. 1999); see also *Servpro Industries, Inc. v. Schmidt*, 905 F.Supp. 475, 479 (N.D.Ill. 1995)

17.) In the instant case, a breach of contract of a promissory note is alleged, but the original, or a true and correct copy of the original contract, the promissory note, is not provided.

18.) Plaintiff provides as a substitute for the promissory note contract what plaintiff characterizes as a lost note affidavit and a document that plaintiff characterizes as "an unsigned copy of the Promissory Note."

19.) Plaintiff's complaint, plus plaintiff's lost note affidavit, plus the document that plaintiff characterizes as "an unsigned copy of the Promissory Note" do not allow a construction of the essential terms of said contract, most notably, the conditions under which a breach of the contract would take place.

20.) The terms of the promissory note contract that set out under what circumstances the contract is breached is an essential element of the cause of action, and plaintiff fails to allege the terms of the contract that resulted in a breach of the contract by the defendant.

21.) Furthermore, a civil complaint in Illinois is required to plead the ultimate facts which give rise to the cause of action. see



*Board of Educ. of City of Chicago v. A, C and S, Inc.*, 131 Ill.2d 428, 546 N.E.2d 580, 584 (Ill. 1989); see also *People v. $1,124,905 U.S. Currency and One 1988 Chevrolet Astro Van*, 177 Ill.2d 314, 685 N.E.2d 1370, (Ill. 1997)

22.)  Complaint must allege facts sufficient to bring plaintiff's claim for remedy within scope of legally recognized cause of action. *Adkins v. Sarah Bush Lincoln Health Center*, 129 Ill.2d 497, 544 N.E.2d 733, 743 (Ill. 1989)

23.)  The plaintiff is unable to plead the ultimate facts that resulted in the breach because plaintiff does not provide the terms of the contract that allegedly resulted in the breach. see e.g. *Fanning v. LeMay*, 38 Ill.2d 209, 230 N.E.2d 182, 184 (Ill. 1967)

24.)  Additionally, the complaint is defective because the complaint does not contain such information as to inform the defendant of the nature of the claim against the defendant. see *Stinson v. Physicians Immediate Care, Ltd.*, 269 Ill.App.3d 659, 646 N.E.2d 930, 932 (Ill.App. 2 Dist. 1995); see also *People ex rel. Fahner v. Carriage Way West, Inc.*, 88 Ill.2d 300, 430 N.E.2d 1005, 1008 (Ill. 1981)

25.)  A complaint must contain facts sufficient to establish a duty on part of defendant before a cause of action can be stated. see *Brainerd v. First Lake County Nat. Bank of Libertyville*, 109 Ill.App.2d 251, 248 N.E.2d 542, 545 (Ill.App. 2 Dist. 1969)

In conclusion, because plaintiff's AMENDED COMPLAINT TO FORECLOSE MORTGAGE does not meet the mandate of section 5/15-1504 of the civil practice act [735 ILCS 5/15-1504 (1998 State Bar Edition)] in that said amended complaint does not attach a true and correct copy of the promissory note on which the mortgage is based; or, because the document that plaintiff characterizes as a lost note affidavit and a document that plaintiff characterizes as "an unsigned copy of the Promissory Note" which plaintiff attaches as a substitute for a true and correct copy of the note does not meet the statutory mandate; or, notwithstanding that, because the amended complaint does not set out the essential elements of a cause of action for breach of contract; or, because the amended complaint does not contain such information as to inform the defendant of the nature of the claim against the defendant; WHEREFORE, the defendant,

-4-



Mary Homer-Radtke, asks of this honorable court to dismiss the AMENDED COMPLAINT TO FORECLOSE MORTGAGE for the insufficiency of the pleading, for it's failure to state a cause of action.

<u>MOTION TO DISMISS THE COMPLAINT BASED UPON CERTAIN DEFECTS OR DEFENSES UNDER SECTION 5/2-619</u>

Defendant, Mary Homer-Radtke, pursuant to section 5/2-619 of the civil practice [735 ILCS 5/2-619 (West 1993)], supported by attached affidavit, asks this Court for involuntary dismissal of the AMENDED COMPLAINT TO FORECLOSE MORTGAGE based upon certain defects or defenses.

37.) Section 5/2-619(a)(7) of the code of civil procedure [735 ILCS 5/2-619 (West 1998)] provides in pertinent part:

s 2-619. Involuntary dismissal based upon certain defects or defenses. (a) Defendant may … file a motion for dismissal of the action … upon … the following grounds … :

(2) That the plaintiff does not have legal capacity to sue ….

38.) Plaintiff has not demonstrated in plaintiff's AMENDED COMPLAINT TO FORECLOSE MORTGAGE that plaintiff is the holder of the note upon which plaintiff brings the instant action.

39.) Furthermore, section 5/2-619(a)(7) of the code of civil procedure [735 ILCS 5/2-619 (West 1998)] provides in pertinent part:

s 2-619. Involuntary dismissal based upon certain defects or defenses. (a) Defendant may … file a motion for dismissal of the action … upon … the following grounds … :
(7) That the claim asserted is unenforceable under the provisions of the Statute of Frauds.

40.) Section 80/1 of the Illinois Civil Liabilities Frauds Act [740 ILCS 80/1 (1998 State Bar Edition)] provides in pertinent part:

80/1. Writing--Necessity--Signature

s 1. No action shall be brought, whereby … to charge any person … upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith … .

41.) Section 80/2 of the Illinois Civil Liabilities Frauds Act [740 ILCS 80/2 (1998 State Bar Edition)] provides in pertinent part:

C001905



80/2. Land--Writing--Signature--Exceptions

s 2. No action shall be brought to charge any person upon any
contract for the sale of lands … or any interest in or con-
cerning them, for a longer term than one year, unless such
contract or some memorandum or note thereof shall be in writ-
ing, and signed by the party to be charged therewith ….

42.) In order for a sale of land to be valid, it must comply with
the Statute of Frauds. *Jones v. Melrose Park Nat. Bank*, 228 Ill.App.3d
249, 592 N.E.2d 562, 567 Ill.App. 1 Dist. 1992)

43.) To take the case out of the statute of frauds, written evi-
dence of an agreement between the parties is necessary. *Ballingall v.
Bradley*, 1854, 16 Ill. 373.

44.) Under the Statute of Frauds, a person cannot enforce a real
estate contract unless:  (1) there is a written memorandum or note on one
or more documents;  (2) the documents collectively contain a description
of the property and the terms of sale, including price and manner of
payment; and (3) the memorandum or note contains the signature of the
party to be charged. *Hubble v. O'Connor*, 291 Ill.App.3d 974, 684 N.E.2d
816, 823 (Ill.App. 1 Dist. 1997)

45.) Three requirements must be satisfied to avoid a properly
raised statute of frauds defense: (1) there must be a written memorandum
or note on one or more documents, (2) the documents collectively must
contain a description of the property and the terms of sale, including
price and manner of payment, and (3) the memorandum or note must contain
the signature of the party to be charged. *GLS Development, Inc. v. Wal-
Mart Stores, Inc.*, 944 F.Supp. 1384, 1393 (N.D.Ill. 1996); *Prodromos v.
Poulos*, 202 Ill.App.3d 1024, 1028, 560 N.E.2d 942, 946 (1st Dist.1990)

47.) The documents collectively brought forth in said AMENDED
COMPLAINT TO FORECLOSE MORTGAGE do not contain a description of the prop-
erty and the terms of sale, including price and manner of payment.

