27

Original
please file

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
FILED

NOV 1 2 2002

Michael N. Milby
Clerk of Court

Mary Homer-Radtke )
 )
    Plaintiff )
 )
v. ) No. B-02-063
 )
John A. Radtke, )
 )
    Defendant. )

NOTICE OF FILING

PLEASE TAKE NOTICE THAT on ~~October 22~~ November 8, 2002 I filed with the United States District Court for the Southern District of Texas, 600 E. Harrison, Brownsville, Texas the attached AMENDED COMPLAINT IN THE NATURE OF A PETITION FOR INJUNCTIVE AND DECLARATORY RELIEF, AMENDED MOTION FOR PRELIMINARY INJUNCTION and AFFIDAVIT .

PROOF OF SERVICE

    I, Mary Homer-Radtke, swear under penalties as provided by law pursuant to 735 ILCS 5/1-109, that I served this amended complaint by mailing a true and correct copy to John A. Radtke, 1641 Elmwood, Highland Park, Illinois 60035 on ~~October 23~~ November 8, 2002 stroke Oct 23, 02 at Illinois with proper postage attached.

_Mary Homer-Radtke_
Mary Homer-Radtke
C/o P.O. Box 126
Lake Jackson, Texas 77566

TEMPORARY:
408 N. Lake, #108
Mundelein, Illinois 60060

IN THE UNTED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Mary Homer-Radtke | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. B-02-063 |
| | ) |
| John A. Radtke, | ) |
| | ) |
| Defendant. | ) |
| | ) |

AMENDED COMPLAINT IN THE NATURE OF A PETITION FOR INJUNCTIVE AND DECLARATORY RELIEF

1. Mary Homer-Radtke, an aggrieved party, petitions this court under authority of 28 USC 1332, 28 USC 2201 and F.R.C.P. Rule 57 for injunctive and declaratory relief. The *res* of this controversy exceeds five hundred thousand dollars ($500,000.00). Mary Homer-Radtke is a resident of Texas. John A. Radtke is a resident of Illinois.

2. Mary Homer-Radtke and John A. Radtke were joined in legal matrimony in 1967 in the state of Texas.

3. Petition for dissolution of marriage was filed in the state of Illinois in 1992. The marital estate of Mary Homer-Radtke and John A. Radtke as well as significant and valuable property interest segregable to the favor of Mary Homer-Radtke has been controlled by John A. Radtke to exclusion of Mary Homer-Radtke since. Hereinafter both the marital estate as well as property segregable to the favor of Mary Homer-Radtke shall be referred to simply as the "property."

1

4. Mary Homer-Radtke, in an effort to secure rightful portion of the property, has exhausted all remedies without conformation that Mary Homer-Radtke and John A. Radtke are legally divorced.

5. The value of the property has eroded considerably and Mary Homer-Radtke is deprived of income and enjoyment of a lawful portion of the property due to inability to discover a lawful determination of whether Mary Homer-Radtke and John A. Radtke remain legally married.

6. Ideals of substantial justice require this court discover, rule, and declare whether Mary Homer-Radtke and John A. Radtke are legally married or whether Mary-Radtke Homer and John A. Radtke are divorced. The determination is a prerequisite to Mary Homer-Radtke having a theory of indemnity to foreclose interest in the property.

7. Ideals of fair play require Mary Homer-Radtke to, as soon as reasonable and practical, list a full accounting of the property circa July of 1992, and for John A. Radtke to furnish legally sufficient documentation of the lawful dissolution of the marriage between Mary Homer-Radtke and John A. Radtke; or in the alternative, Mary Homer-Radtke shall provide legally sufficient documentation of the lawful marriage of John Allen Radtke and Mary Ellen Homer-Radtke.

8. Justice requires this court's injunction prohibiting John A. Radtke or any agent or anyone having power of attorney for John A. Radtke to sell, transfer, give, or dissolve through and means of conveyance, any of the property.

VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are

true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Prepared and submitted by:

_____
Mary Homer-Radtke
c/o P.O. Box 126
Lake Jackson, Texas 77566

```
"OFFICIAL SEAL"
DIANE VILLARREAL
Notary Public, State of Illinois
My Commission Exp. 12/14/2004
```

IN THE UNTED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Mary Homer-Radtke | ) |
|     Plaintiff | ) ) ) |
| v. | )    No. B-02-063 |
| John A. Radtke, | ) ) ) |
|     Defendant. | ) ) ) |

AMENDED MOTION FOR PRELIMINARY INJUNCTION

1. John A. Radtke has repeatedly interfered with property that belongs to Mary Homer-Radtke.

2. Mary Homer-Radtke, will suffer irreparable harm by denial of this preliminary injunction. Mary Homer-Radtke has been deprived income from, as well as use and enjoyment of property which was in the marital estate of Mary Homer-Radtke and John A. Radtke circa July of 1992 plus substantial and valuable property which Mary Homer-Radtke owned separately.

3. Mary Homer-Radtke is likely to prevail in the attached petition.

4. Public interest will not be impaired by granting this preliminary injunction. The public interest will be impaired by denial of this preliminary injunction by public awareness that citizens can be deprived of property without due process of law.

5. Mary Homer-Radtke has no other remedy at law to protect lawful apportionment of the marital estate of Mary Homer-Radtke and John A. Radtke.

6. Denial of Mary Homer-Radtke's preliminary injunction will cause Mary Homer-Radtke to bear a greatly unbalanced harm. John A. Radtke's harm would be deferred ability to dissolve property. Mary Homer-Radtke's harm will be further erosion

1

of the marital estate of Mary Homer-Radtke and John A. Radtke and interference with ability to recover lawful portion of marital assests.

7. Denial of Mary Homer-Radtke's preliminary injunction goes beyond economic injury.

8. The cost to the court on error later corrected to the favor of John A. Radtke is not as great as the cost to the Court for error later corrected to the favor of Mary Homer-Radtke. Granting Mary Homer-Radtke's Motion for Preliminary Injunction conserves the property no matter who prevails. Denial of Mary Homer-Radtke's Motion for Preliminary Injunction directly affects the property by empowering John A. Radtke to move property of the marital estate in a manner that imposes legal expense and delay for recovery.

_____
Mary Homer-Radtke

STATE OF ILLINOIS                    INDIVIDUAL ACKNOWLEDGMENT
COUNTY OF LAKE

Before me, the undersigned, a Notary Public in and for said County and State on this 22nd day of October, 2002, personally appeared MARY HOMER RADTKE to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act.

Given under my hand and seal the day and year last above written.

My commission expires 12-14-2004

_____
Notary Public

"OFFICIAL SEAL"
DIANE VILLARREAL
Notary Public, State of Illinois
My Commission Exp. 12/14/2004

2

IN THE UNTED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Mary Homer-Radtke ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. B-02-063 |
| ) | |
| John A. Radtke, ) | |
| ) | |
| Defendant. ) | |

## AFFIDAVIT

I, Mary Homer-Radtke, of lawful age and competent to testify, being first duly sworn, upon oath state as follows:

1.) I am disabled pursuant to the Americans with Disabilities Act as a result of being diagnosed with a congenital disease, Legg-Perthes Disease, 731.1, in 1953 by Dr. Turner of Rock Island, Illinois and Dr. Qualman of Grayslake, Illinois.

2.) I made a covenant under God on June 17, 1967 in a church ceremony solemnized by Pastor Joseph L. Auten of the First Presbyterian Church, Harlingen, Texas, joining in holy matrimony with John Allen Radtke.

3.) I have purchased and attached as evidence certified true and correct copies of Marriage License, No. 16732, recorded in Book 25, Page 267 from the Cameron County Recorder's Office.

4.) I accepted the marriage license for value recording the license with the Secretary of State of Texas under U.C.C. filing No. 99-238423 in 1999 and the Secretary of State of Illinois and the county of Lake under filing No. 9708366/4465799 in January of 2000.

5.) I bore four children between 1969 and 1981.

6.) I agreed with John that I would be a "stay at home mom" while our children were young.

7.) During four years living in Canada, I contributed financially to the marital estate through financial benefits for children provided by the Canadian government, by selling my artwork, and by contributing monies, approximately $25,000.00, gifted to me by my parents.

1

8.) I agreed to purchase B. Radtke & Sons and move our family to Illinois.

9.) I was able to purchase a home for our family located at 502 Dublin, Mundelein, Illinois in September, 1977 due to the fact that my parents provided a downpayment of approximately $10,000.00.

10.) I provided the downpayment from non-marital funds for the purchase of an industrial property located at 101 W. Main St., Round Lake Park, Illinois.

