IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
F!LED

NOV 1 5 2002

Michael N. Milby
Clerk of Court

MARY HOMER-RADTKE,                )
                                  )
        Plaintiff,                )
vs.                               )        Civil Action No. B-02-063
                                  )
                                  )
JOHN A. RADTKE,                   )
                                  )
        Defendant.                )
                                  )

<u>JOHN A. RADTKE'S BRIEF ON SUJBECT MATTER JURISDICITON</u>

NOW COMES Defendant, John A. Radtke, by and through his attorneys, Neal H. Levin

& Associates, P.C., and for his brief on subject matter jurisdiction pursuant to the court's order

of October 16, 2002, states as follows:

**Subject Matter Jurisdiction - No diversity exists**

1.    No subject matter jurisdiction exists over this matter because the parties are both

residents of Illinois, thereby destroying the Plaintiff's contention of diversity jurisdiction.

2.    Contrary to Plaintiff's assertion, she is not a resident of Texas but is merely using

her mother's address for the improper purpose of bringing this matter before the Court.

3.    Plaintiff's Illinois residency is supported by the fact that she listed her residence as

being in Illinois when she filed a Notice of Appeal in an Illinois foreclosure action on May 21,

2002.   Secondly, Plaintiff listed her Illinois address as her return address on an envelope

postmarked May 21, 2002 which she mailed to attorney for Defendant.   True and correct copies

of both the Notice of Appeal and envelope are attached hereto as *Exhibits A* and *B* respectively.

4.    Moreover, although she may have temporarily been in residence in the State of Texas to care for her mother as alleged, recent pleadings filed in ancillary proceedings verify Ms. Radtke's residence is unchanged, to wit, 502 Dublin in Mundelein, Illinois (the former marital residence) and 408 N. Lake Street, #108, in Mundelein, Illinois (the mailing address used on all pleadings).  The return on recent pleadings filed in Lake County, Illinois on the 7th of November verify this fact.  A copy of the envelope and pleading are attached hereto as *Exhibit C.*[1]  This is the same address Ms. Radtke has been using for the past two years in the underlying domestic relations proceedings, those very same proceedings which fully adjudicated the dissolution of the parties' marriage and which forms the basis of Ms. Radtkes' complaint in this court.

5.    For purposes of satisfying the citizenship element of 28 U.S.C.A. §1332(a), diversity normally requires that an individual have both a physical presence in the state and an intent to reside there indefinitely.  Furthermore, a person can have only one domicile.  *Palazzo v. Corio*, 232 F.3d 38, 41 (2nd Cir. 2000).

6.    Plaintiff is unable to satisfy this requirement of diversity because not only is she not physically present in the State of Texas as evidenced by *Exhibits A, B and C,* she has no intent to reside there indefinitely.

### Subject Matter Jurisdiction - No amount in controversy

7.    The Court also cannot exercise subject matter jurisdiction over this matter because Plaintiff has failed to sufficiently plead the necessary amount in controversy.

---

[1] The Court will note at this juncture that the referenced pleading, filed November 7, 2002, was filed in the matter of *Mary Homer-Radtke v. John A. Radtke,* Case No. 92 D 1279, in the Circuit Court of the 19th Judicial Circuit, Lake County, Illinois.  Said cause is in fact the very domestic relation proceeding, initiated by Mary Radtke, which sought to and eventually did dissolve the marriage of the parties.  Said dissolution was appealed on three occasions and the Illinois Appellate Court for the Second District affirmed the dissolution, a copy of said Rule 23 Order having been previously provided to this court. Despite this fact, and for some unknown reason, Mary Radtke continues to file pleadings in said cause which has since been dismissed and closed.

8.    Although Plaintiff made a general allegation that the "*res* of this controversy exceeds five hundred thousand dollars ($500,000)," such a statement alone is insufficient to meet jurisdictional requirements.  If it is apparent from the face of the pleadings that the plaintiff cannot recover the amount claimed, the suit must be dismissed.  *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283 (1937).

9.    Plaintiff has failed to sufficiently aver facts, and in fact has presented *no facts whatsoever,* to support her contention that the amount of her claim exceeds $75,000, let alone $500,000, not to mention the fact that none of Plaintiff's pleadings contain a prayer for money relief but rather sound only in injunctive and declaratory relief.

### Subject Matter Jurisdiction - No case or controversy exists

10.    Plaintiff and Defendant obtained a Judgment for Dissolution of Marriage on June 6, 1995, whereby the parties divided the marital property pursuant to the Marital Settlement Agreement.  A true and correct copy of the Judgment for Dissolution of Marriage and Marital Settlement Agreement is attached hereto as *Exhibit D.*

11.    Plaintiff has been unsuccessfully attempting to relitigate the parties' dissolution since 1995.  In addition to numerous other pleadings, the Plaintiff has filed three appeals seeking to vacate the parties' judgment for dissolution.  The Appellate Court of Illinois affirmed the parties' dissolution of marriage on April 3, 2002.   A true and correct copy of the Court's Rule 23 Order is attached hereto as *Exhibit E.*

12.    In this matter, Plaintiff seeks to relitigate the divorce of Plaintiff and Defendant and to enjoin Defendant from selling or transferring his assets which were legally awarded to him.  It further seeks to declare whether the parties remain legally married.

3

13.    In order for a court to exercise judicial power under Article III of the Constitution, a case or controversy must exist. A federal court cannot render advisory opinions nor decide questions that cannot affect the litigants' rights in the case before them. *Preiser v. Newkwirk,* 422 U.S. 395, 95 S. Ct. 2330 (1975).

14.    Here, no subject matter jurisdiction exists because no case or controversy exists because the parties' marriage has already been dissolved and fully litigated. Furthermore, the Court cannot enjoin Defendant from selling or transferring his property because it has already been awarded to him in the Marital Settlement Agreement entered in 1995.

15.    Further, this Federal Court should not intervene in proceedings where the subject matter is otherwise reserved for the States. Probate and domestic matters are historically such proceedings.

### Personal Jurisdiction

16.    Plaintiff has failed to plead contacts of Defendant with the State of Texas of such a quality and nature such that the exercise of personal jurisdiction over the Defendant would not offend "traditional notions of fair play and substantial justice." *See International Shoe Co. v. Washington,* 326 U.S. 310 (1945).

### Venue

17.    Under 28 U.S.C.A. § 1391, Plaintiff may only file suit in a district where either (1) the defendant resides; (2) where substantial events or omissions occurred giving rise to the cause of action; or (3) where the defendant is subject to personal jurisdiction.

18.    Not only has Plaintiff failed to plead any facts which would give rise to the venue in this Court, she cannot fulfill the venue requirement with any such evidence.

## Conclusion

19.    For all the reasons stated above, this court does not have jurisdiction over this matter or over Defendant, John A. Radtke.

Respectfully submitted,<br>
**JOHN A. RADTKE**

By:_____<br>
One of his Attorneys

Neal H. Levin, Esq.
Neal H. Levin & Associates, P.C.
954 W. Washington Blvd.
Suite 2 SW
Chicago, IL  60607
312/421-2100
312/421-1881 (fax)
Illinois Attorney No. 6203156
Admitted *Pro Hac Vice*

APPEAL TO THE APPELLATE COURT OF
ILLINOIS, SECOND DISTRICT
FROM THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

ASSOCIATED MORTGAGE, INC.,    )
                            )
        Plaintiff,       )
                            )
        v.               )     Gen. No. 98 CH 1240
                            )
Mary Ellen Radtke, et al.,   )
                            )
        Defendants.     )

TO:  Kim M. Casey                Neal H. Levin
     HOLMSTROM & KENNEDY, P.C.     Neal H. Levin & Associates, P.C.
     800 North Church Street       1970 N. Halsted
     P.O. Box 589               Chicago, Illinois 60634
     Rockford, IL 61105         Fax: 312 421-1881
     Fax: 815 962-7181

## NOTICE OF FILING

     PLEASE TAKE NOTICE THAT on May 14, 2002 I filed with the
Circuit Court of the Nineteenth Judicial Circuit, Waukegan, Illinois
the attached NOTICE OF APPEAL.

