58

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT
COUNTY OF LAKE

United States District Court
Southern District of Texas
FILED
APR 10 2003
Michael N. Milby
Clerk of Court

ASSOCIATED MORTGAGE, INC.

Plaintiff,

vs. No. 98 CH 1240

JOHN A. RADTKE, MARY ELLEN RADTKE, CASA-BLANCA TRUST Dated January, 1998, LIBERTYVILLE NATIONAL BANK, LOCH LOMOND PROPERTY OWNERS ASSOCIATION,

Defendant.

NOTICE OF EMERGENCY OBJECTIONS TO LACK OF JURISDICTION AND FRAUD

COMES NOW, Mary Homer-Radtke, making a special appearance as aggrieved party in the above-styled cause, notices this Court reserving rights under U.C.C.1-207, giving this court written notice that the trial court does not have jurisdiction in this matter and in support of NOTICE OF EMERGENCY OBJECTIONS TO LACK OF JURISDICTION AND FRAUD states the following:

1.) In February of 1998 when Mary Homer-Radtke opened a New bank account at LaSalle Talman, Mary was given a telephone number for Great Northern Mortgage Company. Mary requested all contracts and a complete and comprehensive payment history with the intention of paying off any lawful debt owing. Mary was only sent an unfamiliar mortgage document signed by someone other than the proper parties-forged signatures for Mary Ellen Radtke and John A. Radtke. The servicing agency's failure to send the requested information alarmed Mary. Mary became suspicious that reamoritizations for prepayments of principal were not being applied which would reduce the length of the loan. Mary later learned about the practice of "bundling" mortgages and selling them offshore. Mary suspected that there was no lawful debt owing and that Great Northern Mortgage Company was continuing to collect an automatic payment made through the bank.

2.) In June of 1998, Dawn Grey and Philip Pesanka agreed to put in writing that John A. Radtke was calling the loan servicing agency asking them to foreclose on the family home with the intention of purchasing the property at a judicial sale. Their supervisor would not allow them to memorialize John A. Radtke's intention in writing.

3.) Mary was not given notice as required by the federal servicing laws that Great Northern Mortgage Company changed names to Associated Great Northern Mortgage Company and then to Great Northern Financial. Mary received a letter dated December 28, 1998 from President and CEO, Ross Vittore, in response to Mary's qualified written inquiries to Great Northern Mortgage Company. The letter, with a letterhead "Associated Great Northern Company" claimed to forward the inquiries to Associated Loan Services as their servicing agency.

4.) Mary Homer-Radtke was not given notice of a "Notice of Pending Lawsuit" filed into the Office of the Recorder of Deeds. Fraudulently concealing the notice denied the named defendants the opportunity to contact the unknown plaintiff and settle the matter outside of the court system, slandered title of the property, and prevented any sale of the property without paying the monies demanded in the lawsuit. Mary had no knowledge of plaintiff, Associated Mortgage, Inc.

5.) Inspection of the record of Case No. 98-CH-1240 evidences the uncontroverted fact that a valid Complaint to Foreclose Mortgage and a valid Amended Complaint are not a part of the record and jurisdiction, subject-matter or in personam, was never conferred upon the trial court by law. The documents are not verified. The law requires for relief a true and correct copy of the promissory note and the mortgage attached with express(terms of contract) reference. The record evidences that there was no service to Mary Homer-Radtke, to Casa-Blanca Trust dated January 1998, or to John A. Radtke. Without subject matter jurisdiction the court does not acquire personal jurisdiction.

6.) Associated Mortgage, Inc. attached a legally insuffient affidavit of "lost loan note" not signed by an officer of Associated Mortgage, Inc.: fraudulently concealing the fact that Associated Mortgage, Inc. is not the holder of the note; fraudulently concealing the fact that Associated Mortgage, Inc. has no interest in the property; fraudulently concealing the fact that the mortgage is void; fraudulently concealing the fact that Associated Mortgage, Inc. is not the necessary plaintiff; fraudulently concealing that a foreclosure action was initiated without the terms of the contract; and fraudulently concealing the fact that the servicing agency breached any implied or real contract.