48.) And, the memoranda brought forth by plaintiff in said plain-
tiff's AMENDED COMPLAINT TO FORECLOSE MORTGAGE does not contain the sig-
nature of any party to be charged, specifically, defendant Mary Homer-
Radtke.

49.) Additionally, section 5/2-619(a)(1) of the code of civil pro-
cedure [735 ILCS 5/2-619 (West 1998)] provides in pertinent part:

s 2-619.  Involuntary dismissal based upon certain defects or
defenses.  (a) Defendant may … file a motion for dismissal of
the action … upon … the following grounds … :

(1) That the court does not have jurisdiction of the subject
matter of the action, provided the defect cannot be removed by
a transfer of the case to a court having jurisdiction.

C001006



50.) Defendant Mary Homer-Radtke holds lawful title to subject property, pursuant to an act of the Congress of the United States of America, in the form of the Federal Land Patent on subject real property. A true and correct copy of referenced Federal Land Patent and Declaration of Land Patent is attached hereto as Exhibit III.

51.) 28 USC sec. 1338, concerning any civil action or proceeding arising under any Act of Congress relating to patents, provides in pertinent part:

> s 1338. Patents …
>
> (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents … .

52.) This court has no jurisdiction of the federal question posed in this case by the referenced federal land patent under 28 USC sec. 1338.

In conclusion, because this court lacks subject matter jurisdiction because defendant Mary Homer-Radtke is the lawful owner of subject real property under a federal land patent pursuant to an act of the United States Congress, and that jurisdiction over said matters is exclusively in the federal courts under 28 USC 1338; because the plaintiff does not have the legal capacity to sue; or because the complaint is in violation of the Statute of Frauds, defendant Mary Homer-Radtke asks of this honorable court that the AMENDED COMPLAINT TO FORECLOSE MORTGAGE be involuntarily dismissed.

Respectfully submitted,

Mary Homer-Radtke

August 14, 2001
Mary Homer-Radtke
c/o 408 N. Lake Street #108
Mundelein, Illinois (60060)
847 949-9329

C001907



IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| MARY ELLEN HOMER<br>a/k/a MARY ELLEN RADTKE, | ) ) ) | |
| Petitioner, | ) ) | **92 D 1279** |
| vs. | ) ) ) | **Honorable Emilio B. Santi** |
| JOHN A. RADTKE, | ) ) | |
| Respondent. | ) ) | |

## PETITION FOR SANCTIONS AND ATTORNEYS' FEES
## PURSUANT TO ILLINOIS SUPREME COURT RULE 137

NOW COMES Respondent, John A. Radtke, by and through his attorneys, Neal H. Levin & Associates, P.C., and for his motion for sanctions and attorneys' fees pursuant to Illinois Supreme Court Rule 137 against Petitioner, Mary Ellen Homer a/k/a Mary Ellen Radtke. In support, Respondent states as follows:

1.      The Respondent respectfully requests the Court to strike all pleadings attached hereto on grounds that they have no basis in law or fact, are vexatious and harassing, and therefore are sanctionable under Illinois Supreme Court Rule 137. Respondent further requests the Court to award attorneys' fees in order to prevent further abuse by Petitioner.

2.      Petitioner is using the court system as her personal publishing company with the intent of broadcasting her ill will towards Respondent. Vexed by her divorce, she has filed a litany of pleadings intended solely to harass Respondent and make this Court a forum for her rage. The pleadings are without basis in law or fact and must be struck. To wit:

- Petition To Rescind Enforcement of Judgment and To Return to Status Quo As of July 5, 1995, attached hereto as *Exhibit A*, filed July 26, 2000;

- Subpoena Duces Tecum, attached hereto as *Exhibit B*, filed on July 20, 2000, demanding records showing (1) the guest list with addresses for Respondent and his fiancée's wedding, and (2) the address of the priest or judge who will witness the marriage. The intent of the subpoena is not only to harass Respondent but his fiancée and guests.

Exhibit R-1

Furthermore, the Notice of Filing falsely states that the divorce is invalid, "John Allen Radtke and Mary Ellen Homer remain legal husband and wife.";

- Notice Contesting Announcement filed on July 20;

- Motion to Set Aside and Vacate, attached hereto as *Exhibit C*, presented on July 31, 2000, and filed on July 5, 1995;

- Bill Quia Timet, attached hereto as *Exhibit D,* filed on October 14, 1999;

- Bill Quia Timet with Bankruptcy Court caption, attached hereto as *Exhibit E*, filed on October 4, 1999;

- Complaint Pursuant to the Wife Abandonment Act, 750 ILCS 15/1 et seq., attached hereto as *Exhibit F,* filed February 8, 2000;

- Notice and Demand – Charging Letter of Violations of 720 ILCS 5/16-1.3 To Neal H. Levin, d/b/a Attorney, attached hereto as *Exhibit G*;

- Amended Motion to Vacate Void Order In Divorce Case 92D1279, attached hereto as *Exhibit H*, filed November 10, 1999;

- Verified Affidavit of Fact In Regard to "No Signature" On Any Court Related Contracts with Sharon Keller and Public Aid – A Division of Child Support Enforcement Dissolution of Marriage, In Regard To Divorce Case 92D1279 In the State Court 19th Judicial District Circuit Court In Lake County – UCC 1-207 and UCC 1-10, attached hereto as *Exhibit I*, filed on December 21, 1999;

- Post-Trial Motion In Arrest Of Judgment And For A New Trial, attached hereto as *Exhibit J*, filed September 24, 1999;

- Notice and Demand In Regard to Child Support Payment attached hereto as *Exhibit K*;

- Miscellaneous other erroneous pleadings and documents, including copies of letters filed March 20, 2000; Notice of Default and letter filed January 19, 2000; Notice of Demand and Notice of Default filed December 21, 1999; various affidavits filed on December 6, 10 and 14, 1999; Bill Quia Timet, Petitioner's First Notice to Produce, Notice and Demand to Court filed November 10, 1999; Notice and Demand to Court, filed November 2, 1999; miscellaneous papers filed October 22, 1999.

3. Petitioner has also falsely alleged collusion and improper conduct on part of Respondent's attorney and the Lake County judiciary. See letter attached hereto as



*Exhibit L.* Such accusations are unsupported by fact or law. Importantly, Petitioner consistently has been denied any relief sought. *See* Orders attached hereto as *Exhibit M.*

4. Illinois Supreme Court Rule 137 allows a court to impose sanctions against a party or counsel who files a pleading or motion that is not well grounded in fact, is not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or is interposed for any improper purpose. The purpose of the rule is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions based upon unsupported allegations of fact or law. Fremarek v. John Hancock Mutual Life Insurance Co., 272 Ill. App. 3d 1067, 1074, 651 N.E.2d 601 (1995). Rule 137 is not intended to penalize litigants for their lack of success, but rather, its aim is to restrict litigants who plead frivolous or false matters without any basis in the law. Fremarek, 272 Ill. App. 3d at 1074; Fischer v. Brombolich, 246 Ill. App. 3d 660, 664, 616 N.E.2d 743 (1993).

5. The above pleadings clearly meet Rule 137's definition of "not well grounded in fact", "not warranted by existing law or a good-faith argument" and are, without question, filed for an "improper purpose." The Respondent has endured Petitioner's vexatious and harassing tactics for almost a year and it must stop.