11.) I focused on the success and expansion of the businesses with John as President/Treasurer and myself as Vice-President/Secretary of the corporation.

12.) I participated without remuneration in the expansion of the marital estate which grew to include a screw machine division, a trucking business, a welding division, and a division for laser machining called Laserworks and another industrial property located at 112 W. Main St. in Round Lake Park, Illinois.

13.) I loaned non-marital money to the companies at John A. Radtke's request for which he executed a loan document as President for approximately $54,000.00 at 9% interest as well as a joint loan for $52,000..

14.) I stored in a fireproof box at 502 Dublin, Mundelein, Illinois loans from my parents, Helen and Fred Homer, for approximately $42,000 to the companies made at the request of John A. Radtke as President as well as the $54,000 and $52,000 loans.

15.) I was given an annual salary made to husband John A. Radtke of $54,000 for my own administration.

16.) The businesses historically provided family health care, insurance coverage, vehicles, transportation expenses, furniture, home repairs, and business vacations in addition to the $54,000 I administered.

17.) I trusted that John was sincere when he promised me that our efforts were going to be well rewarded with a new home, early retirement, travel, and college educations for our children.

18.) I saw that John's shifts in mood escalated to sporadic episodes of violent behavior (eg. breaking the windshield in our van during a fight with our son Jeffrey, fighting with Jeffrey at the top of the basement staircase, beating his fists on the dashboard of the car, and punching a hole through the ceiling with his fist) which involved and/or were witnessed by the children.

19.) I saw that our children were being adversely affected .

20.) I heard John threaten to kill himself in front of the children.

2

21.) I heard John's sister, Nancy Radtke, disclose transgenerational abuse involving incest on or about 1985-86.

22.) As a result of fostering a bi-racial child in 1985-87, I attended therapy.

23.) In 1988-91 I returned to school in order to get my Masters Degree in Social Work, with a concentration in mental health.

24.) In my work I counseled persons who had been ritually abused.

25.) I learned about the "big business" of illegal drug trafficking from a client who had multiple personalities due to mind control programming.

26.) I analyzed the dysfunction in my immediate family, my husband's family of origin, and my family of origin learning in late 1997 or early 1998 that my family of origin was transgenerational Masonic.

27.) I was told in 1997/98 by my brother, retired judge in the Lake County court system, William Homer, that I was being "blackballed".

28.) I heard William Homer say that I would never find employment.

29.) I was told by professionals in the field of mental health and survivors, circa 1998, that allegedly all judges belonged to quasi religious groups known as "secret societies" such as freemasonry or wicca taking oaths that supercede their oaths to uphold the constitution of the United States of America, state constitutions, and the law.

30.) I began litigating on my own behalf due to financial impoverishment resulting from the financial exploitation of my husband.

31.) In December of 1999, I learned that the petition for dissolution of marriage filed by Sally Lichter on July 7, 1992, Case 92D1279, was legally and factually defective pursuant to statute 750 ILCS 5/403 missing elements mandated as necessary to confer jurisdiction upon the court.

32.) I learned that without jurisdiction all orders are void ab initio.

33.) I learned that a void judgment is one which, from its inception, was a complete nullity and without legal effect and can be attacked either directly or collaterally.

34.) In the year 2001, I received an original taping of a Christian television show, circa 1995, in which Jane Waller doing business as a judge and her husband, Michael Waller, doing business as the State's Attorney in the same court system, were named as belonging to a coven.

3

35.) I was deprived of income from and enjoyment of my property on July 30, 1992, when Jane Waller, executed an order converting the marital property and loans segregable to Mary to the control of my husband, John; denying me my right to my property; denying me immediate possession of my property; and denying my demands for return of my property.

36.) I did not know in 1992 that I was taking my injury into a court system where the judges were not impartial.

37.) I was threatened, shamed, and intimidated in the courtroom by the judge.

38.) Missing jurisdictional elements included, but were not limited to, the fact that the petition was defective, the fact that I was denied discovery, the fact that I was denied a mandatory pre-trial, the fact that I was denied due process, the fact that the judge did not follow statutory procedure, the fact that the judge was engaged in violations of the Code of Judicial Conduct, the fact that there was fraud upon the court, the fact that I was under duress, the fact that there was witness tampering by officers of the court, and the fact that the public policy of the State of Illinois was violated.

39.) I was financially impoverished due to the Order executed by Jane Waller on July 30, 1992 because it converted control of the property to my husband, John A. Radtke.