_Mary Homer-Radtke_
Mary Homer-Radtke

## PROOF OF SERVICE

     I, Mary Homer-Radtke, certify under pains and penalties of
perjury pursuant to 735 ILCS 5/1-109 that I sent a true and correct
copy of this notice and NOTICE OF APPEAL to the above-designated
parties at the designated addresses of said parties by depositing same
in the US mail in Waukegan, Illinois on May 21, 2002, with proper
postage attached and prepaid.

_Mary Homer-Radtke_
Mary Homer-Radtke

Mary Homer-Radtke
c/o 408 N. Lake Street #108
Mundelein, Illinois (60060)
847 949-9329

APPEAL TO THE APPELLATE COURT OF
ILLINOIS, SECOND DISTRICT
FROM THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| ASSOCIATED MORTGAGE, INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | Gen. No. 98 CH 1240 |
| | ) | |
| MARY HOMER-RADTKE, et al., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

**NOTICE OF APPEAL**

PLEASE TAKE NOTICE THAT Mary Homer-Radtke, defendant-appellant in the above-entitled cause, appeals to the Appellate Court of Illinois, Second Judicial District, from the order of the Honorable Stephen Walter of the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois, entered in this cause on May 7, 2002 in favor of plaintiff-appellee Associated Mortgage, Inc., and against defendant-appellant Mary Homer-Radtke. Said order of May 7, 2002 is void because it was entered in a manner inconsistent with the due process of law, and defendant-appellant Mary Homer-Radtke requests that said order of May 7, 2002 be vacated and reversed.

*Mary Homer-Radtke*
Mary Homer-Radtke

May 14, 2002

Mary Homer-Radtke
c/o 408 N. Lake Street #108
Mundelein, Illinois (60060)
847 949-9329





Mary Hamer-Radtke
c/o 408 N. Lake Street #108
Mundelein, Illinois (60060)

Neal H. Levin
Neal H. Levin & Associates, P.C.
1470 N. Halsted
Chicago, IL 60634

606144-0003



U.S. POSTAGE
PAID
MUNDELEIN, IL
60060
NOV 07 02
AMOUNT

$0.37
000355-46-03

UNITED STATES
POSTAL SERVICE

9261          60607

Neal H. Levin
Neal H. Levin + Associates PC
954 Washington Blvd., Ste 2 SW
Chicago, Illinois 60607

60607-2224 21

c/o 4/08 Il. Lake ST #4608
Mundelein Il. 60060



IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

MARY HOMER-RADTKE,      )
        Petitioner,      )
        v.      )      Gen. No. 92 D 1279
        )
JOHN A. RADTKE,      )
        Respondent.      )

## NOTICE OF FILING

PLEASE TAKE NOTICE THAT Mary Homer-Radtke, petitioner in the above-
entitled cause, filed AFFIDAVIT OF MARY HOMER-RADTKE IN REGARD TO
STROKE AND VISUAL IMPAIRMENT with the Clerk of the Court, 19th Judicial
District Circuit Court, Waukegan, Illinois on November 7, 2002.

                                  Mary Homer-Radtke

### PROOF OF SERVICE

A true, correct, and complete copy of affidavit was mailed to Neal H.
Levin, Neal H. Levin & Associates P.C., 954 W. Washinton Blvd., Ste.
2SW, Chicago, Illinois 60607 on November 7, 2002 from Illinois.

                                  Mary Homer-Radtke

November 7, 2002
Mary Homer-Radtke
c/o temporary address
408 N. Lake St., #108
Mundelein, Illinois (60060)

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
COUNTY OF LAKE

MARY HOMER-RADTKE,            )
          Petitioner,        )
          v.                 )        Gen. No. 92 D 1279
                             )
JOHN A. RADTKE,              )
          Respondent.        )

AFFIDAVIT OF MARY HOMER-RADTKE IN REGARD TO STROKE AND
                VISUAL IMPAIRMENT

          I,  Mary  Homer-Radtke,  of  lawful  age  and  competent  to
testify, being first duly sworn, upon oath state as follows:

          1.)   I am petitioner in the above-entitled action.

          2.)   I had a stroke on October 23, 2002 at approximately
8:30am.

          3.)   I believe the stroke is due to the stress of the
discrimination I have experienced in the 19th Judicial District
Circuit Court system.

          4.)   I did not go to the hospital until 9:00pm because I am
poor.

          5.)   I would have gone immediately to the hospital if I had
health care insurance or money to pay for services.

          6.)   I learned at the hospital that the visual impairment
is reversible if treated within three hours.

          7.)   I have been financially exploited by my husband, John
A. Radtke pursuant to Illinois law, 720 ILCS 5/16-1.3.

          8.)   I have seen evidence in the Lake County Recorder of
Deeds that my husband, John A. Radtke, dissipated marital assets.

          9.)   I deny that the 19th Judicial District Circuit Court
ever had jurisdiction over the parties or the matter of the
marriage of John Allen Radtke and Mary Ellen Homer.

          10.)  I have searched the record in Case 92D1279 without
finding a dissolution of the marriage of John Allen Radtke and
Mary Ellen Homer.

          11.)  I received a copy of an order signed by Judge Jane
Waller on or about July 30,1992 that converted the marital estate
of Mary Homer-Radtke and John A. Radtke as well as significant

1

and valuable property interest segregable to the favor of Mary Homer-Radtke to the control of John A. Radtke.

12.) I demanded return of the property.

13.) I had the right to immediate possession of the property.

14.) On or about March of 1995, I was asked to manage B.Radtke & Sons, Inc. by the employees.

15.) I sent a business proposal to manage the company to my husband and his agent, Kathleen Roseborough.

16.) I received a letter from agent Kathleen Roseborough refusing to talk or negotiate with me.

17.) I received a telephone call from my husband, John A. Radtke, saying that Kathleen Roseborough was prohibiting me from going to the businesses or talking with the employees.

18.) I received a telephone call from an employee who told me that employees were fearful of losing their jobs because John was prohibiting the employees from talking with me.

19.) I have been denied income from and enjoyment of rightful portion of the property since.

20.) On or about June of 1998, I was called by Philip Pesanka and Dawn Grey, employees of Associated Loan Services.

21.) I heard Philip and Dawn say that my husband, John A. Radtke, instructed them to foreclose on the property located at 502 Dublin, Mundelein, Illinois so that he could buy it at Sheriff's auction.

22.) I deny that the trial court has ever had jurisdiction over the parties or the matter of a foreclosure on the property located at 502 Dublin, Mundelein, Illinois.

23.) I learned during my research of the law that without jurisdiction all orders and judgments are void - a nullity, without the force and effect of law.

24.) I have been traumatized by officers of the court.

25.) I have been financially exploited by officers of the court pursuant to Illinois law 720 ILCS 5/16-1.3.

26.) I was under duress while in the office of Elaine Collins and not acting of my own free will on June 2, 1995.

2

27.) When I gave testimony on June 6, 1995, I was under duress and not acting of my own free will as a result of threats by officers of the court.