7.) Mary Homer-Radtke made a special and limited appearance to strike the foreclosure action for fraud. The court refused to dismiss this foreclosure action, fraudulently concealing the court's cooperation in an organized scheme to seize the property and sell it to an innocent third party.

8.) On or about February 11, 1999, John A. Radtke informed Mary that he faxed to agent for Associated Mortgage, Inc. a note. Upon inspection, Mary noticed that the note was unsigned.

9.) On or about February 11, 1999, John A. Radtke told Mary that he had offered to settle with agent Kim M. Casey who refused to accept the settlement offer. Therefore, it appears, as evidenced by the record of the case, that Kim M. Casey has expended the court's time and incurred costly litigation.

10.) Kim M. Casey concealed the unsigned note from the court for about three years before it was attached to the amended complaint.

11.) When Mary Homer-Radtke resisted the foreclosure action by filing motions to strike and an injunction, the judge talked to agent Casey in a numeric language concealing the fact that the judge was suggesting that the court require Mary to have a psychological examination. A psychological examination could determine Mary "legally disabled" in order to allow the court the opportunity to appoint an attorney to cooperate in the seizure of

the property. Judge Dunn recused himself in response to Mary's motion for substitution of judge. This same strategy was used three years later when bigamist husband, John A. Radtke, by and through his agents, motioned the court for a competency hearing.

12.) Prior to leaving for a two week seminar in August of 1999, Mary was warned by her daughter that her father, John A. Radtke, informed her that plaintiff's agent was planning to seize the property. Mary, having inspected the record on Wednesday, returned to the courthouse on Friday. Mary went to the clerk discovering that a hearing for a summary judgment had been set. Mary was alarmed when there was no documentation on record for a summary judgment set for hearing on Tuesday. Mary was disturbed when the clerks could not find the motion in Judge Goshgarian's chambers. Mary was traumatized writing letters to all the parties and leaving messages on answering machines fearing the court would proceed. The case was transferred to Judge Walter when Judge Goshgarian was suspended.

13.) The cost of litigation continued to escalate as a result of the court's denial of Mary's motions to dismiss the original complaint.Mary was trapped in the court and traumatized. Plaintiff's agent, Kim M. Casey, filed an amended complaint attaching the unsigned note received from John, February of 1999.

14.) Against Mary's objections, the court allowed John A. Radtke to join the foreclosure action as co-plaintiff by filing a counterclaim asking for a judgment against Mary for sanctions received in Case 92D1279. John, by and through, agent Neal H. Levin & Associates, P.C. had already unlawfully converted the sanctions to a Memorandum of Judgment filing a lien against the owner of the property slandering title - felony slander of title.

15.) The court denied Mary's motions to dismiss the amended complaint so Mary filed a counterclaim, crossclaim, and third party complaint in lieu of an answer. Proper service was given to all of the named defendants. Mary timely filed jury demands for the amended complaint and the countercomplaint, crossclaim and third party complaint and a list of qualified witnesses was

filed in the record of the case. The trial court had jurisdiction over Mary's counter-complaint, cross-complaint, and third-party complaint as an independent matter.

16.) On or about November 6, 2001 the judge made a mockery out of the judicial process. Several of Mary's friends were sitting in the courtroom observing the proceedings. In open court Mary was shamed, intimidated, and disturbed when the judge ordered Mary repeatedly to call her first witness. Mary told the judge that she did not understand. When the judge unreasonably demanded Mary call the first witness, Mary called herself but did not know what motion was before the court. The court concealed the scheme to deny Mary's right to a trial by jury of peers where qualified witnesses in the mortgage industry would testify regarding the matter. Mary's counterclaim, cross-claim, and third party complaint was denied "with prejudice".

17.) Mary appealed the decision. The Appellate Court dismissed the appeal on jurisdictional grounds concealing the fact that the counterclaim, cross-claim, and third party complaint was properly served with summons and complaint as an independent action from the complaint/amended complaint in this case. Dismissal of the appeal supported the organized scheme to seize the property by sending the matter back to the trial court where the property could be seized and sold to an "innocent third party" at a judicial sale.