6. Accordingly, Respondent respectfully requests the Court to strike all pleadings noted above and award attorneys' fees as a sanction against Petitioner in order to prevent further abuse of judicial process.

WHEREFORE, Respondent John A. Radtke prays this honorable Court for an Order striking the pleadings attached hereto and award attorneys' fees as a sanction pursuant to Illinois Supreme Court Rule 137, and for any additional relief that this Court deems just and equitable.

Respectfully submitted,
JOHN A. RADTKE

By: _____
       One of his attorneys

R-1

STATE OF ILLINOIS    )
                             ) ss.
COUNTY OF COOK     )

## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

| | |
|---|---|
| MARY ELLEN HOMER<br>a/k/a MARY ELLEN RADTKE, )<br><br>Petitioner, )<br><br>vs. )<br><br>JOHN A. RADTKE, )<br><br>Respondent. ) | 92 D 1279 |

### AFFIDAVIT OF NEAL H. LEVIN

I, Neal H. Levin, the Affiant, being duly sworn and under oath, do state as follows:

1.    That I am the attorney of record for the Respondent, John A. Radtke.

2.    That as of November 28, 2000, there is owing to Respondent from the Petitioner legal fees in relation to the instant divorce proceedings in the approximate amount of $9892.17, and related costs in the amount of $448.95.

3.    That significant and unnecessary costs were incurred as a direct result of the improper conduct of the Petitioner in violation of Illinois Supreme Court Rule 137. Respondent has been forced to defend a litany of pleadings intended solely to harass Respondent.

4.    That on August 24, 2000, this Court found that various of the pleadings and other filings occasioned by Mary Ellen Radtke are frivolous, abusive and vexatious and that cause exists to sanction the conduct of Mary Ellen Radtke including the assessment of attorneys fees incurred by John Radtke in these proceedings.

Exhibit R-2

5.    That the usual and customary hourly rate for my services is $200.00. The usual and customary rate for my associates' services is $150.00 per hour. The usual and customary rate for my administrative assistant's services is $50.00 per hour. These fees are reasonable in light of the market and the services provided.

6.    That I am the Principal of the law firm Neal H. Levin & Associates, P.C., located in Chicago, Illinois. I graduated in 1980 from DePaul University College of Law and was admitted to the Illinois bar in 1990 where I remain in good standing. I am also admitted to the trial bar of the U.S. District Court for the Northern District of Illinois. I am a member of the Illinois State Bar Association and 7th Circuit Bar Association. Other qualifications include member and former Director of the Chicago Bar Association Young Lawyer's Division and I remain a member of the American Bar Association, the Illinois State Bar Association, and the American and Illinois Trial Lawyers Association.

7.    That a detailed statement of fees and costs related to the divorce proceedings are attached hereto.

Further, Affiant sayeth naught.

Neal H. Levin

28th day of November 2000.

Notary Public

"OFFICIAL SEAL"
LEE GALBRAITH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3/30/2003

C060113

R-2

Neal H Levin & Associates, P C
2 33 PM                                     Slip Listing                                    Page    1

---

### Selection Criteria

Slip Classification    Open
Client (hand select)   Include: Radtke
Activity (hand selec   Include: Administration; Advance, Analysis; Closing, Collection Fee; Compilation, Court; Deliver;
                       Dep; Draft; E-Mail; Fax Corr; File, Hearing; Interview; Investigate, Memo; Miscellaneous; Modify;
                       NCC; Office Conf; Outside Conf; Preparation; Research, Review; Tel Conf; Written Corr

---

Rate Info - identifies rate source and level

| Slip ID / Dates and Time / Posting Status / Description | Timekeeper / Activity / Client / Reference | Units / DNB Time / Est. Time / Variance | Rate / Rate Info / Bill Status | Slip Value |
|---|---|---|---|---|
| 4388       TIME<br>10/5/1999              10/5/1999<br>Billed       G.11438     11/11/1999<br>client docs re Mary Ellen bk,<br>adversaries;<br>review docket;<br>telephone conference with client re<br>same | NHL<br>Review<br>Radtke | 1.08<br>0.00<br>0.00<br>0.00 | 200 00<br>U@3 | 216.00 |
| 4387       TIME<br>10/7/1999              10/7/1999<br>Billed       G:11438     11/11/1999<br>various motions in underlying bk and<br>adversaries | NHL<br>Court<br>Radtke | 0.94<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 188.00 |
| 4389       TIME<br>10/7/1999              10/7/1999<br>Billed       G:11438     11/11/1999<br>client re status of court proceedings | NHL<br>Tel Conf<br>Radtke | 0.25<br>0.25<br>0.00<br>0.00 | 200.00<br>U@3<br>No Charge | 50.00 |
| 4148       TIME<br>10/13/1999 3:48 PM     10/13/1999<br>Billed       G:11438     11/11/1999<br>of new client file | OFF<br>Preparation<br>Radtke | 0.75<br>0.00<br>0.00<br>0.00 | 50.00<br>U@3 | 37.50 |
| 4390       TIME<br>10/25/1999             10/25/1999<br>Billed       G:11438     11/11/1999<br>Mary Ellen charging letters, divorce<br>order and pleadings, objection to<br>removal in adversary | NHL<br>Review<br>Radtke | 0.50<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 100.00 |
| 4391       TIME<br>11/1/1999              11/1/1999<br>Billed       G.11438     11/11/1999<br>client re response to motion in domestic<br>relations matter | NHL<br>Tel Conf<br>Radtke | 0.17<br>0.17<br>0.00<br>0.00 | 200.00<br>U@3<br>No Charge | 34.00 |

C000115

R-2

| Slip ID Dates and Time Posting Status Description | Timekeeper Activity Client Reference | Units DNB Time Est. Time Variance | Rate Rate Info Bill Status | Slip Value |
|---|---|---|---|---|
| 4393        TIME<br>11/1/1999              11/1/1999<br>Billed       G:11438      11/11/1999<br>continued bk proceedings | NHL<br>Court<br>Radtke | 0.75<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 150.00 |
| 4286        TIME<br>11/3/1999              11/3/1999<br>Billed       G:11438      11/11/1999<br>of Response, CoS and NoM for<br>FedExing to Jones for filing | OFF<br>Preparation<br>Radtke | 0.33<br>0.00<br>0.00<br>0.00 | 50.00<br>U@3 | 16.67 |
| 4392        TIME<br>11/3/1999              11/3/1999<br>Billed       G:11438      11/11/1999<br>response to motion in domestic<br>relations matter | NHL<br>Preparation<br>Radtke | 1.67<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 334.00 |
| 4394        TIME<br>11/8/1999              11/8/1999<br>Billed       G:11438      11/11/1999<br>notice of feloy violations, motions for<br>reconsideration, bk | NHL<br>Review<br>Radtke | 0.42<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 84.00 |
| 4739        TIME<br>12/10/1999            12/10/1999<br>Billed       G:11503      12/20/1999<br>Motions for Remand, all adversary<br>matters | NHL<br>Preparation<br>Radtke | 1.67<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 334.00 |
| 4740        TIME<br>12/10/1999            12/10/1999<br>Billed       G:11503      12/20/1999<br>Motions for Remand | OFF<br>File<br>Radtke | 0.75<br>0.00<br>0.00<br>0.00 | 50.00<br>U@3 | 37.50 |
| 4748        TIME<br>12/14/1999            12/14/1999<br>Billed       G:11503      12/20/1999<br>Mary Ellen motions for BK proceedings;<br>motion to vacate orders, reinstate and<br>remove | NHL<br>Review<br>Radtke | 0.33<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 66.00 |
| 4749        TIME<br>12/14/1999            12/14/1999<br>Billed       G:11503      12/20/1999<br>client re suppressing fed court record,<br>new motions | NHL<br>Tel Conf<br>Radtke | 0.17<br>0.17<br>0.00<br>0.00 | 200.00<br>U@3<br>No Charge | 34.00 |