40.) I was denied the opportunity to manage my own businesses, B. Radtke & Sons, Inc. even though the employees asked me to manage the business.

41.) I was not allowed to talk to the employees.

42.) I was told that the employees were not allowed to talk to me..

43.) I was denied income from jointly held industrial properties.

44.) I was denied income from my loans to the companies.

45.) I was systematically defrauded as a direct result of the July 30, 1992 order.

46.) I was trapped in a system which allowed my husband to financially exploit me whenever he could and however he could.

47.) I filed for bankruptcy on or about August 25, 1999 as a direct result of the Order executed by Jane Waller on July 30, 1992.

48.) I found that the trial court acted in violation of 11 U.S.C. 362(a) by terminating child support in Case 92D1279 without a petition before the court and by

4

appointing John Radtke as Independent Administrator of Jean Radtke's estate after Case 99P729 was removed to the jurisdiction of the bankruptcy court.

49.)    Recently I discovered that Judge Squires in the bankruptcy court had a fiduciary duty to rule on my petition for rule to show cause against Assistant State's Attorney Nancy Schuster-Waites and John A. Radtke for terminating child support without a petition and without authority.

50.)    Recently I discovered that Judge Squires had a fiduciary duty to rule on my motion to vacate the void order in 92D1279 because only the bankruptcy court can determine whether or not the automatic stay applies in any situation.

51.)    In my private capacity, I accepted for value the trial court cases: Case 98CH1240 - the foreclosure case; Case 99P729 – Jean Radtke's probate case; and Case 92D1279 – the marriage of John and Mary; filing financial statements with the Secretary of State in Texas in December of 1999 and the Secretary of State in Illinois in January of 2000 claiming the property in each case for myself or for my children.

52.)    I filed an amended petition with the bankruptcy court prior to dismissal of the bankruptcy case.

53.)    When I was told of my husband's intention to marry Elsie Mannix, I noticed both my husband John Allen Radtke and Elsie Mannix that John and I are legally married offering them the opportunity to contact me.

54.)    I made a good faith effort to take the matter of the void judgment of June 6, 1995 before the trial court on July 31, 2000 in order to have it judicially vacated by the assigned judge – Jane Waller.

55.)    I was denied due process and the court lost jurisdiction when the subpoenas that I served on John Phillips, John Radtke, Elsie Mannix, Eva Schwartzman and Kathleen Roseborough were quashed when nobody appeared in court.

56.)    I was told by John's attorney, Neal H. Levin, that Jane Waller determined how she was going to handle me.

57.)    Every motion I brought before the court was denied.

58.)    I now realize that I made a mistake by filing a nunc pro tunc motion to vacate the void judgment which I appealed attempting to confer jurisdiction to the Appellate Court under Supreme Court Rule 301 .

59.)    I could not vacate a void judgment which was not in the trial court record.

60.)    I was given CERTIFICATE IN LIEU OF RECORD signed by Sally D.

Coffelt, Clerk of the Court, on November 1, 2000 and the original record which I inspected evidencing that there is no judgment or settlement in the trial court record.

61.) In good faith and in the spirit of fair play, I wrote motions attempting to supplement the record on two occasions and were denied.

62.) I was unable to confer jurisdiction to the Appellate Court whose Judges executed a void Rule 23 Order on April 1, 2002 based on a void judgment.

63.) On August 24, 2000, the court was without jurisdiction conferred by a Petition and proper service, when Jane Waller executed a restraining order against me giving John Radtke and Elsie Mannix legal authority to have me arrested if I attempted to claim my property.

64.) I realize that Jane Waller without authority conferred by jurisdiction gave my husband, John Radtke, the opportunity to transfer property to Elsie Mannix.

65.) I wrote charging letters under Illinois statute, 720 ILCS 5/16-1.3, which makes financial exploitation of the elderly and disabled by a fiduciary a Class 1 to Class 4 felony.

66.) I put liens for unpaid state mandated child support and administrative judgments on Jean Radtke's home located at 102 W. Park, Mundelein, on the condominium purchased with money from the marital estate of John and Mary located at 440 N. Main St. in Wauconda, Illinois, and on the Highland Park home located at 1641 Elmwood Drive that was purchased with money from the marital estate of John and Mary.