28.) I gave both John Allen Radtke and Elsie Pendregast Mannix repeated notice and opportunity to contact me regarding the fact that John Allen Radtke and Mary Homer-Radtke are lawful husband and wife.

29.) When I set for hearing a motion in the 19th Judicial District Circuit Court in an effort to secure rightful portion of the property on or about July 2000, I was assigned Jane Waller as judge.

30.) I have a taping of a Christian television show, circa 1995, wherein the participants name Jane and Michael Waller as belonging to a coven.

31.) Upon information and belief, Jane Waller and Michael Waller are seeking revenge against me for exposing illegal activities in the criminal justice system - the record evidences sanctions, false arrest, denial of state mandated child support.

32.) I have exhausted all remedies without conformation of the marital status of Mary Homer-Radtke and John A. Radtke.

33.) I have been denied income from and enjoyment of a lawful portion of the marital estate of Mary Homer-Radtke and John A. Radtke as well as significant and valuable property interest segregable to the favor of Mary Homer-Radtke.

34.) I did not know until researching void judgments that the judges in the 19th Judicial District Circuit Court were signing orders and judgments without authority conferred by jurisdiction.

35.) I will not deny my right of ownership of a rightful portion of the marital estate of John Allen Radtke and Mary Ellen Homer as well as property segregable to the favor of Mary Homer-Radtke which include an individual loan of $54,000.00 to B.Radtke & Sons, Inc., a $52,000.00 joint loan to B. Radtke & Sons, Inc. and a loan from Helen M. Homer to B. Radtke & Sons, Inc. for $42,000.00 with 9% interest.

36.) I contributed to the growth of the marital estate which included, but was not limited to, four businesses, two industrial properties, and residential properties.

37.) I am visually impaired as a result of being denied income from and enjoyment of rightful portion of the property.

38.) I have been damaged physically, financially, socially, and emotionally.

        Further Affiant sayeth naught.

                                      Mary Ellen Homer-Radtke

STATE OF ILLINOIS                   INDIVIDUAL ACKNOWLEDGMENT

COUNTY OF LAKE

    Before me, the undersigned, a Notary Public in and for said County and State on this 7th day of November, 2002, personally appeared Mary Ellen Homer-Radtke me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act.

    Given under my hand and seal the day and year last above written.

My commission expires 9-26-06 _____ Notary Public

"OFFICIAL SEAL"
CHRISTINA J. HOM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9-26-06

4

STATE OF ILLINOIS          )
                           ) SS
COUNTY OF LAKE             )

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

IN RE THE MARRIAGE OF:          )
                                )
MARY RADTKE,                    )
                                )
            Petitioner,         )
                                )
and                             )        No. 92 D 1279
                                )
JOHN RADTKE,                    )
                                )
            Respondent.         )

## JUDGMENT FOR DISSOLUTION OF MARRIAGE

This cause coming on to be heard upon the Petition for Dissolution of Marriage of

Petitioner, MARY RADTKE, by EVA SCHWARTZMAN, her attorney, and the response

thereto of Respondent, JOHN RADTKE, by MANDEL, LIPTON AND STEVENSON

LIMITED, his attorneys, and the Court having heard testimony in open court of the Petitioner

in support of the allegations contained in her Petition for Dissolution of Marriage, and the Court

having considered all of the evidence and now being fully advised in the premises:

DOTH FIND AS FOLLOWS:

A.    The Court has jurisdiction of the parties and the subject matter for the purpose

of determining the issues of dissolution of the marital relationship, spousal maintenance, property

division, and payment of attorney fees.

B.     Both parties have been domiciled and have resided in the State of Illinois for a period of at least ninety (90) days immediately preceding the entry of this Judgment.

C.     That the parties were married on June 17, 1967, in Harlingen, Cameron County, Texas.

D.     That four (4) children were born to the parties as a result of said marriage, namely REBECCA, born December 21, 1969; JEFFREY, born September 23, 1972; JEREMY, born October 17, 1978; and JESSICA, born August 14, 1981. No children were adopted by the parties and the Petitioner is not now pregnant.

E.     That the Petitioner has proven the material allegations of her Petition for Dissolution of Marriage by substantial, competent and relevant evidence, and that a Judgment for Dissolution of Marriage should be entered herein.

F.     The parties have entered into a Marital Settlement Agreement dated June 2  , 1995, concerning the questions of maintenance, the respective rights of each party in and to the property, the debts of the parties, their respective obligations for attorneys fees incurred in the proceeding, and other matters, which agreement has been presented to this Court for its consideration. Said Agreement was entered into freely and voluntarily and ought to receive the approval of this Court, and it is in words and figures as follows:

NOW, THEREFORE, on Motion of the attorneys for the Petitioner,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.     The parties are awarded a Judgment for Dissolution of Marriage and the bonds of matrimony existing between the Petitioner, MARY RADTKE, and the Respondent, JOHN RADTKE, are hereby dissolved.

2

2.    The Marital Settlement Agreement between the Petitioner and Respondent dated June ___, 1995, and hereinabove set forth in full. is made a part of this Judgment for Dissolution of Marriage and all provisions of said Agreement are expressly ratified, confirmed, approved and adopted as the orders of this Court to the same extent and with the same force and effect as if said provisions were in this paragraph set forth verbatim as the Judgment of this Court; each of the parties shall perform under the terms of said Agreement.  Except as specifically provide in accordance with the Marital Settlement Agreement, this Judgment is non-modifiable.

3.    Each of the parties will, promptly upon demand by the other party, execute and deliver to such other party any and all documents that may be necessary to effectuate and fulfill the terms of this Judgment.

4.    The Petitioner has the right to resume the use of her maiden name of _____.

5.    This Court expressly retains jurisdiction of this cause for the purpose of enforcing all the terms of this Judgment for Dissolution of Marriage, including all the terms of the Marital Settlement Agreement made in writing between the parties and dated June ___, 1995, as hereinabove set forth.

ENTER:

_____
JOHN T. PHILLIPS
J U D G E

KATHLEEN ROSEBOROUGH
MANDEL, LIPTON AND STEVENSON LIMITED
120 North LaSalle Street
Suite 2900
Chicago, Illinois  60602
(312) 236-7080

3

## MARITAL SETTLEMENT AGREEMENT

THIS AGREEMENT, made and entered into this $2nd$ day of June, 1995, in

Waukegan, Illinois, by and between JOHN RADTKE of Mundelein, Lake County, Illinois,

(hereinafter referred to as the "HUSBAND" or "JOHN"), and MARY RADTKE, of Mundelein,

Lake County, Illinois, (hereinafter referred to as the "WIFE" or "MARY").