18.) In March of 2002, Mary was in Texas where a complaint was filed against estranged/bigamist husband, John A. Radtke, in the United States Court for the Southern District of Texas. Mary was seeking return of the marital estate of John Allen Radtke and Mary Ellen Homer as well as non-marital property converted to the control of John on July 30, 1992. The state trial court never had jurisdiction in Case 92 D 1279 or in the matter of the marriage of John and Mary or the children. Mary had a right to and made demands for return of the property. John dissipated marital property. Mary's right to income from and enjoyment of the marital estate was being denied. Mary was adjudicated a poor

person. Mary received by certified mail, an Order executed by Magistrate Felix Recio on April 12, 2002 ordering "only" Mary to appear for a status hearing in court on May 28, 2002. Mary did not understand and was disturbed by the order.

19.) Mary, alarmed when she received two more copies of the Order, contacted friends to inspect the record in the foreclosure case. Without notice to Mary, a motion for judgment of foreclosure was set for hearing on May 7, 2002. Fearful that the trial court would seize the property, Mary wrote an emergency motion to the federal court attaching evidence of service signed by John A. Radtke and requesting that the court give Mary the opportunity to protect rights and interests in Illinois.

20.) When Mary received another copy of the same order to appear on May 28, 2002, Mary was disturbed that the federal court was keeping Mary from protecting the interest of her children in the foreclosure matter. Mary suspected that the federal court was concealing exparte communications. Mary filed for bankruptcy on May 10, 2002 naming John Allen Radtke as her spouse. The Trial court's Order for Default Judgment was stayed.

21.) Plaintiff's agent, Kim M. Casey, concealed from Mary and the trial court record an affidavit that agent Casey drafted on November 16, 2001 for John A. Radtke in support of a judgment until May 7, 2002 when the motion was set for hearing. Mary was denied the opportunity to counter the affidavit and have it stricken from the record. Mary never received a copy of the affidavit. The affidavit made numerous references validating the void judgment in Case 92D1279. Kim M. Casey, acting as agent for John A. Radkte, billed plaintiff for drafting the affidavit. John and agent Casey were deceiving the court into accepting the unsigned note as the original concealing the real issues. The note is required for relief at the time of the filing because the note expresses the terms for a default. In addition, an unsigned note is not a negotiable instrument. I demanded and was denied return of the original promissory note and the original mortgage.

22.) Mary remained in Texas having friends file a Notice of Appeal on May 14,2002 for the trial court's lack of due process. The trial court judge had taken judicial notice that indispensable parties had not been joined and had taken notice that all orders are void ab initio. The court deceives and defrauds the public by executing void orders.

23.)On May 28,2002 Mary appeared in the federal court in Texas and was taken by surprise when John's agent, Neal H. Levin, was in the courtroom. The Order executed by Magistrate Recio ordering only Mary to appear on May 28, 2002 concealed agent Levin's intention to appear Pro Hac Vice giving him the opportunity to give hearsay testimony and make misrepresentations to the federal court. Over Mary's objections, agent Levin was allowed to give hearsay testimony. Without offering Mary copies of documents, agent Levin tendered a void judgment, a void Rule 23 Order and a void settlement misrepresenting them as valid to the federal court. Pursuant to Supreme Court Rule 6, Neal H. Levin was without standing in the court for improper filing, for failure to give notice, and for the document not being signed. Relying upon agent Levin's misrepresentations, the record shows that Magistrate Recio intended to recommend that the case be dismissed.

24.)While John's status as co-plaintiff in the foreclosure action was being protected by agent, Kim M. Casey, agent Neal H. Levin was protecting John from perjuring himself in the federal court. Financial exploitation, child abuse, theft, tax fraud, criminal conspiracy, and bigamy are criminal offenses. Since agent Neal H. Levin had no standing in the court on May 28, 2002, Mary was forced to write motions to strike the documents from the record including but not limited to, the pro hac vice, the void Rule 23 Order and the void judgment and the void settlement.