R-2

11/26/2000                          Neal H. Levin & Associates, P.C.                    Page    3
2.33 PM                                      Slip Listing

| Slip ID | | Timekeeper | Units | Rate | Slip Value |
|---|---|---|---|---|---|
| Dates and Time | | Activity | DNB Time | Rate Info | |
| Posting Status | | Client | Est. Time | Bill Status | |
| Description | | Reference | Variance | | |
| 4754 TIME | | NHL | 1.33 | 200.00 | 266.00 |
| 12/16/1999 | 12/16/1999 | Court | 0.00 | U@3 | |
| Billed    G:11503 | 12/20/1999 | Radtke | 0.00 | | |
| various pending motions | | | 0.00 | | |
| 4815 TIME | | OFF | 0.25 | 50.00 | 12.50 |
| 12/20/1999 | 12/20/1999 | Preparation | 0.00 | U@3 | |
| Filed    G 11503 | 12/20/1999 | Radtke | 0.00 | | |
| of copy set of various Pleadings and | | | 0.00 | | |
| Orders to send to Radtke, 33 pgs. | | | | | |
| 4843 TIME | | LEG | 0.25 | 50.00 | 12.50 |
| 12/22/1999 | 12/22/1999 | Preparation | 0.00 | U@3 | |
| Billed    G:11595 | 1/21/2000 | Radtke | 0.00 | | |
| of various pleadings for mailing to | | | 0.00 | | |
| Radtke | | | | | |
| 4844 TIME | | LEG | 0.17 | 50.00 | 8.33 |
| 12/23/1999 | 12/23/1999 | Preparation | 0.00 | U@3 | |
| Billed    G:11595 | 1/21/2000 | Radtke | 0.00 | | |
| of order for mailing to Radtke | | | 0.00 | | |
| 5146 TIME | | NHL | 0.67 | 200.00 | 134.00 |
| 1/17/2000 | 1/17/2000 | Review | 0.00 | U@3 | |
| Billed    G:11595 | 1/21/2000 | Radtke | 0.00 | | |
| Review Charging | | | 0.00 | | |
| Letter;correspondence to Mary Ellen re | | | | | |
| same | | | | | |
| 5339 TIME | | LEG | 0.08 | 50.00 | 4.17 |
| 1/27/2000 | 1/27/2000 | Fax Corr | 0.08 | U@3 | |
| Billed    G:11658 | 2/22/2000 | Radtke | 0.00 | No Charge | |
| Fax Correspondence to Radtke, Order | | | 0.00 | | |
| of Dismissal and Notice from Homer, 4 | | | | | |
| pgs. | | | | | |
| 5429 TIME | | NHL | 0.17 | 200.00 | 34.00 |
| 2/2/2000 | 2/2/2000 | Tel Conf | 0.17 | U@3 | |
| Billed    G:11658 | 2/22/2000 | Radtke | 0.00 | No Charge | |
| Telephone Conference with: client re B. | | | 0.00 | | |
| Radtke and Laser Works share and | | | | | |
| interest issue to VP | | | | | |
| 7434 TIME | | NHL | 0.08 | 200.00 | 16.00 |
| 6/13/2000 | 6/13/2000 | Tel Conf | 0.08 | U@3 | |
| Billed    G:11902 | 6/20/2000 | Radtke | 0.00 | No Charge | |
| Telephone Conference with: client re | | | 0.00 | | |
| personal financial matters | | | | | |

C000117

R-2

Neal H. Levin & Associates, P.C.
Slip Listing

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| 8348          TIME<br>7/21/2000              7/21/2000<br>Billed       G:12019      8/17/2000<br>Review Mary Homer motions, notice,<br>letter to client | NHL<br>Review<br>Radtke | 0.17<br>0.00<br>0.00<br>0.00 | 200 00<br>U@3 | 34 00 |
| 8349          TIME<br>7/21/2000              7/21/2000<br>Billed       G.12019      8/17/2000<br>Telephone Conference with: client re<br>Homer filings, letter, strategies | NHL<br>Tel Conf<br>Radtke | 0 25<br>0 00<br>0 00<br>0.00 | 200 00<br>U@3 | 50 00 |
| 8330          TIME<br>7/24/2000              7/24/2000<br>Billed       G:12019      8/17/2000<br>Telephone Conference with: client re<br>July 27 divorce court appearance | NHL<br>Tel Conf<br>Radtke | 0.17<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 34.00 |
| 8643          TIME<br>7/31/2000              7/31/2000<br>Billed       G:12019      8/17/2000<br>Court Appearance re: Homer motions;<br>Telephone conference with client re<br>same | NHL<br>Court<br>Radtke | 4.67<br>0.00<br>0 00<br>0.00 | 200.00<br>U@3 | 934.00 |
| 8648          TIME<br>7/31/2000              7/31/2000<br>Billed       G:12019      8/17/2000<br>Telephone Conference with: RK re<br>restraining order, motion to strike, RTSC | NHL<br>Tel Conf<br>Radtke | 0.33<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 66.00 |
| 8695          TIME<br>8/4/2000                8/4/2000<br>Billed       G:12019      8/17/2000<br>Memorandum to: SAO re petition for<br>restraining order, petition for RTSC,<br>motion to strike, background | NHL<br>Memo<br>Radtke | 0.33<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 66.00 |
| 8756          TIME<br>8/4/2000                8/4/2000<br>Billed       G:12019      8/17/2000<br>Review Memo from NHL re petition for<br>restraining order, petition for RTSC,<br>motion to strike, background | SAO<br>Review<br>Radtke | 0.17<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 25.00 |
| 8454          TIME<br>8/11/2000              8/11/2000<br>Billed       G:12019      8/17/2000<br>Draft motion to strike. | SAO<br>Draft<br>Radtke | 1.75<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 262.50 |