67.) I heard Mary Ellen Vandervetter, Recorder of Deeds and Kathy Rygs, Deputy Recorder of Deeds on May 8, 2001 say that the title company would cross reference the U.C.C. financial statements with the real properties.

68.) I filed a PETITION AND COMPLAINT IN THE NATURE OF A PETITION FOR INJUNCTIVE AND DECLARATORY RELIEF and MOTION FOR PRELIMINARY INJUNCTION with the United States Court for the Southern District of Texas on April 2, 2002 to prevent further erosion of the property.

69.) I filed a Chapter 13 bankruptcy naming John Allen Radtke as my spouse on May 10, 2002 after John A. Radtke was in technical default for failing to answer the complaint or appear pursuant to the summons served on April 16, 2002.

70.) I was denied access to the court when Case B-02-063 was referred to the bankruptcy court on June 11, 2002.

71.) I agreed to dismissal of the bankruptcy due to the fact that I was unable to access my records stored in Illinois and the fact that I am caretaker for my 94 year old mother and we were moving to Lake Jackson, Texas.

72.) I received ORDER SETTING HEARING executed by Judge Schmidt on July 25, 2002 and again on August 20, 2002 indicating that John Radtke was removed as debtor in said case when the court no longer had jurisdiction.

73.) I wrote numerous motions and objections under special appearance including a motion to vacate the void judgment of June 6, 1995 and the void settlement of June 2, 1995.

74.) When I went to Illinois for a seminar and to prepare a brief for an appeal in an unlawful foreclosure case, I was traumatized when I discovered that documents including the original marriage license, loan documents, the original liens, and perfected negotiable instruments were stolen from 502 Dublin, Mundelein, Illinois.

75.) I filed a police report with the Mundelein Police Department on September 18, 2002 - #02-14082 supplemented with four affidavits.

76.) I saw in the Lake County Recorder of Deeds that the condominium and Jean Radtke's home were sold between April 2, 2002 and October 10, 2002 by John A. Radtke with mortgages of $172,000, $66,500 and not recorded.

77.) I saw that a fraudulent transfer of title of the condominium in its entirety was made to Elsie Virginia Pendregast Mannix, NKA Elsie Radtke.

78.) I have been denied the right to an annual income of no less than a $54,000, health insurance coverage, annual rent on industrial properties upwards of $15,000, the ability to collect interest and principal on loans, the use of a vehicle with company paid automobile insurance, the amenities of business ownership, and enjoyment of my property including the opportunity to travel and take vacations, the enjoyment of being able to afford eating at restaurants, the opportunity to visit my children, the enjoyment of giving and sharing my good fortune with family and friends and the opportunity to live without the fear of poverty or being incarcerated.

79.) I believe that specific amounts for the past ten years can be determined by an accountant reviewing the corporate, limited liability company, and personal tax returns of John Allen Radtke and the tax returns of Elsie Mannix to determine fraudulent transference of properties purchased with money from the marital estate of John Allen Radtke and Mary Ellen Homer-Radtke.

80.) I have been damaged financially, socially and emotionally.

Further affiant sayeth naught.

Mary Ellen Homer-Radtke

| | |
|---|---|
| STATE OF ILLINOIS | INDIVIDUAL ACKNOWLEDGMENT |
| COUNTY OF LAKE | |

Before me, the undersigned, a Notary Public in and for said County and State on this 22ND day of October, 2002, personally appeared MARY HONOR RADTKE to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act.

Given under my hand and seal the day and year last above written.

My commission expires 12-14-2004

_____
Notary Public

"OFFICIAL SEAL"
DIANE VILLARREAL
Notary Public, State of Illinois
My Commission Exp. 12/14/2004

8

IN THE UNTED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Mary Homer-Radtke | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. B-02-063 |
| | ) | |
| John A. Radtke, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### ORDER

This matter coming before the court on AMENDED COMPLAINT IN THE NATURE OF A PETITION FOR INJUNCTIVE AND DECLARATORY RELIEF, and AFFIDAVIT, all parties having been given due notice, the court being advised in the premises and having jurisdiction of the parties and the subject matter,

    IT IS HEREBY ORDERED THAT Plaintiff's petition for declaratory relief in the nature of a declaratory judgment affirming the lawful marriage of John Allen Radtke and Mary Ellen Homer-Radtke and the rights of the parties as husband and wife is hereby

                     granted ____ denied ____.

 

                                      _____
                                           Judge Felix Recio