## WITNESSETH:

WHEREAS, the parties were lawfully married to each other on June 17, 1967, in

Harlingen, Texas, and said marriage was registered in Cameron County, Texas; and

WHEREAS, irreconcilable difficulties and differences have arisen between the parties

as a result of which the parties have separated and have lived separate and apart continuously

for a period in excess of six (6) months; and

WHEREAS, four (4) children were born to the parties, namely REBECCA, born

December 21, 1969; JEFFREY, born September 23, 1972; JEREMY, born October 17, 1978;

and JESSICA, born August 14, 1981. No children were adopted by the parties, and the WIFE

is not now pregnant; and

WHEREAS, MARY has filed against JOHN an action for dissolution of marriage in the

Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois, under Cause No. 92 D

1279, and JOHN has filed his Counter-Petition for Dissolution of Marriage under said Cause

Number. The case is entitled In re the Marriage of MARY RADTKE, Petitioner/Counter-

Respondent, and JOHN RADTKE, Respondent/Counter-Petitioner, and the case remains pending

and undetermined; and

WHEREAS, without prejudice to any right of action for dissolution which either party

nay have, the parties hereto consider it to be in their best interests to settle between themselves

now and forever the matters of custody, visitation, support, medical and related needs of the

minor children of the parties, the matter of maintenance for the HUSBAND and the WIFE, and

to settle fully rights of property of the parties, other rights arising out of the marriage or any

other relationship now or previously existing between them and to settle any and all rights of

every kind, nature, and description which either of them now has or hereafter may have or claim

to have against the other, or in or to any property of the other, whether real, personal or mixed,

now owned or which hereafter may be acquired by either of them, or any rights or claims in and

to the estate of the other; and

WHEREAS, JOHN has employed and had the benefit of counsel of KATHLEEN

ROSEBOROUGH of the law firm of MANDEL, LIPTON AND STEVENSON LIMITED, as

_(and formerly Wm. Rosing and pro se)_

his attorneys and MARY has employed and had the benefit of counsel of EVA

SCHWARTZMAN (and formerly DOUG STILES of the law firm of FUQUA, WINTER,

STILES & ANDERSON, LTD. and SALLY LECHTER) as her attorneys. Each party has had

the benefit of advice, investigation, and recommendations with reference to the subject matter

of this agreement.  The parties acknowledge that each has been informed fully of the wealth,

property, estate and income of the other.  Each party also acknowledges that he and she is

conversant with all of the wealth, property, estate and income of the other, and that each has

been informed fully of his and her respective rights in the premises; and

WHEREAS, the parties have also engaged in private mediation with INA BERKLEY and

ELAINE COLLINS of Meridian Associates for Financial Equity, Inc.  The agreements of the

parties with regard to their joint custody arrangements and distribution of their assets and

liabilities are attached hereto as Exhibits A and B; and

2

which may be obtained through that process has been explained to them by their respective attorneys. Both parties acknowledge that discovery has been conducted through interrogatories, the production of financial documents and depositions and each of the parties has instructed their respective attorneys not to pursue the discovery process any further. Each party expressly states that no representation has been made to the other party by his or her attorneys other than that which is contained in this agreement. The parties, after carefully considering the terms and conditions of this agreement, state that they each believe the same to be fair and reasonable under their present circumstances.

NOW, THEREFORE, in consideration of the foregoing and in further consideration of the mutual and several promises and undertakings herein contained and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties hereby freely and voluntarily agree as follows:

## ARTICLE I

### RIGHT OF ACTION

1.1    This agreement is not one to obtain or stimulate a dissolution of marriage.

1.2    The WIFE reserves the right to prosecute any action for dissolution of marriage which she hereafter may bring and to defend any action which has been or may be commenced by the HUSBAND. The HUSBAND reserves the right to prosecute any action for dissolution of marriage which he has brought or hereafter may bring and to defend any action which has been or may be commenced by the WIFE.

3

## ARTICLE II

## ARRANGEMENTS FOR THE CHILDREN

A.  Parenting Arrangements

2.1    The parties have entered into a Joint Parenting Agreement which is attached hereto as Exhibit A and incorporated herein.

B.  Financial Arrangements

2.2  Child Support

Based on his present income, JOHN will pay MARY as and for child support the sum of Eight Hundred Sixty Dollars ($860.00) per month, which represents twenty-five percent (25%) of his net income of Forty-one Thousand Two Hundred Eighty Dollars ($41,280.00), beginning on June 1, 1995, and continuing on the first of every month thereafter until JEREMY is emancipated as defined in this Agreement.  After JEREMY is emancipated, the amount of child support shall be reduced to eighty percent (80%) of the amount that was being paid for both children.

MARY shall, in accordance with this Agreement, use the child support and be responsible for all of the children's living expenses, including but not limited to, their shelter, food, clothing, transportation, entertainment, incidentals and other expenses.

2.3  Emancipation

JOHN's obligation for child support for the children as provided herein shall terminate upon the first to occur of the following events:

      (a)    A child's completion of a high school education or obtaining the age of eighteen (18) years, whichever occurs first;

      (c)    The death of a child;

      (d)    The child's marriage;

4

(e)    The child having a permanent residence away from the permanent residences of MARY and JOHN;

(f)    MARY's death; or

(g)    The child's entry into the Armed Forces of the United States.

### 2.4    Medical Insurance for Children

JOHN shall continue to provide medical and hospitalization insurance coverage for the parties' minor children until each child reaches age twenty-two (22) or finishes college, whichever occurs last; provided, however, that if a child becomes emancipated prior to that time because the child marries or enters the Armed Forces, JOHN's obligation to provide this insurance shall terminate.

MARY agrees to submit all bills to JOHN promptly for submission to the insurance company.

The parties shall share in all of the ~~extraordinary~~ expenses not covered by medical insurance in accordance with their respective incomes from all sources.

### 2.5    Dependency Exemptions

To the extent allowed by law, the parties agree that JOHN shall be entitled to claim both minor children as dependents for the year 1995 and MARY shall execute the appropriate forms to effectuate that JOHN may so claim the children. MARY shall be entitled to claim both minor children as dependents for the years 1996 and thereafter.

### 2.6    College Expenses for the Children

*ML A.* The college educational expenses of the children shall be paid by the parties in accordance with the Illinois Marriage and Dissolution of Marriage Act; however, the parties agree that the children do have a responsibility to contribute to the costs of their own education. MARY represents that there are trust funds or mutual funds of the children, namely accounts

*Page* 5    *(initials)*

*and complete estate* at _____, which funds shall not be withdrawn for any other reason than children's college expenses, except by agreement of the parties.

*B) If either child elects to live at home while attending college, child support payments will continue as long as they are students, not to extend beyond age 23.*

## ARTICLE III

### WAIVER OF MAINTENANCE

3.1     MARY hereby waives any and all rights to alimony, support, or maintenance, whether past, present or future, and she shall have no further claims for any reason whatsoever against JOHN for alimony, support, or maintenance, and she shall be barred forever from asserting any such claims.

3.2     JOHN hereby waives any and all rights to alimony, support or maintenance, whether past, present or future, and he shall have no claims for any reason whatsoever against MARY for alimony, support or maintenance, and he shall be barred forever from asserting any such claims.

## ARTICLE IV

### LIFE INSURANCE

4.1     In order to secure all his obligations regarding the children, including insurance, medical expenses, child support and college education under this Agreement, JOHN shall continue to maintain insurance on his life having unencumbered and irrevocable death benefits in the amount of One Hundred Fifty Thousand Dollars ($150,000.00) payable for the benefit of *with Mary as trustee* the children/until JOHN's obligations to the children pursuant to this Agreement are terminated.

To the extent that said insurance is not maintained, there shall be a first lien and charge against the assets of his estate.

6

## MEDICAL INSURANCE FOR MARY

5.1    JOHN will continue to provide medical insurance for MARY for four (4) years following the entry of the Judgment for Dissolution of Marriage, for so long as he can do so at a cost reasonably comparable to the present cost for insurance and for so long as he is employed by B. Radtke & Sons or controls that company or for so long as he can provide said insurance for her through other employment.

### ARTICLE VI

### PROPERTY DIVISION

As and for an equitable division of the property of the parties, whether marital or non-marital, the parties agree as follows:

### Marital Home

6.1    The parties currently own in joint tenancy the property commonly known as 502 Dublin, Mundelein, Illinois (hereinafter referred to as the "marital home"), and legally described on Exhibit C attached hereto. JOHN shall quit claim his entire right, title and interest in the marital home to MARY upon MARY's securing his release from the present mortgage.