25.) Rather than dismiss Mary's federal complaint against John, Magistrate Recio denied Mary access to the court by denying Mary the right to file documents with the Clerk in Brownsville, Texas. Magistrate Recio determined moot Mary's petition for

injunctive relief. Mary was not protected by the court from further dissipation of the marital estate by John A. Radtke and his agents. Mary was denied the right to Mary's property. Mary was unable to pay the extortion in the foreclosure action. Mary was denied medical services. Mary was financially exploited by the federal court. John's agent had no standing in the federal court. John was in technical default for failing to answer as of May 7, 2002. Mary made several requests to the clerks of the court both in Brownsville and Corpus Christi pursuant to F.R.C.P.Rule 55(a) requesting a default judgment. Mary was denied due process and the right of peaceful enjoyment.

26.) The federal civil case was referred to the bankruptcy court where exparte communication from John's agents influenced the trustee and judge. Mary could not provide the required documents stored in Illinois for the financial statement. Mary agreed to dismiss the bankruptcy case on July 11, 2002. Again, agent Neal H. Levin made a surprise visit without notice to the courthouse in Brownsville, Texas. Outside of the courtroom, agent Levin took the opportunity to threaten Mary that he was going to have all the liens against the properties removed; that the judges think that Mary is a joke; that he thinks Mary is a joke; that Mary is going to get nothing; and that agent Levin is going to collect sanctions against Mary. Agent Levin showed Mary a green card signed by someone for alleged documents sent to the post office. Mary was alarmed that a green card was signed by someone at the Harlingen Post Office claiming to be an agent of Mary Homer-Radtke. Mary did not receive the documents allegedly requesting sanctions.

27.) Mary left Texas for Illinois early in September of 2002 finding the home in Illinois had been broken into and entered with approximately $50M worth of negotiable instruments stolen. The negotiable instruments included loan contracts to the family business signed by John A. Radtke as President. Face value of the loans was approximately $150,000.00 but the real value to Mary was approximately $300,000.00. Personal documents

stolen included tax records, birth certificates, baptismal certificates, marriage certificates, and professional licensing and credentials. Police report, 02-14082 was made on September 18, 2002 with subsequent affidavits demanding an investigation. Breaking and entering was called "suspicious circumstance" for the record. Mary's rights for an investigation are ignored.

28.) Mary believed her brief for the appellate court in the foreclosure case to be due October 14, 2002. On or about October 1, 2002, Mary's 94 year old mother fell and was hospitalized for broken bones in her right hand. Mary filed an emergency motion with the appellate court on October 2, 2002 asking for an extension of time to file the brief allowing Mary to return to Texas immediately. In the motion, Mary denies that the trial court has or had jurisdiction and requests that plaintiff be required to prove jurisdiction by the record of the case before requiring Mary to prepare a brief - citing judicial economy. Mary talked with a clerk who said that the judges did not consider this an emergency. Mary was fearful to leave for Texas without a decision. On October 22, 2002, alarmed by the delay, Mary filed a motion exposing the fraud with the appellate court.

29.) On the morning of October 23, 2002, Mary suffered an acute stroke. The medicine cabinet had been emptied of aspirin due to threats made by John A. Radtke to the adult children regarding the imminent foreclosure and possible eviction. Mary was without health insurance and did not have money to pay for services. Twelve hours had passed before Mary got a ride to the hospital emergency room. Mary was determined legally blind by the Department of Human Services and is unable to drive and has difficulty reading. Mary has been disabled since childhood with chronic hip pain due to Legg-Calve-Perthes Disease. During a test, it was discovered that Mary has had a hole between the upper chambers of her heart, Patent Foramen Ovale, since birth. The doctors believe the hole resulted in this and a prior stroke. Mary has been housebound and is without a telephone.

30.) Having been given notice that Mary had an acute stroke, John A. Radtke, acting in bad faith by and through his agents, filed lawsuits with the trial court and in the federal court. Mary was not given notice of the filings. A quiet title lawsuit conceals fraudulent transfers of properties owned by Mary. Another lawsuit seeks sanctions against Mary for filing financial statements with the Office of the Recorder of Deeds. John is seeking sanctions in the federal court concealing the fact that John plans to convert the sanctions to a judgment. John intends to collect attorney fees for his agents through seizure of the property as evidenced by his "Motion to Defer Proving Priority" asking the court to allow him to collect after the judicial sale of the property. John A. Radtke,by and through his agents, has to coordinate the federal court, the trial court, and the appellate courts in order to maximize the collection of attorney fees from the seizure of the property.