R-2

Neal H. Levin & Associates, P C
2 33 PM
Slip Listing
Page    5

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| 8453      TIME<br>8/11/2000           8/11/2000<br>Billed      G:12019    8/17/2000<br>Research regarding sanctions pursuant<br>to Rule 137. | SAO<br>Research<br>Radtke | 0 33<br>0.00<br>0 00<br>0 00 | 150 00<br>U@3 | 50.00 |
| 8452      TIME<br>8/11/2000           8/11/2000<br>Billed      G.12019    8/17/2000<br>Review file. | SAO<br>Review<br>Radtke | 0 75<br>0 00<br>0 00<br>0.00 | 150.00<br>U@3 | 112.50 |
| 8702      TIME<br>8/14/2000           8/14/2000<br>Billed      G:12019    8/17/2000<br>Review client correspondence re Mary's<br>letter to Elsie, attached affidavits;<br>Telephone conference with client re<br>same | NHL<br>Review<br>Radtke | 0 33<br>0 00<br>0.00<br>0.00 | 200.00<br>U@3 | 66 00 |
| 8708      TIME<br>8/14/2000           8/14/2000<br>Billed      G:12019    8/17/2000<br>Review draft motion to strike;<br>Telephone conference with client re<br>scheduling hearing on petition for<br>restraining order | NHL<br>Review<br>Radtke | 0.17<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 34.00 |
| 8455      TIME<br>8/15/2000           8/15/2000<br>Billed      G:12019    8/17/2000<br>Modify motion to strike per NHL<br>instruction. | SAO<br>Modify<br>Radtke | 1.00<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 150.00 |
| 8456      TIME<br>8/15/2000           8/15/2000<br>Billed      G:12019    8/17/2000<br>Office Conference with: LEG regarding<br>other pleadings filed by Petitioner in<br>motion. | SAO<br>Office Conf<br>Radtke | 0.17<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 25.00 |
| 8733      TIME<br>8/15/2000           8/15/2000<br>Billed      G:12019    8/17/2000<br>Office Conference with: SAO regarding<br>other pleadings filed by Petitioner in<br>motion. | LEG<br>Office Conf<br>Radtke | 0.17<br>0.00<br>0.00<br>0.00 | 50.00<br>U@3 | 8.33 |

R-2

25/2000                              Noah H. Levin & Associates, P C
2.33 PM                                    Slip Listing                                  Page    6

| Slip ID Dates and Time Posting Status Description | Timekeeper Activity Client Reference | Units DNB Time Est. Time Variance | Rate Rate Info Bill Status | Slip Value |
|---|---|---|---|---|
| 8782    TIME 8/16/2000              8/16/2000 Billed      G:12019   8/17/2000 Modify motion for sanctions | SAO Modify Radtke | 0.75 0.00 0.00 0.00 | 150 00 U@3 | 112.50 |
| 8783    TIME 8 16/2000              8 16/2000 Billed      G:12019   8/17 2000 Preparation of motion for rule to show cause | SAO Preparation Radtke | 0 75 0 00 0 00 0 00 | 150.00 U@3 | 112.50 |
| 8784    TIME 8/16/2000              8/16/2000 Billed      G:12019   8/17/2000 Memorandum to: LEG, NHL re service of motions | SAO Memo Radtke | 0 17 0 00 0.00 0 00 | 150.00 U@3 | 25.00 |
| 8796    TIME 8/16/2000              8/16/2000 Billed      G:12019   8/17/2000 Review amended Petition for Sanctions; Memo to client re same | NHL Review Radtke | 0.17 0.00 0.00 0.00 | 200.00 U@3 | 34.00 |
| 8895    TIME 8/17/2000              8/17/2000 Billed      G:12073   9/20/2000 Preparation of Petition for Sanctions exhibits, 300 pgs. | LEG Preparation Radtke | 0.67 0.00 0.00 0.00 | 50.00 U@3 | 33.33 |
| 8825    TIME 8/17/2000              8/17/2000 Billed      G:12073   9/20/2000 Review and modify, Petition for RTSC | NHL Review Radtke | 0.33 0.00 0.00 0.00 | 200.00 U@3 | 66.00 |
| 8840    TIME 8/18/2000              8/18/2000 Billed      G:12073   9/20/2000 Telephone Conference with: SAO re assembly and service of petitions | NHL Tel Conf Radtke | 0.33 0.00 0.00 0.00 | 200.00 U@3 | 66.00 |
| 9036    TIME 8/18/2000              8/18/2000 Billed      G:12073   9/20/2000 Compilation of motion for sanctions and motion for rule to show cause. | SAO Compilation Radtke | 2.00 0.00 0.00 0.00 | 150.00 U@3 | 300.00 |
| 9037    TIME 8/18/2000              8/18/2000 Billed      G:12073   9/20/2000 | SAO Tel Conf Radtke | 0.25 0.00 0.00 | 150.00 U@3 | 37.50 |

R-2

11/26/2000                          Neal H. Levin & Associates, P C
2 34 PM                                    Slip Listing                              Page     7

| Slip ID | | Timekeeper | Units | Rate | Slip Value |
|---|---|---|---|---|---|
| Dates and Time | | Activity | DNB Time | Rate Info | |
| Posting Status | | Client | Est. Time | Bill Status | |
| Description | | Reference | Variance | | |
| | | | 0.00 | | |

Telephone Conference with: Waukegan
counsel re filing.

| | | | | | |
|---|---|---|---|---|---|
| 9038 | TIME | SAO | 0 33 | 150.00 | 49.50 |
| 8/18/2000 | 8/18/2000 | Tel Conf | 0.00 | U@3 | |
| Billed | G 12073 | 9/20/2000 | Radtke | 0 00 | |
| | | | 0 00 | | |
| Telephone Conference with: NHL regarding filing of motions. | | | | | |
| | | | | | |
| 9066 | TIME | NHL | 3.50 | 200.00 | 700.00 |
| 8/24/2000 | 8/24/2000 | Court | 0.00 | U@3 | |
| Billed | G:12073 | 9/20/2000 | Radtke | 0.00 | |
| | | | 0.00 | | |
| Court Appearance re: Petition for Sanctions, RTSC | | | | | |
| | | | | | |
| 8860 | TIME | LEG | 0.25 | 50.00 | 12.50 |
| 8/24/2000 | 8/24/2000 | Preparation | 0.00 | U@3 | |
| Billed | G:12073 | 9/20/2000 | Radtke | 0.00 | |
| | | | 0.00 | | |
| Preparation of Order and letter for FedEx to Radtke | | | | | |
| | | | | | |
| 9078 | TIME | NHL | 0.17 | 200.00 | 34.00 |
| 8/25/2000 | 8/25/2000 | Tel Conf | 0.00 | U@3 | |
| Billed | G:12073 | 9/20/2000 | Radtke | 0.00 | |
| | | | 0.00 | | |
| Telephone Conference with: Alan Jones re Aug 31 court appearance | | | | | |
| | | | | | |
| 9074 | TIME | NHL | 0.17 | 200.00 | 34.00 |
| 8/25/2000 | 8/25/2000 | Tel Conf | 0.17 | U@3 | |
| Billed | G:12073 | 9/20/2000 | Radtke | 0.00 | No Charge | |
| | | | 0.00 | | |
| Telephone Conference with: client re Mary's Motion for Substitution of Judge | | | | | |
| | | | | | |
| 9175 | TIME | SAO | 0.75 | 150.00 | 112.50 |
| 8/29/2000 | 8/29/2000 | Draft | 0.00 | U@3 | |
| Billed | G:12073 | 9/20/2000 | Radtke | 0.00 | |
| | | | 0.00 | | |
| Draft NHL's affidavit for attorneys' fees | | | | | |
| | | | | | |
| 9112 | TIME | NHL | 0.17 | 200 00 | 34.00 |
| 9/1/2000 | 9/1/2000 | Tel Conf | 0.00 | U@3 | |
| Billed | G:12073 | 9/20/2000 | Radtke | 0.00 | |
| | | | 0.00 | | |
| Telephone Conference with: AEJ re status of proceedings | | | | | |
| | | | | | |
| 8929 | TIME | LEG | 0.05 | 50.00 | 2.50 |
| 9/5/2000 | 9/5/2000 | Fax Corr | 0.00 | U@3 | |
| Billed | G:12073 | 9/20/2000 | Radtke | 0.00 | |
| | | | 0.00 | | |
| Fax Correspondence to NHL, Notice of Appeal, 2 pgs. | | | | | |