6.2    From the date of the entry of a Judgment for Dissolution of Marriage, MARY shall be responsible for and indemnify and hold JOHN harmless regarding all expenses incident to the home after the effective date of this Agreement, including but not limited to the mortgage, utilities, insurance, maintenance, repairs and real estate taxes for 1995 and subsequent years and capital gains taxes, if any.

6.3    Household Furnishings and Effects .
The parties agree that _____ ~~the arbitrate~~ the division of the parties' personal property, such as household effects, vehicles not already provided for in this

7

Agreement, tools, furnishings, memorabilia, mementos, etc. within thirty (30) days from the entry of a Judgment for Dissolution of Marriage.

### 6.4   Investment Accounts/IRAs

A.    MARY shall retain as her sole property all of her investment accounts designated on Exhibit B as "Investment Accounts MARY" totaling approximately Eighty Thousand Dollars ($80,000.00), and her IRA account of approximately Nineteen Thousand Seven Hundred Dollars ($19,700.00), and JOHN quit claims all of his right, title and interest in the investment accounts and IRA account of MARY upon the entry of a Judgment for Dissolution of Marriage. MARY indemnifies JOHN against any taxes and liabilities regarding these accounts.

B.    JOHN shall retain as his sole property all of his investment accounts totaling approximately Two Thousand Dollars ($2,000.00) and his IRA account of approximately Six Thousand Three Hundred Dollars ($6,300.00) as designated on Exhibit B, and MARY quit claims all her right, title and interest in the investment accounts and IRA account of JOHN upon the entry of a Judgment for Dissolution of Marriage. JOHN indemnifies MARY against any taxes and liabilities regarding these accounts.

### 6.5   B. Radtke & Sons, Inc.

JOHN shall retain as his sole property all of his interest in B. Radtke & Sons, Inc., free and clear of any claim of MARY, including but not limited to MARY's claims of any amounts due her from B. Radtke & Sons, Inc. regarding loans, interest or anything else whatsoever. Upon the entry of a Judgment for Dissolution of Marriage and the payment of the Forty Thousand Dollars ($40,000.00) due MARY pursuant to paragraph 6.11 of this Agreement, MARY shall execute a general release of all of her claims against B. Radtke & Sons, Inc. Upon the execution of that release, JOHN shall indemnify MARY against all liabilities regarding B. Radtke & Sons, Inc.

8

6.6   Laserworks

JOHN shall retain as his sole property all interest in Laserworks, free and clear of any claims of MARY.

6.7   Other Real Estate

A.   The parties presently own a fifty percent (50%) beneficial interest in the Land Trust Number 32-10215 at First of America Trust Company which holds title to 101 Main Street, Round Lake Park, Illinois, legally described on Exhibit D attached hereto. Upon the execution of this Agreement, MARY shall quit claim her entire right, title and interest in this property to JOHN.

B.   The parties presently own in joint tenancy the property located at 112 Main Street, Round Lake Park, Illinois, legally described on Exhibit E attached hereto. Upon the execution of this Agreement, MARY shall quit claim her entire right, title and interest in this property to JOHN.

6.8   Jermag   *True*

The parties have a fifty percent (50%) interest in an entity known as "Jermag" which consists of a receivable from B. Radtke & Sons, Inc. of Twenty-three Thousand Dollars ($23,000.00) and approximately Nine Thousand Dollars ($9,000.00) in the Jermag bank account number 52-0007098-0 at First of America N/E Bank. It is anticipated that there will be at least approximately Sixteen Thousand Dollars ($16,000.00) of expenses for the clean-up, including tank removal of the properties referred to in paragraphs 6.7 and 6.8 above. Notwithstanding the fact that JOHN is awarded these properties pursuant to this Agreement and the Judgment for Dissolution of Marriage, the parties agree to leave those funds in the account to pay for those expenses. They further agree that if there are any funds left over after said expenses are paid, they will divide their interest (i.e. fifty percent (50%)) of the remainder equally between them.

9

expenses equally between them. *MEARE*

Both parties attest that they have fully disclosed all accounts and assets and that the information is correct to the best of their knowledge and reported herein.

6.9   Other Financial Accounts

Each of the parties shall retain, free and clear of any interest and claim of the other, all financial accounts, including but not limited to, bank accounts, checking accounts, certificates of deposit, brokerage accounts and all stocks and bonds in their respective names.

6.10   Automobiles

MARY shall retain the use of the Volvo automobile that she is presently driving and JOHN will make arrangements for title to that automobile to be transferred to MARY on January 1, 1997. JOHN will also provide/or cause to be provided automobile insurance on that vehicle *up to $500 for car repairs and   MEARE* for MARY through January 1, 1997.

MARY shall also retain the Recreational Vehicle, free and clear of any interest of JOHN.

6.11   JOHN's Payment to MARY

In order to effectuate the equitable distribution of property referred to in the preceding paragraphs, JOHN shall pay to MARY Forty Thousand Dollars ($40,000.00) within ten (10) days of the entry of a Judgment for Dissolution of Marriage.  In addition, he shall execute a Promissory Note to MARY for Thirty Thousand Dollars ($30,000.00) which Note shall bear interest at seven percent (7%) beginning in June of ~~1996~~ 1996 and payments of Ten Thousand Dollars *$39,000 (Ja)   MEARE- compounded monthly   MEARE (Ja)* ($10,000.00) each, plus interest, shall be made by June 30, 1996; June 30, 1997; and June 30, 1998. There shall be no prepayment penalty on this obligation from JOHN to MARY. *and the final balance paid in full June 30, 1999.;   MEARE (Ja)*

6.12   Transfer of Property Incident to a Dissolution

The transfers of property and funds between the spouses, including payment made by JOHN to MARY, pursuant to paragraph 6.11 of this Article VI above, are incident to a divorce,

10   *MEARE (Ja)*

Revenue Code and the applicable laws of the State of Illinois.

## ARTICLE VII

### DEBTS

7.1     JOHN will be responsible for and shall indemnify and hold MARY harmless on

the following liabilities:

A.     Loan to his mother in the approximate amount of Ten Thousand Dollars

($10,000.00);

B.     Loan from B. Radtke & Sons, Inc. in the approximate amount of One

Hundred   Fifty   Thousand   Three   Hundred   Seventy-one   Dollars

($150,471.00);

C.     Amount due the orthodontist in the approximate amount of Three

Thousand Two Hundred Fifty Dollars ($3,250.00);

D.     Liabilities on the credit cards in his name in the approximate amount of

Twenty-one Thousand Six Hundred Eighty-seven Dollars ($21,687.00).

E.     *$1500 to Mary's Schwab Margin account. QR   TWEAR*

7.2     MARY shall be responsible for and shall indemnify and hold JOHN harmless on

the following liabilities:

A.     Loan from her mother in the approximate amount of Seven Thousand Five

Hundred Dollars ($7,500.00);

B.     All of her overdrawn accounts and bills outstanding in the approximate

amount of Three Thousand Dollars ($3,000.00); *$1,500.00 QR  TWEAR*

C.     All other amounts borrowed against her investment accounts and all

liability on credit cards in her name.

11

7.3    Except as provided in this Agreement, JOHN shall be responsible for all of the debts incurred in his name prior to and subsequent to the entry of a Judgment for Dissolution of Marriage and MARY shall be responsible for the debts incurred in her name prior to and subsequent to the entry of a Judgment for Dissolution of Marriage.