31.) Having been given notice that Mary had an acute stroke, Associated Mortgage, Inc., by and through their agent, Kim M. Casey, acting in bad faith, set for hearing a motion for judgment of foreclosure against John A. Radtke and Mary Ellen Radtke on March 4, 2003. Kim M. Casey fraudulently concealed that a motion for reconsideration was timely filed when the appeal of May 14, 2002 was dismissed. Agent Casey misrepresented in the Order of May 4, 2003 that a mandate had been sent from the appellate court and entered into the record.

32.) The strategy of the conspirators includes the court's willful blindness in ignoring the fact that the Judgment Order of May 7, 2002 was entered without authority conferred by jurisdiction and is void. The strategy includes the court's willful blindness to taking judicial notice that indespensible parties have not been joined and all orders/judgments are void ab initio. The strategy includes the cooperation and willful blindness of the Appellate Court so the trial court has the opportunity to seize the property through a judicial sale. The strategy includes the Appellate Court supporting/affirming the

sale of the property to an "innocent third party" with prior knowledge that the trial court never had jurisdiction.

33.) Mary, visually impaired, cannot defend her legal rights in the courts at this time. Mary, as a poor person is being denied legal assistance. Mary demands equal protection under the law. Upon information and belief, Mary requires the legal assistance of an attorney who specializes and is competent in the law for disabled persons.

34.) The court has entered void orders on March 4, 2003 and March 18, 2003 concealing the fact that the trial court does not have jurisdiction in this matter. The court is engaging in trickery and coercion to force Mary Homer-Radtke to appear or "some qualified (warm body) shall appear to represent her to advise the court as to the nature of the disability and as to the specific nature her request for some accommodation due to the disability" concealing the fact that this court wants to move forward on the organized scheme to seize the property or hold Mary in contempt for not appearing as ordered. Contempt does not lie when the court is without jurisdiction. Void orders do not have the force and effect of law.

35.) Mary Homer-Radtke objects to being financially exploited in the court system for over ten years. On July 30, 1992, this court converted the marital estate and non-marital property to the exclusive control of husband, John A. Radtke. Mary was denied income and enjoyment of her property. Mary named the foreclosure filed December 11, 1998 as fraud. This court denied Mary recourse and remedy to regain possession of her property on July 31, 2000. This court, without the authority conferred by jurisdiction, restrained Mary from regaining possession of her property in addition to entering an order that gave pseudo-legal authority to John and Elsie, not a party to the case, to have Mary arrested. On July 31, 2001, Mary was falsely arrested while sitting peacefully at the computer in the law library. The case was dismissed and then reinstated. This court entered a warrant for Mary's arrest knowing that Mary was not

given notice. Mary has been adjudicated a "poor person" by this court.

36.) Mary Homer-Radtke objects to being trapped in this court and being denied the freedom to enjoy life.

AFFIDAVIT

I. I am being financially exploited by my husband, John A. Radtke.
II. I have been disabled since childhood.
III. I was deceived into believing that the court would protect my rights.
IV. I am denied income from and enjoyment of my property.
V. I am being financially exploited by courts that execute void orders/judgments.
VI. I am intentionally being traumatized for going to the court.
VII. For over ten years I have been deceived into going to court believing the court had authority over me.
VIII. I did not know that the court serves as a collection agency for officers of the court.
IX. I was deceived into believing that void orders/judgments had the force and effect of law.
X. I was betrayed.
XI. I was financially impoverished and adjudicated a poor person.
XII. I am being financially exploited by officers of the court intending to seize the home where I live.
XIII. I was forced into researching the law disturbed that the law is not being practiced and the rules are not followed.
XIV. I am being denied enjoyment of my property due to void orders/judgments entered into the court records.
XV. I am being denied the freedom to live my life as I choose.
XVI. I am trapped in a den of thieves.
XVII. I have been damaged financially, emotionally, socially, and physically.
XVIII. Further Affiant Sayeth Naught.

Respectfully submitted,

"With explicit reservation of all rights"

______________________

Mary Homer-Radtke

Prepared by Mary Homer-Radtke

C/o 408 N. Lake St., #108
Mundelein, Illinois 60060