R-2

Neal H  Levin & Associates, P C
Slip Listing

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|---|
| 9115<br>9/5/2000<br>Billed    G:12073<br>Review notice of appeal, notice of filing;<br>telephone conference with client re<br>same | TIME<br>9/5/2000<br>9/20/2000 | NHL<br>Review<br>Radtke | 0.17<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 34 00 |
| 8877<br>9/6/2000<br>Billed    G:12073<br>Telephone Conference with Lake Clerk<br>re Notice of Appeal date | TIME<br>9/6/2000<br>9/20/2000 | LEG<br>Tel Conf<br>Radtke | 0 17<br>0.00<br>0.00<br>0.00 | 50 00<br>U@3 | 8 33 |
| 9319<br>9/13/2000<br>Billed    G:12073<br>Preparation Affidavit in Support of<br>Attorneys Fees | TIME<br>9/13/2000<br>9/20/2000 | NHL<br>Preparation<br>Radtke | 0.67<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 134.00 |
| 9321<br>9/14/2000<br>Billed    G:12073<br>Outside Conference with: client re prep<br>for pending motions | TIME<br>9/14/2000<br>9/20/2000 | NHL<br>Outside Conf<br>Radtke | 0.42<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 84.00 |
| 9322<br>9/14/2000<br>Billed    G:12073<br>Court Appearance re: pending motions | TIME<br>9/14/2000<br>9/20/2000 | NHL<br>Court<br>Radtke | 4.33<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 866.00 |
| 9544<br>10/9/2000<br>Billed    G:12135<br>Fax Correspondence to AEJ, NoF,<br>NoM and Motion for leave to file, 6 pgs. | TIME<br>10/9/2000<br>10/27/2000 | LEG<br>Fax Corr<br>Radtke | 0.08<br>0.00<br>0.00<br>0.00 | 50.00<br>U@3 | 4.17 |
| 9676<br>10/11/2000<br>Billed    G:12135<br>Review Affidavit of NHL re attorneys<br>fees, billing | TIME<br>10/11/2000<br>10/27/2000 | NHL<br>Review<br>Radtke | 0.17<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 34.00 |
| 9675<br>10/11/2000<br>Billed    G:12135<br>Telephone Conference with: client re<br>financial matters, prep of 10/13 hearing | TIME<br>10/11/2000<br>10/27/2000 | NHL<br>Tel Conf<br>Radtke | 0.17<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 34.00 |

R-2

| Slip ID Dates and Time Posting Status Description | Timekeeper Activity Client Reference | Units DNB Time Est. Time Variance | Rate Rate Info Bill Status | Slip Value |
|---|---|---|---|---|
| 9527       TIME 10/11/2000        10/11/2000 Billed      G:12135   10/27/2000 Preparation of NHL affidavit for filing | LEG Preparation Radtke | 0.33 0.00 0.00 0.00 | 50.00 U@3 | 16.67 |
| 9680       TIME 10/13/2000        10/13/2000 Billed      G.12135   10/27/2000 Court Appearance re: outstanding matters | NHL Court Radtke | 3.67 0.00 0.00 0.00 | 200.00 U@3 | 734.00 |
| 9681       TIME 10/13/2000        10/13/2000 Billed      G:12135   10/27/2000 Memorandum to: SAO re appeal, Associates Foreclosure, attorneys fees update | NHL Memo Radtke | 0.25 0.00 0.00 0.00 | 200.00 U@3 | 50.00 |
| 9600       TIME 10/16/2000        10/16/2000 Billed      G:12135   10/27/2000 Fax Correspondence to SAO, Notice of Appeal, 2 pgs. | LEG Fax Corr Radtke | 0.05 0.00 0.00 0.00 | 50.00 U@3 | 2.50 |
| 9650       TIME 10/17/2000        10/17/2000 Billed      G:12135   10/27/2000 Research Illinois Supreme Court Rules re appeal. | SAO Research Radtke | 0.33 0.00 0.00 0.00 | 150.00 U@3 | 50.00 |
| 9760       TIME 10/19/2000        10/19/2000 Billed      G:12135   10/27/2000 Research regarding final judgments, interlocutory appeals and certification requirements, frivolous appeals, appellate court rules for filing on motion to dismiss, and filing record. | SAO Research Radtke | 2.50 0.00 0.00 0.00 | 150.00 U@3 | 375.00 |
| 9764       TIME 10/21/2000        10/21/2000 Billed      G:12135   10/27/2000 Draft motion to dismiss appeal and memorandum in support. | SAO Draft Radtke | 3.75 0.00 0.00 0.00 | 150.00 U@3 | 562.50 |
| 9768       TIME 10/23/2000        10/23/2000 Billed      G:12135   10/27/2000 Research re on requirement for filing record on appeal. | SAO Research Radtke | 0.33 0.00 0.00 0.00 | 150.00 U@3 | 50.00 |

R-2

11/28/2000                    Noarth Levin & Associates, P C
2.34 PM                              Slip Listing                                    Page    10

| Slip ID Dates and Time Posting Status Description | Timekeeper Activity Client Reference | Units DNB Time Est. Time Variance | Rate Rate Info Bill Status | Slip Value |
|---|---|---|---|---|
| 9913        TIME<br>11/1/2000                11/1/2000<br><br>Telephone Conference with: Kim Casey regarding status of foreclosure and memo NHL re same. | SAO<br>Tel Conf<br>Radtke | 0.25<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 37.50 |
| 9928        TIME<br>11/8/2000                11/8/2000<br><br>Research regarding appellate rules for filing motion to dismiss, order, affidavit, record, and exhibits. | SAO<br>Research<br>Radtke | 0.33<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 50.00 |
| 9933        TIME<br>11/8/2000                11/8/2000<br><br>Memorandum to: LEG regarding filing requirements for motion to dismiss in appellate court. | SAO<br>Memo<br>Radtke | 0.17<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 25.00 |
| 9926        TIME<br>11/8/2000                11/8/2000<br><br>Draft order for motion to dismiss appeal, notice of filing, certificate of service, affidavit of NHL in support of motion to dismiss. | SAO<br>Draft<br>Radtke | 1.50<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 225.00 |
| 9927        TIME<br>11/8/2000                11/8/2000<br><br>Telephone Conference with: clerk of appellate court second district regarding procedure for filing a motion to dismiss appeal, record, and supporting exhibits. | SAO<br>Tel Conf<br>Radtke | 0.17<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 25.00 |
| 9883        TIME<br>11/15/2000              11/15/2000<br><br>Preparation of copy set of pleadings from Homer to be sent to John via mail | LEG<br>Preparation<br>Radtke | 0.33<br>0.00<br>0.00<br>0.00 | 50.00<br>U@3 | 16.67 |
| 10143       TIME<br>11/21/2000              11/21/2000<br><br>Review and modify motion, affidavit, memo in supoort of motion to dismiss appeal | NHL<br>Review<br>Radtke | 0.67<br>0.00<br>0.00<br>0.00 | 200.00<br>U@3 | 134.00 |