## ARTICLE VIII

## ATTORNEYS' FEES

8.1    JOHN shall be responsible for MARY's attorneys' fees and costs, not to exceed Ten Thousand Dollars ($10,000.00).  Except as provided in the preceding sentence, each party shall be responsible for their own attorneys' fees and costs in connection with any action for dissolution of marriage presently pending between the parties.

## ARTICLE IX

## GENERAL PROVISIONS

9.1    Waiver of Rights in the Property of the Other

Except as otherwise provided in this Agreement, each of the parties hereto covenants and agrees that each such party shall have and retain sole and exclusive right, title and interest, respectively, in and to each and all of the property in his or her respective possession, or under his or her respective control, upon the effective date of this Agreement, including in said property, and without limitation by reference elsewhere to specific property, all choses in action, real estate, interests as beneficiaries of trusts, bank balances, royalties, bonds, stocks and securities.

9.2    Execution of Documents

Each of the parties hereto hereby agrees to execute and acknowledge, concurrently with the execution hereof, good and sufficient instruments necessary or proper to vest the title and estates in the respective parties hereto, as hereinabove provided, and hereafter, at any time, and

12



)m time to time, to execute and acknowledge any and all documents which may be necessary

proper to carry out the purposes of this Agreement, and establish of record the sole and

arate ownership of the several properties of said parties in the manner herein agreed and

ivided.  If either party hereof for any reason shall fail or refuse to execute any such

:uments, then this Agreement shall, and it is hereby expressly declared to, constitute a full

present transfer, assignment and conveyance of all rights hereinabove designated to be

isferred, assigned and conveyed, and a full, present and effective relinquishment and waiver

il rights hereinabove designated to be relinquished and waived.

### 9.3    Mutual and General Releases

A.    Except as otherwise provided in this Agreement, each of the parties does hereby

ver relinquish, release, waive and quit-claim and grant to the other, his or her heirs,

onal representatives and assigns, all rights of maintenance/alimony, dower, inheritance,

cnt, distribution, community interest and all other right, title, claim, interest and estate as

and, wife, widow, widower, or otherwise, by reason of the marital relations existing

'een said parties hereto, under any present or future law, or which he or she otherwise has

ight have, to or against the property and assets of the other, real, personal or mixed, or his

er estate, whether now owned or hereafter in any manner acquired by the other party,

her in possession or in expectancy, and whether vested or contingent; and each party further

nants and agrees for himself and herself, his or her heirs, personal representatives and

ns, that neither of them will at any time hereafter sue the other, or his or her heirs,

inal representatives, grantees, devisees or assigns, for the purpose of enforcing any or all

: rights specified in and relinquished hereunder; and further agree that in the event any suit

be commenced, this Release, when pleaded, shall be and constitute a complete defense to

uch claim or suit so instituted by either party hereto; and agrees to execute, acknowledge

and deliver, at the request of the other party, his or her heirs, personal representatives, grantees, devisees or assigns, any and all such deeds, releases or other instruments and further reassurances as may be required or reasonably requested to effect or evidence such release, waiver, relinquishment or extinguishment of such rights; provided, however, that nothing herein contained shall operate or be construed as a waiver or release by either party to the other of the obligations on the part of the other to comply with the provisions of this Agreement, or the rights of either party under this Agreement.

B.    Except as otherwise provided in this Agreement, each of the parties hereto hereby waives and relinquishes all right to act as administrator-with-the-will-annexed of the estate of the other party, and each of the parties hereto does further relinquish all right to inherit by intestate succession any of the property of which the other party may die seized or possessed, and should either of the parties hereto die intestate, this Agreement shall operate as a relinquishment of all right of the surviving party hereafter to apply for Letters of Administration in any form, and the estate of such deceased party, if he or she dies intestate, shall descend to the heirs at law of such deceased party, in the same manner as though the parties hereto had never been married, each of the parties hereto respectively reserving the right to dispose, by testament or otherwise, of his or her respective property in any way that he or she may see fit, without any restriction or limitation whatsoever.

C.    Except as otherwise provided in this Agreement, and to the fullest extent that they may lawfully do so, all the rights, claims and demands of every kind, nature and description which each party has, or may hereafter have, or claim to have, against the other, shall be, and the same hereby are, forever discharged, released and ended, and that all matters and charges whatsoever, and any and all manner of action or causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, torts, personal injury, judgment claims and demands

14





whatsoever, in law or in equity, which each party ever had, now has or which he or she, his or her heirs, executors, administrators or assigns, or any of them, hereafter can, shall or may have against the other (as the case may be) for or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the effective date hereof, shall be, and the same are hereby, forever released, discharged, barred, terminated and extinguished; provided, however, that nothing herein contained shall release or limit the obligation of either party hereto to comply with the other provisions of this Agreement.

9.4    Entire Agreement

This instrument contains the whole and entire agreement made by and between the parties hereto, has been examined by each of the parties, assisted by counsel of their respective choice, and is believed by them to be fair, just and equitable with respect to each of them.

9.5    Counterparts

This Agreement may be executed in one of more counterparts, which, together, constitute the original hereunder, and shall become effective upon the delivery of any executed counterpart to each of the parties hereto.

9.6    Benefit of Counsel and Voluntary Agreement

Both parties acknowledge that they have had the benefit of the advice and recommendations of their respective counsel and other professionals with reference to the subject matter of this Agreement. Both parties expressly agree that they have fully and voluntarily entered into this Agreement of their own volition, free of any duress or coercion, and with full knowledge of each and every provision contained in this Agreement and the consequences thereof.

9.7    Effective Date and Incorporation of Agreement into Judgment

In the event either party hereto at anytime hereafter obtains a dissolution of marriage in the cause presently pending between them, this Agreement and all of its provisions shall be

15

event shall this Agreement be of any validity unless a Judgment for Dissolution of Marriage is so entered and the date of entry of such Judgment for Dissolution of Marriage shall be the effective date of this Agreement.  The court of entry of said Judgment for Dissolution of Marriage shall retain the right to enforce the provisions and terms of this Agreement.

9.8   Governing Law

The parties agree that this Agreement shall be governed by the laws of the State of Illinois.

9.9   The fact that any draft of this Agreement was prepared by counsel for one of the parties shall create no presumptions of any kind, nor shall it cause any ambiguities to be construed against such party.

9.10   Binding Effect

This Agreement shall be binding upon, and inure to the benefit of, the parties hereto, and their respective heirs, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, MARY and JOHN have hereunto set their respective hands and seals to this Marital Settlement Agreement as of the day and year first above written.