R-2

Neal H. Levin & Associates, P C
Slip Listing

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| 10154　　TIME<br>11/22/2000　　　11/22/2000<br><br>Preparation of Exhibits for Motion to Dismiss Appeal and Memorandum in Support | LEG<br>Preparation<br>Radtke | 2.25<br>0.00<br>0 00<br>0.00 | 50 00<br>U@3 | 112.50 |
| 10175　　TIME<br>11/22/2000　　　11/22/2000<br><br>Review court rules regarding filing, brief format and exhibits for Motion to Dismiss | SAO<br>Review<br>Radtke | 0 25<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 37.50 |
| 10176　　TIME<br>11/22/2000　　　11/22/2000<br><br>Telephone Conference with: Clerk of Appellate court re court rules for filing, brief format and exhibits for motion to dismiss | SAO<br>Tel Conf<br>Radtke | 0.17<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 25.00 |
| 10177　　TIME<br>11/22/2000　　　11/22/2000<br><br>Telephone Conference with: LEG re compilation of exhibits, exhibit format and filing requirements | SAO<br>Tel Conf<br>Radtke | 0.08<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 12.50 |
| 10178　　TIME<br>11/22/2000　　　11/22/2000<br><br>Memorandum to: LEG re compilation of exhibits, exhibit format and filing requirements | SAO<br>Memo<br>Radtke | 0.08<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 12.50 |
| 10179　　TIME<br>11/22/2000　　　11/22/2000<br><br>Draft Notice of Filing, Proof of Service and Cover Page for Exhibits | SAO<br>Draft<br>Radtke | 1.00<br>0.00<br>0.00<br>0.00 | 150.00<br>U@3 | 150.00 |
| 10155　　TIME<br>11/27/2000　　　11/27/2000<br><br>Preparation of Exhibits for Motion to Dismiss Appeal and Memorandum in Support and final compilation of documents for Fedexing to the Clerk and mailing to Mary Homer | LEG<br>Preparation<br>Radtke | 2.75<br>0.00<br>0.00<br>0.00 | 50.00<br>U@3 | 137.50 |

C000125

R-2

11/26/2003
2:34 PM

Neal H. Levin & Associates, P C
Slip Listing

Page     12

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| Grand Total | | | | |
| | Billable | 60.65 | | 9686 00 |
| | Unbillable | 1.09 | | 206.17 |
| | Total | 61.74 | | 9892.17 |

R-2

Neal H. Levin & Associates, P.C.
Slip Listing

---

Selection Criteria

---

Slip Classification     Open
Client (hand select)    Include: Radtke
Activity (hand selec    Include: Adjustments; Appraisal; Bond Fee; Cert Copies; Co-Counsel; Delivery; Depo. Cost; Fax;
                        FedEx; Filing Fee; Invest. Srvc; LEXIS; Late Fee; Long Distance, Marshal, Misc.; Photocopies;
                        Postage; Publish Fee; Recording Fee; Reporter; Roundtable; Service Fee; Sheriff; Transcript;
                        Westlaw

---

Rate Info - identifies rate source and level

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| 4240          EXP<br>10/21/1999          10/21/1999<br>Billed          G:11438          11/11/1999<br>Radtke pleadings copy set | OFF<br>Photocopies<br>Radtke | 57 | 0.05 | 2.85 |
| 4502          EXP<br>10/26/1999          10/26/1999<br>Billed          G:11503          12/20/1999<br>to AEJ, documents to file | OFF<br>FedEx<br>Radtke | 1 | 12.75 | 12.75 |
| 4295          EXP<br>10/29/1999          10/29/1999<br>Billed          G:11438          11/11/1999<br>from Radtke, Pleadings and various<br>documents, 28 pgs. | OFF<br>Fax<br>Radtke | 28 | 0.50 | 14.00 |
| 4340          EXP<br>11/3/1999          11/3/1999<br>Billed          G:11438          11/11/1999<br>Response and NoM, CoS, 30 pgs. | OFF<br>Photocopies<br>Radtke | 30 | 0.05 | 1.50 |
| 4346          EXP<br>11/5/1999          11/5/1999<br>Billed          G:11438          11/11/1999<br>from AEJ, documents filed in Lake | OFF<br>FedEx<br>Radtke | 1 | 12.00 | 12.00 |
| 4353          EXP<br>11/5/1999          11/5/1999<br>Billed          G:11438          11/11/1999<br>Appearance Fee | OFF<br>Filing Fee<br>Radtke | 1 | 102.00 | 102.00 |
| 4667          EXP<br>12/14/1999          12/14/1999<br>Billed          G:11503          12/20/1999<br>from Mayr-Ellen Homer, various<br>Motions, 81 pgs. | OFF<br>Fax<br>Radtke | 81 | 0.50 | 40.50 |

R-2

11/28/2000
2:35 PM

Neal H Levin & Associates, P C
Slip Listing

Page    2

| Slip ID Dates and Time Posting Status Description | Timekeeper Activity Client Reference | Units DNB Time Est. Time Variance | Rate Rate Info Bill Status | Slip Value |
|---|---|---|---|---|
| 4814         EXP 12/20/1999         12/20/1999 Billed      G:11503   12/20/1999 various Pleadings and Orders sent to Radtke, 33 pgs. | OFF Photocopies Radtke | 33 | 0.05 | 1.65 |
| 4842         EXP 12/22/1999         12/22/1999 Billed      G:11595   1/21/2000 to Radtke, pleadings | LEG Postage Radtke | 1 | 1.43 | 1.43 |
| 5148         EXP 1/18/2000         1/18/2000 Billed      G:11595   1/21/2000 certified mailing of letter to Homer | OFF Postage Radtke | 1 | 2.98 | 2.98 |
| 5189         EXP 1/18/2000         1/18/2000 Billed      G:11595   1/21/2000 to Radtke, letter to Homer, 2 pgs. | OFF Fax Radtke | 2 | 0.50 | 1.00 |
| 5530         EXP 1/27/2000         1/27/2000 Billed      G:11658   2/22/2000 Fax to Radtke, Order of Dismissal and Notice from Homer, 4 pgs. | OFF Fax Radtke | 4 | 0.50 No Charge | 2.00 |
| 8240         EXP 7/21/2000         7/21/2000 Billed      G:12019   8/17/2000 Fax from Radtke, documents re divorce, 7 pgs. | OFF Fax Radtke | 7 | 0.50 | 3.50 |
| 8597         EXP 8/14/2000         8/14/2000 Billed      G:12019   8/17/2000 Fax from Radtke, Mary Homer letter to Elsie, 11 pgs. | OFF Fax Radtke | 11 | 0.50 | 5.50 |
| 8768         EXP 8/15/2000         8/15/2000 Billed      G:12019   8/17/2000 Fax to SAO, notes on filings in Lake County, 5 pgs. | OFF Fax Radtke | 5 | 0.50 | 2.50 |
| 8894         EXP 8/17/2000         8/17/2000 Billed      G:12073   9/20/2000 Copying cost for Petition for Sanctions exhibits, 300 pgs. | OFF Photocopies Radtke | 300 | 0.05 | 15.00 |