_____
MARY RADTKE

_____
JOHN RADTKE

Witnessed:

_____
Elaine L. Collins, CFP
Elaine L. Collins

_____
Jon S Boerke, Jr.
Jon S Boerke

16

MARITAL STATEMENT OF FINANCIAL CONDITION

| ASSETS | TOTAL ASSETS | MARITAL ASSETS | ENTITLEMENT HUSBAND | ENTITLEMENT WIFE |
|---|---|---|---|---|
| **CASH AND CASH EQUIVALENTS** | | | | |
| J Checking | (97) | (97) | (97) | 0 |
| M Checking Corps | 409 | 409 | 0 | 409 |
| M Checking Labels | 115 | 115 | 0 | 115 |
| M Laguna | 4,000 | 4,000 | 0 | 4,000 |
| Schwab M | (2,671) | (2,671) | 0 | (2,671) |
| ProGuard M. | (9,087) | (9,087) | 0 | (9,087) |
| | | | | |
| **REAL ESTATE** | | | | |
| Residence Net CG -11500 | 90,217 | 90,217 | | 90,217 |
| 101 Main 1/2 Interest Net Equity After Tax | 56,000 | 56,000 | 56,000 | |
| 112 Main Net Equity After Tax | 27,000 | 27,000 | 27,000 | |
| **BUSINESS ASSETS** | | | | |
| B Radke Net of CG | 128,400 | 128,400 | 128,400 | |
| Laser Works Net of CG | 20,000 | 20,000 | 20,000 | |
| Warru, Possible Add'tl Liability | | | shares | shares |
| **INVESTMENT ACCOUNTS** | | | | |
| Schwab M | 12,191 | 12,191 | | 12,191 |
| Miller M | 43,860 | 43,860 | | 43,860 |
| IDS M | 4,600 | 4,600 | | 4,600 |
| Equitable M | 19,876 | 19,876 | | 19,876 |
| Jahn's | 2,000 | 2,000 | 2,000 | |
| **RETIREMENT ACCOUNTS** | | | | |
| John IRA | 6,261 | 6,261 | 6,261 | |
| Mary IRA | 19,744 | 19,744 | | 19,744 |
| **RECEIVABLES** | | | | |
| Accrued Interest | 14,561 | | | |
| Accrued Rent | 1,000 | | | |
| Note Payable | 51,883 | | | |
| Accrued Interest in Mary | 15,876 | | | |
| Note Payable in Mary | 54,423 | | | |
| Cash Settlement | | | (74,000) | 74,000 |
| **PERSONAL PROPERTY** | | | divided by agreement | divided by agreement |
| **TOTAL ASSETS** | $270,774 | 430,948 | 1,375,064 | $257,455 |
| **LIABILITIES** | | | | |
| Mortgage | (523,253) | (523,253) | | (523,253) |
| Loan from Mary's Mother | (57,500) | (57,500) | | (57,500) |
| Loan from John's Mother | (510,000) | (510,000) | (510,000) | |
| Loan from B. Radke | (512,546) | (512,546) | (512,546) | |
| Mary's Attorney | (510,000) | (510,000) | (510,000) | |
| John's Attorney | (58,000) | (58,000) | (58,000) | |
| Orthodontist | (53,250) | (53,250) | (53,250) | |
| M Overpayment = B Js Outstanding | (53,000) | (53,000) | (51,500) | (51,500) |
| J Credit Cards | (521,687) | (521,687) | (521,687) | |
| **TOTAL LIABILITIES** | (237,091) | (233,306) | (907,003) | (632,253) |
| **TOTALS** | $133,683 | $330,683 | 1,408,111 | $725,172 |
| **PERCENTAGE TOTALS** | | 100.00% | 32.52% | 67.48% |

Nos. 2--00--1065, 01-0184, 01-0285 cons.

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| <u>In re</u> MARRIAGE OF<br>MARY HOMER-RADTKE, | ) Appeal from the Circuit Court<br>) of Lake County.<br>) |
|     Petitioner-Appellant, | ) |
| and | ) No. 92--D--1279<br>)<br>) |
| JOHN A. RADTKE, | ) Honorable<br>) Margaret J. Mullen, |
|     Respondent-Appellee. | ) Judge, Presiding. |

**RULE 23 ORDER**

Three consolidated appeals reach us following petitioner, Mary Homer-Radtke's, unsuccessful attempts to vacate the judgment dissolving her marriage to respondent, John Radtke. We dismiss no. 2--00--1065 and no. 2--01--0184. In no. 2--01--0285, we affirm the judgment of the trial court.

On June 6, 1995, the trial court dissolved the marriage of the parties and incorporated the terms of a marital settlement agreement and joint parenting agreement executed by the parties into the judgment of dissolution. Both parties were represented by counsel at the June 6 prove-up hearing. On July 5, 1995, petitioner filed, <u>pro se</u>, a motion to set aside and vacate the judgment of dissolution. Petitioner's motion alleged that the judgment of dissolution had been obtained under duress. On July 18, 1995, petitioner filed a notice of motion setting her motion to vacate for hearing on July 28, 1995. The record on appeal contains

no indication that petitioner's motion to vacate was heard or decided on that date.

Approximately five years later, petitioner, pro se, filed a notice of motion setting her motion to vacate for hearing on July 31, 2000. On July 31, 2000, the trial court denied petitioner's motion to vacate as untimely pursuant to local rule 2.01(m) (19th Judicial Cir. Ct. R. 2.01(m) (eff. January 2, 1997)).

On August 18, 2000, respondent filed a petition for sanctions and attorney fees pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). The petition alleged that various documents filed by petitioner in 1999 and 2000 were filed without a basis in law or fact and with the intent to harass respondent. On August 24, 2000, the trial court found that the documents identified in respondent's petition were frivolous, abusive, and vexatious. The trial court found that sanctions were appropriate and continued the matter for determination of attorney fees and costs.

On August 30, 2000, petitioner filed a notice of appeal. In No. 2--00--1065, petitioner appeals the denial of her motion to vacate contending that the trial court abused its discretion when it denied her motion as untimely because she had adequately explained the delay in setting the motion for hearing.

On November 13, 2000, petitioner filed a motion for sanctions and attorney fees pursuant to Rule 137 alleging various deficiencies in respondent's Rule 137 petition. Petitioner also filed a motion to vacate the judgment of dissolution pursuant to section 2--1401 of the Code of Civil Procedure (735 ILCS 5/2--1401

-2-

(West 2000)). Petitioner's motion to vacate alleged that the judgment of dissolution had been obtained under duress.

On November 29, 2000, the trial court denied petitioner's section 2--1401 motion as untimely. The trial court also found that respondent had committed no sanctionable conduct and denied petitioner's Rule 137 motion. On November 30, 2000, the trial court conducted a hearing on respondent's request for attorney fees and sanctions and continued the matter for ruling. On December 29, 2000, petitioner filed a motion to reconsider the trial court's order denying her section 2--1401 motion.

On January 9, 2001, the trial court awarded respondent a sanction of $5,000 against petitioner and entered judgment in that amount. On February 8, 2001, petitioner filed a notice of appeal. In No. 2--01--0184, petitioner appeals the trial court's order of January 9, 2001 contending that (1) the trial court failed to set forth its reasons for imposing sanctions; (2) the trial court failed to specify the manner by which it calculated the $5,000 sanction amount; and (3) Supreme Court Rule 137 does not authorize the trial court to enter a judgment for sanctions.

On January 24, 2001, respondent filed a motion to advance the hearing on petitioner's motion for reconsideration and to clarify the trial court's sanction award of January 9, 2001.

On January 30, 2001, the trial court clarified its analysis of the sanction award. The trial court also denied petitioner's motion to reconsider the denial of the section 2--1401 motion. On March 23, 2001, we granted petitioner leave to file a late notice of appeal. In No. 2--01--0285 petitioner appeals contending that

-3-

(1) the trial court erred when it found that her section 2--1401 motion was untimely because she was under duress, and (2) the trial court erred when it denied her Rule 137 motion without setting forth the reasons for its denial.

Before reaching the merits of petitioner's appeals we are bound to examine whether jurisdiction is proper.  See Gibson v. Belvidere National Bank & Trust Co., 326 Ill. App. 3d 45, 47-48 (2001) (recognizing this court's independent duty to examine jurisdiction).  On January 25, 2001, respondent filed a motion to dismiss case no. 2-00--1065.  On February 7, 2001, this court directed petitioner to address the question of whether, in light of the pending postjudgment matters, we had jurisdiction over the appeal.