R-2

Neal H. Levin & Associates, P C

2.35 PM    Slip Listing    Page    3

| Slip ID | Timekeeper | Units | Rate | Slip Value |
|---|---|---|---|---|
| Dates and Time | Activity | DNB Time | Rate Info | |
| Posting Status | Client | Est. Time | Bill Status | |
| Description | Reference | Variance | | |
| 9180    EXP | OFF | 1 | 40.10 | 40.10 |
| 8/18/2000    8/18/2000 | Delivery | | | |
| Billed    G:12073    9/20/2000 | Radtke | | | |
| Delivery Cost to AEJ, Petition for Rule to Show Cause and Petition for Sanctions for filing in Lake County | | | | |
| 9181    EXP | OFF | 1 | 39.15 | 39.15 |
| 8/22/2000    8/22/2000 | Delivery | | | |
| Billed    G:12073    9/20/2000 | Radtke | | | |
| Delivery Cost to Mary Homer, Petition for Rule to Show Cause and Petition for Sanctions | | | | |
| 8987    EXP | OFF | 2 | 0.50 | 1.00 |
| 8/23/2000    8/23/2000 | Fax | | | |
| Billed    G:12073    9/20/2000 | Radtke | | | |
| Fax from Faster, Proof of Delivery to Mary Homer, 2 pgs. | | | | |
| 8889    EXP | OFF | 1 | 11.44 | 11.44 |
| 8/24/2000    8/24/2000 | FedEx | | | |
| Billed    G:12073    9/20/2000 | Radtke | | | |
| FedEx to Radtke, order | | | | |
| 8927    EXP | OFF | 2 | 0.50 | 1.00 |
| 9/5/2000    9/5/2000 | Fax | | | |
| Billed    G:12073    9/20/2000 | Radtke | | | |
| Fax to NHL, Notice of Appeal, 2 pgs. | | | | |
| 9623    EXP | OFF | 9 | 0.50 | 4.50 |
| 10/3/2000    10/3/2000 | Fax | | | |
| Billed    G:12135    10/27/2000 | Radtke | | | |
| Fax from Mary, NoF and Motion, 9 pgs. | | | | |
| 9543    EXP | OFF | 6 | 0.50 | 3.00 |
| 10/9/2000    10/9/2000 | Fax | | | |
| Billed    G:12135    10/27/2000 | Radtke | | | |
| Fax to AEJ, NoF, NoM and Motion for leave to file, 6 pgs. | | | | |
| 9548    EXP | OFF | 2 | 0.50 | 1.00 |
| 10/10/2000    10/10/2000 | Fax | | | |
| Billed    G:12135    10/27/2000 | Radtke | | | |
| Fax from AEJ, order, 2 pgs. | | | | |
| 9575    EXP | OFF | 51 | 0.05 | 2.55 |
| 10/12/2000    10/12/2000 | Photocopies | | | |
| Billed    G:12135    10/27/2000 | Radtke | | | |
| Copying cost, NHL Affidavit, 51 pgs. | | | | |



11/28/2000                    Neal H. Levin & Associates, P C
2.35 PM                            Slip Listing                                Page      4

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| 9559       EXP<br>10/12/2000          10/12/2000<br>Billed      G:12135      10/27/2000<br>Fax from Radtke, Homer financial<br>information, 9 pgs. | OFF<br>Fax<br>Radtke | 9 | 0.50 | 4.50 |
| 9539       EXP<br>10/16/2000<br>Billed      G.12135      10/27/2000<br>Fax to SAC  Notice of Appeal, 2 pgs. | OFF<br>Fax<br>Radtke | 2 | 0.50 | 1.00 |
| 9882       EXP<br>11/15/2000          11/15/2000<br><br>Postage for copy set of pleadings from<br>Homer to John | OFF<br>Postage<br>Radtke | 1 | 3.20 | 3.20 |
| 10219       EXP<br>11/15/2000          11/15/2000<br><br>Copying cost for set of pleading from<br>Homer for Radtke, 111 pgs. | OFF<br>Photocopies<br>Radtke | 111 | 0.05 | 5.55 |
| 10245       EXP<br>11/21/2000          11/21/2000<br><br>Filing Fee, Appearance Fee for the<br>Appeal | OFF<br>Filing Fee<br>Radtke | 1 | 15.00 | 15.00 |
| 10248       EXP<br>11/21/2000          11/21/2000<br><br>Transcript of hearing on Motion for<br>Substitution of Judge | OFF<br>Transcript<br>Radtke | 1 | 10.00 | 10.00 |
| 10153       EXP<br>11/27/2000          11/27/2000<br><br>Postage for return envelope for<br>stamped Motion to Dismiss Appeal and<br>Memorandum in Support and service<br>on Mary Homer by mail | OFF<br>Postage<br>Radtke | 2 | 4.30 | 8.60 |
| 10222       EXP<br>11/27/2000          11/27/2000<br><br>Copying cost, Motion to Dismiss<br>Appeal, Memorandum in Support and<br>various other documents, 1524 pgs. | OFF<br>Photocopies<br>Radtke | 1524 | 0.05 | 76.20 |

R-2

2.35 PM

| Slip ID<br>  Dates and Time<br>  Posting Status<br>  Description | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| Grand Total | | | | |
| | Billable | 0.00 | | 446.95 |
| | Unbillable | 0 00 | | 2.00 |
| | Total | 0 00 | | 448.95 |

R-2

COUNTY OF LAKE )

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

IN RE:  THE MARRIAGE OF                )

Mary Ellen Hunter                     )
           and  A/K/A Radtke           )
John A. Radtke                         )     GEN. NO.  92 D 1279
                                       )

ORDER

This cause coming before the court on John A. Radtke's Motion to Advance Hearing and for Explanation as to Award of Fees. Notice proper, John A. Radtke appearing by Counsel and Mary Radtke appearing pro se, and the court entertaining John A. Radtke's oral motion to modify the motion to advance so as to include Mary Radtke's Motion to waive fees and costs and motion first filed January 24, 2001 and Mary Radtke's motion for time to respond to respondent's motion to advance filed January 29, 2001, and for the reasons stated by the court;

It is hereby ordered:

(1) John A. Radtke's motion to advance all pending motions of Mary Radtke is granted;

(2) Mary Radtke's motion for time to respond to motion to advance dated Jan 24 2001 is denied.

(3) Mary Radtke's motion to waive fees and costs is denied with prejudice.

(4) Mary Radtke's postrtrial motion for relief from final judgment for collusion and duress is denied with prejudice.

(5) Explanation as to award of fees is as stated on the record.

Dated at Waukegan, Illinois this
30th day of January, 2001.
ORDER PREPARED BY: _____Neal H. Levin_____
                    (Please print name and address)
                    1970 N. Halsted
                    Chicago IL 60614

ENTER:

_____
JUDGE

171-225 rev 12/99

Exhibit S
ORDER

C000173

01-0289

APPEAL TO THE APPELLATE COURT OF
ILLINOIS, SECOND DISTRICT
FROM THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

**F I L E D**

MAR 2 3 2001

*[signature]*
CIRCUIT CLERK

| | | |
|---|---|---|
| MARY HOMER-RADTKE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | Gen. No. 92 D 1279 |
| | ) | |
| JOHN A. RADTKE, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

## LATE NOTICE OF APPEAL

PLEASE TAKE NOTICE THAT Mary Homer-Radtke, petitioner-appellant in the above-entitled cause, appeals to the Appellate Court of Illinois, Second Judicial District, from the order of the Honorable Jane Waller of the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois, entered in this cause on January 30, 2001 in favor of respondent-appellee John A. Radtke, and against petitioner-appellant Mary Homer-Radtke. Petitioner-appellant Mary Homer-Radtke requests that the order of January 30, 2001 be vacated and reversed.

*[signature]*
Mary Homer-Radtke

March 7, 2001
Mary Homer-Radtke
c/o 408 N. Lake Street #108
Mundelein, Illinois (60060)
847 949-9329

Exhibit S
NOTICE OF APPEAL