Petitioner argued that this court had jurisdiction over both no. 2--00--1065 and no. 2--01--0184 but urged us to consolidate the appeals in the interest of judicial economy.

Respondent argued that petitioner's notice of appeal in no. 2--00--1065 was premature and moved to dismiss that appeal. Respondent further argued that the trial court's order of January 30, 2001, was a final order because it disposed of petitioner's last remaining claim, her motion to reconsider the trial court's denial of her section 2--1401 motion.  Respondent argued that, because the January 30, 2001, order was final, the matter was ripe for appeal after that date.  Respondent urged this court to consolidate all filed notices of appeal, solicit any further notices of appeal from petitioner, and dispose of the matter as a single consolidated appeal.

-4-

This court denied respondent's motion to dismiss and consolidated no. 2--00--1065 with no. 2--01--0184. This court subsequently consolidated no. 2--01--0285 with the remaining appeals. On our own motion, we now reconsider those orders.

The rules of appellate procedure are crafted to further the often-stated policy against piecemeal appeals. John G. Phillips & Associates v. Brown, 197 Ill. 2d 337, 342 (2001). A Rule 137 motion deals with the propriety of the filings in the underlying case, and an appeal of a Rule 137 sanction should be considered in tandem with any appeal from the litigation from which it was spawned. Phillips, 197 Ill. 2d at 342. Accordingly, absent a Rule 304(a) (155 Ill. 2d R. 304(a)) finding, a notice of appeal may not be filed until the trial court has disposed of all requests for sanctions under Rule 137. Phillips, 197 Ill. 2d at 341.

On July 31, 2000, the trial court made no Rule 304(a) finding in conjunction with its denial of petitioner's motion to vacate. Therefore, we determine that the trial court's order was not final, and petitioner's notice of appeal in no. 2--00--1065 was premature. Similarly, we determine that the trial court's order of January 9, 2001, was not a final order because it left unresolved petitioner's motion to reconsider and was subject to respondent's timely motion to clarify. Therefore, we determine that neither petitioner's notice of appeal in no. 2--00--1065 nor her notice of appeal in no. 2--01--0184 was sufficient to confer jurisdiction on this court. Accordingly, our order consolidating those appeals was in error, and we now dismiss them.

However, we determine that the trial court's order of January 30, 2001, was a final order because it disposed of the last pending claims between the parties. Accordingly, petitioner's late notice of appeal in no. 2--00--0285 did confer jurisdiction on this court. The purpose of a notice of appeal is to inform the party prevailing in the trial court that the opposing party seeks review of the judgment, and a notice of appeal should be liberally construed. Jackson v. Retirement Board of the Policeman's Annuity and Benefit Fund of the City of Chicago, 293 Ill. App. 3d 694, 698 (1997). Further, an appeal from a final judgment draws into issue all prior nonfinal orders that produced the final judgment. Jackson, 293 Ill. App. 3d at 698. The parties have, in accordance with our prior orders, fully briefed the issues as a consolidated appeal. We believe the interests of judicial economy and substantial fairness require us to construe petitioner's notice of appeal in no. 2--00--0285 as incorporating a challenge to the orders identified in the two appeals we have dismissed. Therefore, we will, in no. 2--00--0285, consider the merits of all of petitioner's contentions of error.

Petitioner first contends that the trial court erred when it denied her motion to vacate as untimely. Circuit courts have the power to enact and enforce rules regulating their calendars and dockets. Salazar v. Wiley Sanders Trucking Co., 216 Ill. App. 3d 863, 869 (1991). A reviewing court will not reverse a trial court order entered pursuant to those rules in the absence of facts demonstrating that the trial court's action constituted an abuse of discretion. Salazar, 216 Ill. App. 3d at 869. In the present

case, petitioner waited approximately five years before setting her motion for a hearing, and the record contains no explanation for the delay.  Therefore, we conclude that the trial court did not abuse its discretion when it denied her motion as untimely.

Petitioner also contends that the trial court's award of sanctions was an abuse of discretion because it failed to set forth the reasons for its decision to award a sanction, and it failed to set forth the manner in which it calculated the amount of the sanction.  Although the trial court's orders do not set forth its reasoning in detail, a trial court's decision to award sanctions need not be reversed where we can determine whether the trial court's decision was informed, based on valid reasons that fit the case and which followed logically from the order.  <u>Belfour v. Schaumburg Auto</u>, 306 Ill. App. 3d 234, 243 (1999).  Our examination of the numerous documents identified in respondent's motion for sanctions reveals ample support for the trial court's finding that they were filed for an improper purpose and without a basis in law or fact.

Further, although a $5,000 sanction is substantial, the sanction imposed was far less than the total attorney fees incurred by respondent.  Moreover, the trial court's comments in response to respondent's motion to clarify the award indicate that the trial court believed a lesser sanction would be insufficient to deter future violations.  Therefore, we conclude that the trial court's award of sanctions did not constitute an abuse of discretion.  See <u>Belfour</u>, 306 Ill. App. 3d at 243 (identifying abuse of discretion standard).

-7-

Petitioner further contends that Supreme Court Rule 137 does not grant a trial court the authority to enter judgment for a sanction award. Although Rule 137 does not expressly grant this authority, an award of sanctions falls squarely within the definition of "judgment." See In re Estate of Martin, 254 Ill. App. 3d 246, 249 (1993). Therefore, the trial court did not abuse its discretion merely because it entered judgment on its sanction award.

Petitioner contends that the trial court erred when it denied her section 2--1401 motion as untimely. Ordinarily, a motion to vacate under section 2--1401 must be brought within two years of the judgment, and this limit must be strictly adhered to unless there is a clear showing that the person seeking relief was under legal disability or duress. In re Marriage of Himmel, 285 Ill. App. 3d 145, 151 (1996). Although petitioner's section 2--1401 motion alleged facts that, liberally construed, could support a finding that she was under duress at the time judgment was entered, her petition included no factual allegations to support her contention that she remained under duress for a sufficient period to toll the 2-year limit on section 2--1401 relief. Therefore, we conclude that the trial court did not abuse its discretion when it denied her section 2--1401 motion. See In re Marriage of Oldham, 222 Ill. App. 3d 744, 754 (1991) (identifying abuse of discretion standard).

Petitioner also contends that the trial court abused its discretion when it denied her motion for Rule 137 sanctions without setting forth the reasons for its denial. Although a trial court

-8-

should set forth its reasons for denying Rule 137 sanctions, the purpose of this requirement is to provide a foundation for appellate review and prevent the review of an order denying sanctions from becoming an ad hoc, inconsistent, and speculative affair. O'Brien & Associates P.C. v. Tim Thompson, Inc., 274 Ill. App. 3d 472, 482-83 (1995). However, we may affirm the denial of sanction if the reasons given are, in light of the record as a whole, sufficient to explain the trial court's decision. See O'Brien, 274 Ill. App. 3d at 483. We believe that, in light of the pleadings and other documents before the trial court, the finding contained in its order denying petitioner's motion sufficiently explained it decision to deny sanctions. Therefore, we conclude that the trial court did not abuse its discretion when it denied petitioner's motion for sanctions. See O'Brien, 274 Ill. App. 3d at 483.

In no. 2--00--1065 and no. 2--01--0184, the appeals are dismissed. In no. 2--00--0285, the judgment of the circuit court of Lake County is affirmed.

No. 2--00--1065--Appeal dismissed.

No. 2--01--0184--Appeal dismissed.

No, 2--01--0285--Affirmed.

HUTCHINSON, P.J., with CALLUM and KAPALA, JJ., concurring.